## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMANDA BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:18CV3127 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF LINCOLN, a political | ) | **MEMORANDUM** |
| subdivision, CHRIS BEUTLER, | ) | **AND ORDER** |
| TOM CASADY, DOUG | ) | |
| MCDANIEL, TIM LINKE, LEO | ) | |
| BENES, ERIC JONES, DARREN | ) | |
| MERRYMAN, and SHAWN | ) | |
| MAHLER, | ) | |
| | ) | |
| Defendants. | ) | |

In yet another lawsuit[1] alleging that employees of the City of Lincoln and Lincoln Fire and Rescue ("LF&R" or "LFR") discriminated against, retaliated against, and created a hostile work environment for female firefighters on the basis of sex and/or national origin, Plaintiff Amanda Benson asserts in her Second Amended Complaint (Filing No. 18) the following causes of action ("COA") against the City of Lincoln and eight other Defendants in their individual and official capacities:

COA 1:   NFEPA[2] Hostile Work Environment
COA 2:   NFEPA Discrimination Based on Sex
COA 3:   NFEPA Retaliation

---

[1]*See Hurd v. City of Lincoln* (No. 4:16CV3029) (D. Neb. 2016) and *Giles v. City of Lincoln* (No. 4:17CV3050) (D. Neb. 2017).

[2]Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Westlaw 2019).

COA 4:        Title VII[3] Hostile Work Environment
COA 5:        Title VII Discrimination Based on Sex
COA 6:        Title VII Retaliation
COA 7:        Equal Protection (City of Lincoln & Defendants in Official
              Capacities)
COA 8:        Equal Protection (Individual Defendants in Individual Capacities)
COA 9:        42 U.S.C. § 1985 Conspiracy

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) and the doctrine of qualified immunity or, alternatively, to strike several of the allegations contained in Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(f). (Filing No. 23.)

# I. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "plausibility standard" is not one of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint contains facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (brackets omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded

---

[3]Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Westlaw 2019).

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

In the discrimination context, "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage. The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal quotation marks and citations omitted). However, "the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Id*. (internal quotation marks and citation omitted).

## II. FACTUAL ALLEGATIONS

Plaintiff's 181 paragraphs of allegations in her Second Amended Complaint (Filing No. 18) can be summarized as set forth in Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss.

> Lincoln Fire & Rescue ("LFR") was under the leadership of the individual Defendants. Mayor Beutler is required by the City's Equity and Diversity Plan, City Equal Employment Opportunity ordinance §2.06.010, and Neb. Rev. Stat. §15-310 to enforce and comply with employment laws. Plaintiff has alleged that City officials under the direction of Beutler, Casady [Director of Public Safety], McDaniel, and Linke [Interim LF&R Fire Chief] were all policymakers or were delegated policymaking authority by the City regarding the terms and conditions of her employment. [Plaintiff's] supervisors created, fostered, and promoted a hostile work environment based on sex, discriminated and retaliated against her because of her complaints, which was the official custom or policy of LFR of the City of Lincoln. [Plaintiff] . . .

was treated less favorably than men regarding work assignments, number of scheduled hours, training, and evaluations. She alleges verbal harassment and intimidation to the point where she [was] treated for anxiety, depression, and panic attacks. This unlawful conduct was condoned and/or perpetrated by the individual Defendants and/or others under their supervision within LFR. The City was on notice as early as 2012 [of] LFR's unlawful employment practices as it related to women and those who complain about gender harassment and discrimination. Plaintiff also alleges that she or Giles [Station Captain] complained to multiple supervisors, and [Plaintiff's] complaints were ignored.

(Filing No. 28, Br. Opp'n Defs' Mot. Dismiss at CM/ECF pp. 7-8 (citations to Complaint and Second Amended Complaint omitted).)

[Plaintiff] missed work because of the harassment; was forced to transfer; [was] denied training and the opportunity to rotate to [LF&R] Captain] Mahler's truck; [was] ostracized by Mahler and her fellow firefighters; and was terrified to go to work. She experienced panic attacks on the job; and was forced to work in an environment wherein she could not trust anyone. Trust is paramount for firefighters given the life-threatening situations . . . firefighters face and the environment in which they live and work with [one] another. [Plaintiff's] hostile work environment led to her seeking out mental health counseling, which is continuing. Giles and [Plaintiff] complained repeatedly to Jones [Battalion Chief in charge of Station 8] and then to Linke, Benes [LF&R Battalion Chief], and Taylor-Riley [City Equity and Diversity Officer]—yet no one would remedy the discriminatory environment. The City of Lincoln's legal department and Mayor Beutler stopped a proposed mediation that was arranged by Taylor-Riley. The Mayor . . . failed to rely upon his EEO investigator and her findings and recommendations and did nothing, but recommend a meeting with Casady and McDaniel. Both Casady and McDaniel acknowledged a "management failure" and a systemic issue with LFR that dated back to 2012, but their only solution was to put [Plaintiff] right back in the same hostile work environment that Linke assured her would watch closely after her complaint. That did not occur. Linke and Benes ignored [Plaintiff's] pleas for assistance and allowed the hostile work environment to continue. . . . Jones acknowledged multiple problems that

were not addressed with Mahler in 2015, he believed supervisors needed
training on equity, hostile work environment and equality and stated,
"LFR needs a culture change." All of the Defendant City representatives
have been aware of the discriminatory nature of LFR's environment for
women for years and continue to do nothing to remedy. With no
assurance for her safety, [Plaintiff] had no choice but to transfer to
another station.

(*Id*. at CM/ECF pp. 21-22 (internal citations omitted).)

This discrimination originated from the time of [Plaintiff's] transfer to
Station 8, and became increasingly hostile, especially after her
complaints to LFR command staff and Taylor-Riley.

(*Id*. at CM/ECF p. 25 (internal citations omitted).)

Plaintiff alleges the following specific facts, among many others, in support of
the above allegations[4]:

• When LF&R Captain Mahler learned that Plaintiff would be replacing a male
firefighter at Station 8, Mahler was visibly upset and had a "verbal confrontation"
with co-workers. When Plaintiff began her service at Station 8, Mahler refused to
speak to her and did not review rules, expectation, or procedures with her. (Filing No.
18 ¶¶ 20-22.) When Mahler eventually spoke to Plaintiff, he was "demeaning and
condescending." (*Id*. ¶ 34.)

• Unlike male firefighters, Mahler did not allow Plaintiff to participate in the
"standard rotation" on the truck for engine firefighters, thereby denying Plaintiff
training "that would allow her to perform her job duties more effectively and assist her
in her career trajectory." (*Id*. ¶¶ 23-24, 30.) When Plaintiff questioned Mahler about
his failure to include her in the truck rotation, Mahler told her "she should stick with

---

[4]The following single-spaced and bulleted (but not double-indented) paragraphs
are not direct quotations from Plaintiff's Second Amended Complaint, but summaries
thereof. Direct quotations from Plaintiff's Second Amended Complaint within the
summary paragraphs are punctuated as such.

medical specialties because typically women are less mechanically-minded than men."
(*Id*. ¶ 30.)

• Mahler told Plaintiff she could not perform roof-venting operations because she did not own a fall-protection belt, despite the fact that LF&R policy did not mandate such belts. Other similarly situated male firefighters who did not purchase fall-protection belts were allowed to vent roofs under Mahler. (*Id*. ¶ 30.) Plaintiff eventually purchased a fall-protection belt, but Mahler stated that Plaintiff "had still not proven to him that she was trained to his standards." (*Id*. ¶ 38.) Mahler also refused to train Plaintiff on rope rescue and rigging because "it was not his job to train her." (*Id*. ¶ 33.)

• Contrary to LF&R policy and unlike nine similarly situated male firefighters who worked for Mahler at Station 8, Mahler told Plaintiff he would observe her for 18 months to three years before deciding she was "qualified and competent enough to be on his truck." (*Id*. ¶¶ 31-32.)

• Despite "house policy" which provided that firefighters who do not participate in the house meal are not required to clean up, Mahler insisted that Plaintiff handwash the dishes used in a meal in which she did not participate. (*Id*. ¶¶ 49-52.)

• After Plaintiff and Giles complained to LF&R administration about Mahler's continued harassment of Plaintiff and the "kitchen incident," LF&R began an investigation during which Mahler was moved to another fire station. Prior to Mahler's predisciplinary hearing, Interim LF&R Fire Chief Linke released to Mahler Plaintiff's and Giles's entire statements to assist Mahler in mounting a defense. This was a departure from LF&R's past practice, which was not to provide evidence and statements to employees undergoing the disciplinary process. (*Id*. ¶ 55.) Union representative Ron Trouba assisted Mahler with his defense in the predisciplinary proceedings. (*Id*. ¶ 55.)

• Casady asked Taylor-Riley whether Plaintiff had approached her about filing an EEO complaint. Employees' communication with Taylor-Riley is confidential. (*Id*. ¶ 56.)

• Following Mahler's disciplinary investigation, the City found no reason for disciplinary action, and both Mahler and Plaintiff were directed to return to Station 8. (*Id*. ¶ 62.) Defendants Linke and Benes told Plaintiff she must return to Station 8 or "give up her assignment and become a floater." (*Id*. ¶ 71.) When Plaintiff met with

union representative Trouba about her transfer rights, she discovered that Trouba was aware of her private medical information, and Trouba advised her "that she should be spending her energy trying to fix her career and reputation instead of pursuing a harassment claim against the City." (*Id*. ¶ 79.)

● Plaintiff filed an internal EEO complaint with Taylor-Riley alleging sexual harassment and discrimination. (*Id*. ¶ 77.) After an extensive investigation, Taylor-Riley concluded that Mahler had discriminated and retaliated against Plaintiff, citing as evidence, among other things, schedule differences between Plaintiff and a similarly situated male comparator that gave the comparator superior hands-on truck experience and a lighter overall workload; Mahler's statements that women are not equipped to "be on the USAR team, they are better suited to medical positions" and "there's no room for women in the fire service"; that another male firefighter was allowed to rotate to the truck immediately upon his transfer to Station 8; that a new male recruit with no prior experience was allowed to work on the truck crew and vented his first roof without a fall-protection belt on his third day of service; that firefighters are not required to have any truck experience before an assignment, they can be "sent to a truck right out of the academy," and "the captain is expected to train them"; and witnesses' observations that Mahler bullied Plaintiff. (*Id*. ¶ 108.)

● Plaintiff was eventually forced to surrender her Station 8 assignment to become a "floating firefighter" because "the environment was so toxic and retaliatory towards her she felt she had no other option." (*Id*. ¶ 113.) Defendants McDaniel and Casady tried to force Plaintiff to stay at Station 8, but Plaintiff refused because the situation had not been remedied. After discussing her options with newly appointed LF&R Fire Chief Michael Despain, Plaintiff was transferred to Station 3. (*Id*. ¶¶ 117-118.)

● With regard to the situation at Station 8, Defendant Casady admitted there had been a "management failure," and Defendant McDaniel stated that LF&R had "a systemic issue that need[ed] to be addressed." (*Id*. ¶ 116.)

● On August 15, 2016, Plaintiff filed a Charge of Discrimination with the NEOC alleging harassment based on sex, discrimination, and retaliation. (*Id*. ¶ 119.) On December 12, 2016, Plaintiff received a 74% job-evaluation rating, which was "far lower than the latest evaluation that she was given by Giles." Her next evaluation rating was 91%. (*Id*. ¶ 122.)

● Plaintiff incurred medical expenses and used sick pay as a result of the above

alleged discrimination, retaliation, and hostile work environment, and her "career prospects at LFR have been materially adversely affected by the Defendants' actions." (*Id*. ¶ 124.)

# III. DISCUSSION

## A. Motion to Dismiss

As an initial matter, Plaintiff's Title VII and NFEPA claims against the Defendants in their individual capacities will be dismissed because Title VII claims may only be asserted against employers (here, the City of Lincoln), not individuals. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (Title VII "does not provide for an action against an individual supervisor"); *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("Title VII addresses the conduct of employers only and does not impose liability on co-workers").

Further, all of Plaintiff's claims asserted against the individually named Defendants in their official capacities will be dismissed as redundant of Plaintiff's claims against the City of Lincoln. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (proper to dismiss claim against city officer in his official capacity as redundant of claim against city itself); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city . . . .").

This means that Plaintiff's Title VII and NFEPA claims (COA 1-6) are asserted against the City of Lincoln (Plaintiff's employer), and Plaintiff's § 1983 claims (COA 7-8) are asserted against the City of Lincoln and the Defendants in their individual

capacities.[5]

## 1. Sex-Discrimination Claims (Title VII & NFEPA) Against City

Title VII states that "[i]t shall be an unlawful employment practice for an employer—(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . . or (2) to limit . . . his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) & (2). The NFEPA is patterned after Title VII, and Nebraska courts have looked to federal decisions in analyzing claims brought under the Nebraska act. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII.").

To state a claim for gender discrimination, Plaintiff must allege that: "(1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination." *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that she is a woman, a "protected class" for purposes of Title VII. *Tharp v. Iowa Dep't of Corr.*, 68 F.3d 223, 226 (8th Cir. 1995) (referring to the "protected class of women employees" in context of Title VII discussion); *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078, 1082 (8th Cir. 1992) (women are "a 'protected class' under Title VII"). Plaintiff also alleges she was qualified to perform her job, as she began her employment as a City of

_____

[5]Plaintiff represents that she will move for dismissal of COA 9 for Conspiracy under 42 U.S.C. § 1985. (Filing No. 28 at CM/ECF p. 3 n.2.)

Lincoln Firefighter/EMT in July 2013 and had more than one year of experience by the time she was assigned to Station 8 in October 2014.

As to the third element of Plaintiff's gender-discrimination claim, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). While "changes in employment that significantly affect an employee's future career prospects meet this standard," *id.*, "'[m]ere inconvenience without any decrease in title, salary, or benefits' or that results only in minor changes in working conditions does not meet this standard." *Wedow v. City of Kan. City*, 442 F.3d 661, 671 (8th Cir. 2006) (quoting *Sallis*, 408 F.3d at 476). Plaintiff alleges that she was assigned to Station 8 where her supervisor, Defendant Mahler, refused to train her—because she is a woman—on general station procedures, truck functions, roof venting, rope rescue, and rigging, all of which adversely affected her career trajectory at LF&R and were a significant safety issue. At the motion-to-dismiss stage, this is enough to allege a change in working conditions that produced a material employment disadvantage to Plaintiff.

Finally, Plaintiff has alleged a multitude of facts sufficient to raise an inference of unlawful gender discrimination, such as being treated less favorably than similarly situated men regarding work assignments and training opportunities; verbal harassment and intimidation by Defendant Mahler, who has allegedly repeatedly expressed his resistance to female firefighters, and by other Defendants who criticized Plaintiff's attempts to complain about the discriminatory situation; and Defendants' condoning and perpetuating the alleged gender discrimination—which had been ongoing since at least 2012—by refusing to remedy it despite being aware of it.

Therefore, Defendants' Motion to Dismiss Plaintiff's gender-discrimination claim under Title VII and the NFEPA will be denied.

## 2. Retaliation Claims (Title VII & NFEPA) Against City

Plaintiff asserts retaliation claims under Title VII and the NFEPA, claiming that Defendants retaliated against her after she complained about her discriminatory and hostile work environment. (Filing No. 18 at CM/ECF pp. 15-17.) Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a) (Westlaw 2018). The NFEPA similarly makes retaliatory action unlawful. Neb. Rev. Stat. § 48-1114 (Westlaw 2018).

> The "employee has the initial burden of establishing a prima facie case of retaliation by showing that (1) [he] engaged in protected conduct, (2) [he] suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011). The "ultimate question" is "whether the employer's adverse action against the employee was motivated by retaliatory intent." *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011) (quotation omitted).

*Rebouche v. Deere & Co.*, 786 F.3d 1083, 1088 (8th Cir. 2015).

No one disputes that Plaintiff engaged in protected conduct by complaining to colleagues about what she believed to be discriminatory treatment, filing an internal EEO complaint, and filing a NEOC complaint regarding the claims at issue in this lawsuit. *Zhuang v. Datacard Corp.*, 414 F.3d 849, 856 (8th Cir. 2005) (filing of complaint with EEOC was protected conduct for purposes of retaliation claim). Plaintiff also plausibly alleges that she suffered materially adverse employment actions after making such complaints, such as being forced to become a "floater" or accept an undesired reassignment to another fire station in order to avoid the discrimination at Station 8 and receiving a low job-evaluation score within four

months of filing a complaint, both of which might have dissuaded a reasonable employee in Plaintiff's position from filing or supporting a charge of discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 71 (2006) (to be "materially adverse" for purposes of retaliation claim, plaintiff must show a reasonable employee in plaintiff's position might well have been dissuaded from filing or supporting a charge of discrimination; "the EEOC has consistently found [r]etaliatory work assignments to be a classic and widely recognized example of forbidden retaliation" (internal quotation marks and citations omitted)).

Finally, Plaintiff alleges facts—both temporal and otherwise—that suggest the adverse actions were causally linked to Plaintiff's complaints about the alleged discrimination. (*See* Filing No. 18 ¶¶ 62, 71, 77, 84, 96, 100, 119, 122 (on same day City completed internal investigation of Mahler based on Plaintiff's complaints to colleagues about discriminatory environment where City found no reason for disciplinary action, Plaintiff was told to "return to Station 8 or give up her assignment and become a floater"; after Plaintiff filed internal EEO complaint, Plaintiff was forced to return to Station 8 where Mahler would not speak, look at, or train Plaintiff because of her complaint, Plaintiff was advised to communicate with Mahler only through an intermediary, and Plaintiff was not allowed to rotate to the truck with Mahler; four months after filing NEOC charge, Plaintiff received uncharacteristically low job-evaluation score of 74%)).

Plaintiff's allegations are sufficient to state a plausible claim of retaliation under Title VII and the NFEPA, and Defendants' Motion to Dismiss this claim under Fed. R. Civ. P. 12(b)(6) will be denied.

### 3. Hostile-Work-Environment Claims (Title VII & NFEPA) Against City

When a plaintiff alleges that her supervisor[6] has created a hostile work environment based on sex, the plaintiff "must show '(1) [she] belongs to a protected group, (2) [she] was subjected to unwelcome harassment based on . . . sex, [and] (3) the harassment affected a term, condition, or privilege of [her] employment . . . .'" *Rickard v. Swedish Match North America, Inc.*, 773 F.3d 181, 184 (8th Cir. 2014) (internal quotation and citation omitted). To the extent Plaintiff alleges that her non-supervisors participated in creating the hostile environment, she must also prove that "(4) [her] employer knew or should have known of the harassment; and (5) the employer failed to take proper action." *Rickard*, 773 F.3d at 184 n.2 (internal quotation marks and citation omitted).

The third element "requires that [t]he harassment . . . be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." *Blomker*, 831 F.3d at 1056 (internal quotation marks and citations omitted). In considering the objective component, the court is to examine the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 893 (8th Cir. 2005). "[H]ostile work environment discrimination can exist absent a tangible employment action," *Winspear v. Cmty. Dev., Inc.*, 574 F.3d 604, 607 (8th Cir. 2009) (internal quotation marks and citation omitted); it "need not be explicitly sexual in nature," *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993); and "the key issue 'is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed,'" *Kopp*, 13 F.3d at

---

[6]The chain of command at LF&R is not clear in Plaintiff's Second Amended Complaint such that the court can identify Plaintiff's official "supervisors."

269 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Plaintiff's Second Amended Complaint clearly alleges that Plaintiff, a member of a protected group, was subjected to a hostile working environment that was unwelcome, as evidenced by her repeated complaints about discrimination and retaliation to co-workers, management, the LF&R Equity and Diversity Officer, and the NEOC. Plaintiff's allegations indicate that the harassment permeated her everyday work life, affected her ability to receive training essential to perform her job, and created an environment so toxic that Plaintiff sought mental-health treatment. To the extent the Defendants were not Plaintiff's supervisors, Plaintiff repeatedly alleges facts indicating that those Defendants knew or should have known of the harassment and they either ignored her complaints, took ineffective action, or failed to take proper action altogether. Therefore, Defendants' Motion to Dismiss Plaintiff's hostile-work-environment claim will be denied.

### 4. § 1983 Equal-Protection Claims Against Individual Defendants & City

Plaintiff's § 1983 claims allege that her rights under the Equal Protection Clause of the Fourteenth Amendment were violated when (1) the individual-capacity Defendants treated Plaintiff differently than other similarly situated employees because of her gender and retaliated against her because she complained about the hostile discriminatory and retaliatory work environment; and (2) the City of Lincoln established, maintained, and enforced an official policy, practice, or custom of discriminating and retaliating against female firefighters and applied such policy to Plaintiff when she complained about discrimination, retaliation, and the resulting hostile work environment. Defendants move to dismiss Plaintiff's equal-protection claims pursuant to Fed. R. Civ. P. 12(b)(6) and because they are entitled to qualified immunity.

## a. Individual-Capacity Defendants

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009). Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 1949. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only "'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)); *see also Wever v. Lincoln County*, 388 F.3d 601, 606-07 (8th Cir. 2004).

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (footnote omitted).

Despite their involvement in alleged misconduct, government officials will not be held individually liable for such misconduct if he or she is entitled to qualified immunity. "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint," *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (internal quotation marks and citation omitted). Determining the existence of qualified immunity at the Rule 12(b)(6) stage requires a two-part inquiry: (1) whether, on the face of the complaint, the facts alleged make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established[7] at the time of the

---

[7]       To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would

defendant's alleged misconduct. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (footnote added); *see also Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003). If no reasonable fact-finder could answer yes to both of these questions, the official is entitled to qualified immunity. *Nance*, 586 F.3d at 609. "Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009).

When engaging in the analysis of the existence of qualified immunity purely on the face of complaint in a motion-to-dismiss scenario, "[t]he balance favors the plaintiffs." *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997); *see also Sanchez v. Bremer*, No. 8:11-CV-314, 2012 WL 1396879, at *7 (D. Neb. Apr. 23, 2012) (noting that determining qualified immunity at pre-summary-judgment stage is "'unlikely to be very specific, given that federal civil practice is based on notice pleading, where great specificity is not required, . . . and that there is no heightened pleading requirement for civil rights cases'" (quoting *Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 60-61 (1st Cir. 2004))).

---

interpret it to establish the particular rule the plaintiff seeks to apply. . . .

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal quotations and citations omitted).

## i. Equal-Protection/Retaliation Claim

In the absence of a First Amendment claim (and there is not one here), there is no constitutional right under the Equal Protection Clause to be free from retaliation. *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1237 (8th Cir. 2013) (reversing district court's denial of qualified immunity on plaintiff's equal-protection retaliation claim because no established right exists under the Equal Protection Clause to be free from retaliation; "'The right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation. We have only recognized that § 1983 provides a vehicle for redressing claims of retaliation *on the basis of the First Amendment*,'" and "[n]owhere in [the plaintiff's] complaint does he allege retaliation on the basis of the First Amendment") (quoting *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995); emphasis added by *Burton* court); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) ("Although section 704(a) of Title VII may not be the basis for a retaliatory discharge claim in a § 1983 action, § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment.") (internal quotation marks and citation omitted); *Zimmerman v. Arkansas Dep't of Fin. & Admin.*, No. 5:17CV00160, 2018 WL 700850, at *3 (E.D. Ark. Feb. 2, 2018) (plaintiff could not bring retaliation claim under § 1983 because no established right exists under the Equal Protection Clause to be free from retaliation; there is such a right under the First Amendment, but plaintiff did not reference First Amendment in complaint) (citing *Burton*); *cf. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008) ("we have never found the Equal Protection Clause implicated in the specific circumstance where . . . government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner").

Accordingly, Plaintiff's equal-protection/retaliation claim against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their individual capacities fails as a matter of law. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th

Cir. 2007) (if an official did not deprive plaintiff of a constitutional or statutory right, the plaintiff "does not need qualified immunity, as he is not liable under § 1983"); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim.") (citation omitted).

Alternatively, because there was no constitutional violation, each of the individual Defendants is entitled to qualified immunity as to Plaintiff's equal-protection claim based on retaliation. *Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009) ("An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment."); *Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) (finding individual defendants entitled to qualified immunity when plaintiff failed to state Eighth Amendment claim).

## ii. Equal-Protection/Discrimination Claim

The Eighth Circuit Court of Appeals has "held intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 756 (8th Cir. 2003). Further, "[t]he right to be free of gender discrimination is clearly established." *Wright v. Rolette Cty.*, 417 F.3d 879, 886 (8th Cir. 2005) (internal quotation marks and citation omitted); *see also Peterson v. Scott County*, 406 F.3d 515, 526 (8th Cir. 2005), *abrogated on other grounds*, *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (same).

Defendants argue that Plaintiff has failed to state an equal-protection/discrimination claim against Defendants Beutler, McDaniel, and Casady because they were not personally involved in the gender discrimination against Plaintiff, and they are therefore entitled to qualified immunity as to this claim. It can be plausibly inferred from Plaintiff's Second Amended Complaint that these Defendants were managerial, supervisory employees in the chain of command above Plaintiff and Defendant Mahler.

> A supervisor may be held liable if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must show that the supervisor (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff].

*Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (internal quotation marks and citations omitted) (discussing § 1983 claim against chief of police in his individual capacity for hiring officer who shot plaintiff's son); *see also Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) ("While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue." (internal quotation marks and citation omitted)); *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012) ("Supervisors can . . . incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." (internal quotation marks and citations omitted)); *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) ("a supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation"; "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she]

might see" (internal quotation marks and citations omitted)).

Plaintiff's Second Amended Complaint clearly and specifically alleges that Defendants Beutler, McDaniel, and Casady had notice beginning in 2012 of repeated acts of gender-based discrimination and retaliation within LF&R; they were deliberately indifferent to such acts by ignoring known complaints and results of investigations into those complaints and by exonerating employees who committed discriminatory acts; they individually failed to take sufficient remedial action directed at the discrimination and retaliation; and each of these Defendants' deliberate inaction proximately caused injury to Plaintiff. For example, Plaintiff makes the following allegations, among others, against Defendant Beutler[8]:

● In 2014 and 2015, Beutler met at least four times with Taylor-Riley regarding another gender-based discrimination and retaliation case (the Troy Hurd case), but no actions were taken to ensure that the retaliation stopped, nor was a neutral gatekeeper put in place to monitor LF&R. (Filing No. 18 ¶ 161.)

● On May 6, 2016, Taylor-Riley issued to Beutler her investigative report concluding that Mahler had discriminated and retaliated against Plaintiff, citing as evidence specific examples of schedule differences between Plaintiff and similarly situated male firefighters; Mahler's statements that women are not equipped to "be on the USAR team" and "there's no room for women in the fire service"; that newly transferred or recently graduated male firefighters were allowed to rotate to the truck and vent roofs with a fall-protection belt soon after their arrival at Station 8 without proving their worth to Mahler, as Plaintiff was required to do; that firefighters are not required to have any truck experience before an assignment, they can be "sent to a truck right out of the academy," and "the captain is expected to train them"; and witnesses' observations that Mahler bullied Plaintiff. (*Id*. ¶ 108.)

● On July 28, 2016, Plaintiff received a letter from Beutler stating that the City law

---

[8]The following single-spaced and bulleted (but not double-indented) paragraphs are not direct quotations from Plaintiff's Second Amended Complaint, but summaries thereof. Direct quotations from Plaintiff's Second Amended Complaint within the summary paragraphs are punctuated as such.

department had conducted its own investigation and found no grounds for discrimination. Such investigation did not include an interview of Plaintiff. The letter promised that Plaintiff could meet with Defendants McDaniel and Casady to discuss how to improve fire-house interactions, but did not inform Plaintiff of any measures taken to remedy the harassment and retaliation at Station 8. (*Id*. ¶ 114.)

● Buetler met with Casady, McDaniel, and Taylor-Riley "at various points" to discuss the investigation of Plaintiff's situation, but "no remedial action or discipline was implemented by the Defendants as it relates to Mahler's conduct, nor did they monitor the situation appropriately to ensure that the employment policies of the City of Lincoln, and state and federal law were followed." (*Id*. ¶¶ 172-173.)

● Beutler "has been aware or should have been aware since August 2012 of LFR's continuing pattern of discriminatory and retaliatory treatment of women and/or individuals that complain about discrimination and harassment and has turned a blind eye to LFR's unlawful conduct." This includes ignoring Taylor-Riley's recommendations in both 2014 and 2016 to change LF&R leadership to prevent discrimination and retaliation from occurring, ratifying LF&R leadership's discriminatory and retaliatory conduct by exonerating the offenders, failing to appoint an "independent gatekeeper to address the discriminatory and retaliatory atmosphere at LFR," and failing to implement remedial measures. (*Id*. ¶ 174.)

Plaintiff's Second Amended Complaint makes the following allegations, among others, against Defendant McDaniel:

● McDaniel was a City Director or Manager. (Filing No. 18 ¶ 127.)

● McDaniel and Taylor-Riley initiated, and reviewed the results of, a workplace harassment survey within LF&R in August 2012. In the survey results, two Battalion Chiefs employed by LF&R at the time expressed that the current LF&R administration acted in a retaliatory or discriminatory manner. The HR Battalion Chief noted "subtle occurrences on a daily basis ranging from ignoring others, comments or jokes, to actual isolation in some cases." She stated, "Our department is a white male dominated culture that believes they treat people fairly, but women are subjected to a lot of subtle harassment/discrimination. . . . I know several of our women have or currently are experiencing issues." (*Id*. ¶¶ 131-134.)

● In an August 2, 2016, meeting between Plaintiff, Casady, and McDaniel regarding Plaintiff's complaints of discrimination and harassment by Mahler, McDaniel responded that "LFR had a systemic issue that need[ed] to be addressed" and "If we had the advantage of the HR Wand, this never would have happened. It would have been solved in 2012 with the culture, but the HR wand is pretty damn weak." (*Id*. ¶ 116.)

● McDaniel met with Casady, Buetler, and Taylor-Riley "at various points" to discuss the investigation into Plaintiff's situation, but "no remedial action or discipline was implemented by the Defendants as it relates to Mahler's conduct, nor did they monitor the situation appropriately to ensure that the employment policies of the City of Lincoln, and state and federal law were followed." (*Id*. ¶¶ 172-173.)

● McDaniel attempted to pressure Plaintiff to return to Station 8 despite her complaints about Mahler's discrimination towards her. (*Id*. ¶ 117.)

● McDaniel "has been aware or should have been aware since August 2012 of LFR's continuing pattern of discriminatory and retaliatory treatment of women and/or individuals that complain about discrimination and harassment and has turned a blind eye to LFR's unlawful conduct." This includes ignoring Taylor-Riley's recommendations in both 2014 and 2016 to change LF&R leadership to prevent discrimination and retaliation from occurring, ratifying LF&R leadership's discriminatory and retaliatory conduct by exonerating the offenders, failing to appoint an "independent gatekeeper to address the discriminatory and retaliatory atmosphere at LFR," and failing to implement remedial measures. (*Id*. ¶ 176.)

Finally, Plaintiff's Second Amended Complaint makes the following allegations, among others, against Defendant Casady:

● Under the City's Equity and Diversity Plan ("EAD") adopted in 2012, Casady was required to "report instances of discrimination and retaliation of which [he was] aware and had the legal duty to comply with the EAD." (Filing No. 18 ¶ 126.) Casady was aware of the EAD, but "doesn't know whether he ever read it." (*Id*. ¶ 127.)

● In the fall of 2015, Casady failed to investigate Plaintiff's complaints of discrimination and failed to discipline Battalion Chief Jones for his failure to address Plaintiff's complaints. (*Id*. ¶ 47.)

● On January 6, 2016, Casady asked Taylor-Riley whether Plaintiff had filed an EEO complaint, information that is considered confidential between an employee and Taylor-Riley. (*Id*. ¶ 56.) On January 8, 2015, Station Caption Giles complained to Casady that he had been retaliated against after complaining of illegal discrimination, and the City was failing to remedy the problem of discrimination and retaliation within LF&R. (*Id*. ¶ 159.)

● On January 20, 2016, Battalion Chiefs notified Casady that Mahler "would be intensely supervised," but Casady "took no action to ensure that these directives were being followed." (*Id*. ¶ 73.)

● On August 2, 2016, Plaintiff met with Casady and McDaniel, during which "Casady admitted that there had been a 'management failure' when Command Staff failed to communicate with her supervisors at Station 8, Merryman and Mahler, about management's expectations regarding how Mahler should treat her at Station 8 after her complaints of discrimination and harassment." (*Id*. ¶ 116.)

● Casady attempted to pressure Plaintiff to return to Station 8 despite her complaints about Mahler's discrimination towards her. (*Id*. ¶ 117.)

● Casady met with Beutler, McDaniel, and Taylor-Riley "at various points" to discuss the investigation into Plaintiff's situation, but "no remedial action or discipline was implemented by the Defendants as it relates to Mahler's conduct, nor did they monitor the situation appropriately to ensure that the employment policies of the City of Lincoln, and state and federal law were followed." (*Id*. ¶¶ 172-173.)

● Casady "has been aware or should have been aware since August 2012 of LFR's continuing pattern of discriminatory and retaliatory treatment of women and/or individuals that complain about discrimination and harassment and has turned a blind eye to LFR's unlawful conduct." This includes ignoring Taylor-Riley's recommendations in both 2014 and 2016 to change LF&R leadership to prevent discrimination and retaliation from occurring, ratifying LF&R leadership's discriminatory and retaliatory conduct by exonerating the offenders, failing to appoint an "independent gatekeeper to address the discriminatory and retaliatory atmosphere at LFR," and failing to implement remedial measures. (*Id*. ¶ 175.)

Defendants do not argue that the remaining Defendants in their individual capacities were not personally involved in the gender discrimination against Plaintiff,

so the court will not address that issue. NECivR 39.2(c) ("a judge may treat a party's failure to . . . discuss an issue in a brief as an abandonment of that party's position on any issue not briefed or discussed").

As to Defendants Linke, Benes, Jones, Merryman, and Mahler in their individual capacities, Defendants argue only that, "The allegations of the Second Amended Complaint are insufficient to show a violation of Plaintiff's constitutional rights by any of the named Defendants," thereby entitling them to qualified immunity. (Filing No. 24 at CM/ECF p. 10.) As discussed above, I have concluded that Plaintiff has stated a plausible hostile-work-environment claim as against these Defendants.

Accordingly, the alleged facts, accepted as true and construed in Plaintiff's favor, indicate that the Defendants in their individual capacities violated Plaintiff's clearly established right to be free of gender discrimination under the Equal Protection Clause of the Fourteenth Amendment, and a reasonable city employee would have known that subjecting Plaintiff to such treatment in the workplace (or allowing her to be subject to such treatment) violated that right. Although details at this stage are obviously lacking, Defendants have not shown they are entitled to qualified immunity for their alleged actions. *Carter*, 831 F.3d at 1107 ("[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint" (internal quotation marks and citation omitted)). Therefore, on the face of Plaintiff's Second Amended Complaint, Defendants' Motion to Dismiss Plaintiff's equal-protection/discrimination claim on qualified-immunity grounds must be denied.

### iii. Equal-Protection/Hostile-Work-Environment Claim

"Intentional sexual harassment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and supports a section 1983 action." *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 759 (8th Cir. 2003) (internal quotation marks and citation omitted). Hostile-work-environment claims

under Title VII and § 1983 are subject to the same analysis. *Weger v. City of Ladue*, 500 F.3d 710, 171 (8th Cir. 2007).

As with Plaintiff's equal-protection/discrimination claim, Defendants argue they are entitled to qualified immunity on Plaintiff's hostile-work-environment claim because Plaintiff has failed to state a claim against all Defendants and because Defendants Beutler, McDaniel, and Casady were not personally involved in the alleged constitutional violations. As discussed above, I have concluded that Plaintiff has stated a plausible hostile-work-environment claim as against all Defendants. As to Defendants Beutler, McDaniel, and Casady specifically, I concluded above that these Defendants had notice of, and participated in, repeated acts of gender-based discrimination and retaliation within LF&R by ignoring known complaints about, and investigations into, the incidents that formed the basis of Plaintiff's hostile-work-environment claim. Plaintiff has also alleged that these Defendants exonerated employees who committed acts contributing to the hostile work environment; failed to adequately remedy the discrimination, retaliation, and resulting hostile environment; and each of these Defendants' deliberate inaction proximately caused injury to Plaintiff.

Defendants have neither identified nor discussed any cases establishing that they are entitled to qualified immunity in these circumstances, nor has the court found any.[9] "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face

---

[9]The court takes judicial notice of the jury verdict in the amount of $1,177,815.43 in *Hurd v. City of Lincoln*, No. 4:16CV3029, Filing No. 250 (D. Neb. Feb. 26, 2019), in favor of Troy Hurd and against the City of Lincoln on Hurd's Title VII and NFEPA claim that he was retaliated against after complaining about sexual and national-origin discrimination of a fellow female LF&R firefighter and the resulting hostile work environment. Hurd had complained about the discrimination and hostile work environment to LF&R personnel, City management, and the NEOC/EEOC.

of the complaint," *Carter*, 831 F.3d at 1107 (internal quotation marks and citation omitted), and they have failed to do so. Accordingly, Defendants' Motion to Dismiss Plaintiff's equal-protection/hostile-work-environment claim will be denied without prejudice to raising the qualified-immunity defense in summary-judgment proceedings.

### b. City of Lincoln

Plaintiff claims that the City of Lincoln had an official policy, practice, or custom of discriminating and retaliating against female firefighters and applied such policy to Plaintiff when she complained about discrimination, retaliation, and the resulting hostile work environment.

A city or county may only be liable under § 1983 if its "policy" or "custom" caused a violation of Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish a governmental "custom," a plaintiff must prove:

1)     The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)     Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)     That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646. *See also Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) ("when a plaintiff alleges an unwritten or unofficial policy, there must be evidence of . . .  a practice, so permanent and well-settled so as to constitute a custom"; "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law.") (internal quotations and citations omitted).

Because Plaintiff cannot bring a § 1983 retaliation claim under the Equal Protection Clause, Plaintiff necessarily has failed to state a § 1983 claim that she was retaliated against in violation of her equal-protection rights due to a City policy, custom, or deliberately indifferent failure to train. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 676 (8th Cir. 2007) ("We note that the alleged facts do not show a constitutional violation by an individual . . . defendant, and therefore, neither the City nor [other defendant in his official capacity] can be liable under § 1983."); *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Therefore, Plaintiff's equal-protection/retaliation claim asserted against the City of Lincoln must be dismissed with prejudice.

However, as to Plaintiff's equal-protection/discrimination and hostile-work-environment claim, Plaintiff alleges numerous specific facts suggesting that City of Lincoln policymaking officials were deliberately indifferent to, or tacitly authorized, a continuing and persistent pattern of gender discrimination and creation of a hostile work environment by LF&R employees as against Plaintiff and other female firefighters, and that such indifference or authorization caused the alleged constitutional violations. Therefore, Defendants' Motion to Dismiss these claims against the City will be denied.

### 5. 42 U.S.C. § 1985 Conspiracy Claim

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss states that she "intends to file a voluntary dismiss[al] of her Conspiracy Claim under Section 1985." (Filing No. 28 at CM/ECF p. 3 n.2.) Therefore, I will not address this claim and will order Plaintiff to file a motion dismissing this claim by a date certain.

### B. Motion to Strike

Defendants move to strike the paragraphs in Plaintiff's Second Amended Complaint that discuss facts relating to the *Hurd* and *Giles* cases because such facts are redundant and because some of the events occurred before Plaintiff joined LF&R. (Filing No. 24 at CM/ECF pp. 16-17.) Defendants also move to strike the allegations related to Plaintiff's visits to her counselor, the fact that a colleague had accessed her private medical records, front pay, back pay, consequential damages, and "all paragraphs that constitute narratives." (*Id.* at CM/ECF pp. 18-20.)

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking a pleading is an "extreme measure" that is "viewed with disfavor and infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citing *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)). "Motions to strike are often considered 'time wasters,' and should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1194 (D. Neb. 2015) (citations omitted). "[E]ven matters that are not strictly relevant to the principal claim at issue should not necessarily be stricken, if they provide important context and background to claims asserted or are relevant to some object of the pleader's suit." *Diaz v. Kelm*, No. 4:18CV3042, 2018 WL 3448268, at *1 (D. Neb. July 17, 2018) (internal quotation marks and citations omitted).

I decline to strike the items identified by Defendants because: (1) the facts relating to the *Hurd* and *Giles* cases are relevant to the alleged long-standing unconstitutional custom of discrimination and creation of a hostile work environment under *Monell*, *see Smith v. Ashland, Inc.*, 250 F.3d 1167, 1173 (8th Cir. 2001) ("[A] hostile work environment claim, by nature, constitutes a continuing violation," which allows the court to "consider background evidence from the pre-limitations period [which] may be relevant to illuminate whether [the plaintiff's] work environment during the limitations period was sufficiently hostile." (internal quotation marks and citations omitted)); *Mahler v. First Dakota Title Ltd. P'ship*, No. 16-CV-4127, 2018 WL 1096838, at *7 (N.D. Iowa Feb. 28, 2018) ("Eighth Circuit case law establishes that the harassment of other employees may be relevant to a hostile work environment claim."); (2) Plaintiff's visits to her counselor are relevant to damages; (3) the fact that Defendant Linke accessed Plaintiff's private medical records, which were then used to force Plaintiff to abandon her discrimination and harassment complaint against the City, is relevant in assessing the LF&R work environment and management's effort to conceal Plaintiff's protected activity; (4) whether Plaintiff is entitled to front pay, back pay, or other damages cannot be assessed at this stage, and Defendants have not shown that such damages are non-recoverable in Title VII cases, *see* Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, Jury Inst. No. 5.70 (2018) (describing types of actual damages allowed in Title VII cases); and (5) although annoyingly lengthy, the "paragraphs that constitute narratives" provide context and background to the claims asserted. Accordingly, Defendants' Motion to Strike will be denied in its entirety.

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing No. 23) is **<u>GRANTED in part</u>** in the following particulars:

    a. Defendants' Motion to Dismiss Plaintiff's Title VII and NFEPA claims (COAs 1-6) against the Defendants Beutler, Casady, McDaniel, Linke,

Benes, Jones, Merryman, and Mahler in their individual capacities is granted because such claims may only be asserted against Defendant City of Lincoln.

b. Defendants' Motion to Dismiss Plaintiff's equal-protection claim (COA 7) asserted against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their official capacities is granted as redundant of the same claim asserted against the City of Lincoln.

c. Defendants' Motion to Dismiss Plaintiff's § 1983 equal-protection/retaliation claim (part of COA 7) against the City of Lincoln is granted.

d. Defendants' Motion to Dismiss Plaintiff's § 1983 equal-protection/retaliation claim (part of COA 8) against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their individual capacities is granted, as such claim fails as a matter of law.

2. Defendants' Motion to Dismiss (Filing No. 23) is **<u>DENIED in part</u>** in the following particulars:

a. Defendants' Motion to Dismiss Plaintiff's gender-discrimination claims against the City of Lincoln under Title VII and the NFEPA (COAs 2 & 5) is denied.

b. Defendants' Motion to Dismiss Plaintiff's retaliation claims against the City of Lincoln under Title VII and the NFEPA (COAs 3 & 6) is denied.

c. Defendants' Motion to Dismiss Plaintiff's hostile-work-environment claims against the City of Lincoln under Title VII and the NFEPA (COAs 1 & 4) is denied.

d.  Defendants' Motion to Dismiss Plaintiff's § 1983 equal-protection/discrimination and equal-protection/hostile-work-environment claims against the City of Lincoln (COA 7) is denied.

e.  Defendants' Motion to Dismiss Plaintiff's § 1983 equal-protection/discrimination claim against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their individual capacities (part of COA 8) on qualified-immunity grounds is denied without prejudice to raising the qualified-immunity defense in summary-judgment proceedings.

f.  Defendants' Motion to Dismiss Plaintiff's § 1983 equal-protection/hostile-work-environment claim against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their individual capacities (part of COA 8) on qualified-immunity grounds is denied without prejudice to raising the qualified-immunity defense in summary-judgment proceedings.

3.  Pursuant to Plaintiff's representation in her Brief in Opposition to Defendants' Motion to Dismiss and Motion to Strike (Filing No. 28) that she will move for dismissal of her 42 U.S.C. § 1985 conspiracy claim (COA 9), Plaintiff shall file an unopposed motion dismissing this claim by **May 2, 2019**.

4.  Defendants' Motion to Strike (Filing No. 23) is **DENIED**.

5.  Plaintiff's claims going forward at this point are as follows:

a.  Plaintiff's Title VII and NFEPA claims (COAs 1-6) for gender discrimination, retaliation, and hostile work environment against the City of Lincoln;

31

b.    Plaintiff's § 1983 equal-protection claims against the City of Lincoln (COA 7) for gender discrimination and hostile work environment; and

c.    Plaintiff's § 1983 equal-protection claims against Defendants Beutler, Casady, McDaniel, Linke, Benes, Jones, Merryman, and Mahler in their individual capacities (COA 8) for gender discrimination and hostile work environment.

DATED this 22nd day of April, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge