## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA BENSON,<br><br>        **Plaintiff,**<br><br>  vs.<br><br>CITY OF LINCOLN, a political subdivision;<br>CHRIS BEUTLER, TOM CASADY, DOUG<br>MCDANIEL, TIM LINKE, LEO BENES,<br>ERIC JONES, DARREN MERRYMAN,<br>and SHAWN MAHLER,<br><br>        **Defendants.** | **4:18CV3127**<br><br><br>**ORDER** |

This matter comes before the Court on Defendants' Motion for Protective Order (Filing No. 164). Defendants seek a court order protecting from disclosure certain documents sought by Plaintiff on the basis that they are protected by the attorney-client privilege and/or attorney work-product doctrine. Defendants also seek to prohibit or limit the scope of depositions of two former city attorneys, a Battalion Chief, and a Lincoln Fire and Rescue Department ("LFR") administrative officer, asserting attorney-client privilege and/or relevance objections. Plaintiff disputes that the attorney-client privilege and/or work product privilege apply to any of the documents withheld by Defendants, but that even if a privilege applied, Defendants have expressly and/or impliedly waived it by, among other reasons, selectively disclosing some of the documents and by raising a *Faragher-Ellerth* affirmative defense. For the following reasons, the Court will grant the motion, in part.


## BACKGROUND

Plaintiff, a female firefighter and emergency medical technician, filed this action against her now-former employers on July 6, 2018, asserting claims of sex discrimination, harassment, and retaliation under Title VII, the Nebraska Fair Employment Practices Act, and 42 U.S.C. § 1983. Plaintiff alleges the defendants' discriminatory and retaliatory treatment of her began in October 2014 when she was first assigned to Station 8 with Captain Shawn Mahler ("Mahler") and continued for several years until her employment was terminated on October 19, 2021. (Filing No. 1; Filing No. 188 - Fourth Am. Compl.; Filing No. 172-2 - Dismissal Letter). Plaintiff alleges LFR officials and/or City of Lincoln officials named in this lawsuit were aware

of the alleged discrimination, harassment, and retaliation, and failed to take appropriate remedial measures and conducted inadequate investigations in response to her complaints.

Plaintiff claims she has been the recipient of additional retaliation during the pendency of this litigation. Plaintiff asserts one such instance of retaliation (and the subject of one of the primary discovery disputes before the Court) took place on April 26, 2021, four days after she filed a report with LFR Administrative Officer Aishah Witte ("Witte") regarding Mahler's alleged disparaging comments to another firefighter about Plaintiff and her recent discrimination complaints. (Filing No. 188 at pp. 32-33). On April 26, both Plaintiff and Mahler were dispatched to a cardboard storage warehouse fire (hereinafter, "the April Warehouse Fire"). Plaintiff was Acting Captain of Truck 1 ("T1"), and Mahler was captain of Truck 8 ("T8"). Plaintiff asserts T1 "was assigned to assist with ventilation," but "Mahler refused to make eye contact" with Plaintiff, "did not indicate how [Plaintiff]'s crew should assist with his ventilation plan," ignored or refused to communicate with Plaintiff, and "deserted T1 in . . . an immediately dangerous to life or health environment" during the April Warehouse Fire. Plaintiff alleges Mahler's actions were retaliatory and violated LFR's incident command policies and department best practices. (Filing No. 188 at pp. 33-34).

Following this incident, on May 4, 2021, Plaintiff reported Mahler's conduct to her supervising captain, Captain Curt Faust ("Faust"), who had served as an Acting Battalion Chief and the Incident Commander over the April Warehouse Fire. Plaintiff alleges that, at Faust's direction, on May 5, 2021, she "made a detailed complaint to Faust and Witte[.]" Plaintiff alleges "Faust elevated the complaint to [Interim Fire Chief, David] Engler, who assigned Witte to investigate it." Plaintiff asserts Witte did not adequately investigate Plaintiff's complaint and requested that the City retain an independent investigator to investigate her complaint. (Filing No. 188 at p. 35). On June 11, 2021, Plaintiff filed a motion for preliminary injunction requesting that the court order the City to initiate disciplinary proceedings against Mahler; enjoin Mahler from assignment/dispatch to any fire scene during the pendency of disciplinary proceedings; and appoint an independent, third-party investigator to investigate Plaintiff's complaint about Mahler's actions at the April Warehouse Fire. (Filing No. 112 at p. 2).

On June 14, 2021, the City contacted Torrey Gerdes ("Gerdes"), an attorney with a private law firm, to conduct a third-party independent investigation of the April Warehouse Fire. (Filing No. 167 - Gerdes Aff.). The City retained Gerdes on June 22, 2021. (Filing No. 167-1 -

Retention Letter).  Gerdes and another attorney at her firm, Susan Foster ("Foster"), worked together to conduct the investigation.  During the investigation, Gerdes interviewed Plaintiff, Mahler, and eleven other individuals.  Gerdes also conducted follow-up interviews with several of those individuals.  During the investigation, Gerdes and Foster took and prepared notes and prepared and created documents, including interview outlines, interview summaries, and annotated documents, which Gerdes states contains their mental impressions, conclusions, and opinions.  (Filing No. 167 at p. 2).  Gerdes completed the investigation on July 30, 2021, and prepared a written Investigation Report, which she sent to the City on August 20, 2021.  Gerdes marked her Investigation Report as "Privileged and Confidential Attorney Work Product." (Filing No. 167-2).

Shortly before Gerdes provided her Investigation Report to the City, Senior United States District Judge Richard G. Kopf denied Plaintiff's motion for preliminary injunction:

> . . . because the relief requested in the Motion is not of the "same character as that which may be granted finally," . . . and the effect of the relief requested in [Plaintiff]'s Motion will not be to "preserve the status quo until the merits are determined," . . . but to micromanage personnel procedures and decisions of LFR.

(Filing No. 146 at p. 10)(citations omitted).  And, in considering the equities, Senior Judge Kopf further found:

> To the extent Plaintiff requests that the court enjoin Mahler's retaliatory or discriminatory conduct, Plaintiff has failed to show that Mahler engaged in any such conduct in this instance. The evidence shows that, with the exception of Plaintiff, no person on Mahler's and Plaintiff's crew, nor the Incident Commander or the Safety Officer, believed that Mahler was a Ventilation Group Supervisor, that Mahler abandoned Plaintiff and her crew in a dangerous situation, or that Mahler was duty-bound to direct or supervise Plaintiff and her crew. In short, there is no evidence that Plaintiff and Mahler were anything more than peers in the incident at issue.

(Filing No. 146 at p. 12).  Judge Kopf's Memorandum and Order was filed on August 16, 2021, and Gerdes provided her Investigation Report to the City on August 20, 2021.  (Filing No. 167).

According to Gerdes, on September 15, 2021, she emailed to the City the audio recordings of her interview with Plaintiff dated July 14, 2021.  Gerdes also understood that the City Law Department provided her Investigation Report and the audio recordings of her interview with Plaintiff to the local union for LFR, the union's counsel, and to Plaintiff's

3

counsel. Gerdes avers she has "not provided audio recordings of any other interviews other than Plaintiff Benson to the City or to any third-party." (Filing No. 167 at p. 2).

Following Gerdes' investigation, Plaintiff's employment was terminated. Her pre-discipline hearing was held on October 12, 2021, and Chief Engler authored a letter terminating her employment on October 19, 2021. Chief Engler stated his employment decision was based upon the evidence and testimony at the pre-discipline hearing and the following:

> a. Transcript/Audio Recording of the April Warehouse Fire
> b. Judge Kopf's Memorandum and Order denying Plaintiff's motion for preliminary injunction
> c. Investigation Report of Gerdes
> d. Plaintiff's statements to Gerdes during the April Warehouse Fire investigation
> e. Declarations and/or statements of witnesses involved in the April Warehouse Fire filed by the City in this case on July 27, 2021
> f. Plaintiff's sworn statement dated June 11, 2021, filed in this case

(Filing No. 172-2 at p. 1). Chief Engler stated his reasons for terminating Plaintiff's employment:

> The evidence confirms that you made serious false allegations against a fellow firefighter. You reported to Lincoln Fire and Rescue (LF&R) and have continuously stated thereafter that you and your crew were abandoned in a dangerous burning warehouse by Captain Shawn Mahler at the April 26, 2021 fire scene. You also stated that his behavior "could have injured or killed [you], FAO Roberts, and FF Recruit Hurley." See, e.g., your June 11, 2021 sworn statement and incorporated attachments filed in Case No. 4:18CV3127. However, none of the evidence, audio recording/transcript, witness statements, the findings of investigator Torrey Gerdes, or the findings of Judge Kopf lend any credibility to your statements.

(Filing No. 172-2 at pp. 1-2).

On September 29, 2021, Plaintiff filed Notices of Intent to Serve Rule 45 subpoenas requesting the contents of Gerdes' and Foster's investigation files, including audio and video interview recordings, documents, notes, memoranda, and materials reviewed during the investigation, and communications regarding the investigation. (Filing No. 158 at p. 6; Filing No. 159 at p. 6). Defendants have produced Gerdes' Investigation Report and the audio tape recording of Gerdes' interview with Plaintiff during the investigation. The City objects to

producing anything else on the basis of the attorney-client privilege and/or work product doctrine.[1]   ([Filing No. 165 at p. 10](#)).

Another discovery dispute before the Court pertains to Plaintiff's request for documents of former Assistant City Attorney Elizabeth Elliott ("Elliott") and former City Attorney Jeffrey Kirkpatrick ("Kirkpatrick"), related to their respective roles in addressing Plaintiff's 2016 complaints of discrimination, retaliation and/or unauthorized disclosure of her protected health information.  Plaintiff also seeks to depose both Kirkpatrick and Elliott.

Plaintiff claims her private medical information was disclosed in March 2016, in violation of HIPAA.  ([Filing No. 188 at p. 18](#)).  Between February and April 2016, Elliott investigated the potential HIPAA breach.  During Elliott's investigation, she communicated by email with Battalion Chief Roger Bonin and EMS Business Manager and Privacy Officer Sherrie Meints at LFR, and Public Health Informatics and Planning Manager Cook at the Lincoln-Lancaster County Health Department.  ([Filing No. 166-4](#)).  Plaintiff alleges the investigation revealed that Interim Fire Chief Tim Linke disclosed Plaintiff's private medical information to Ron Trouba, Jr., the Vice President of the Local 644 Firefighter's Union.  ([Filing No. 188 at p. 21](#)).  Kirkpatrick, who was the City Attorney for the City of Lincoln from June 2014 to July 2020, was "informed" of an investigation into a potential HIPAA breach of Plaintiff's information, but was "not directly involved in that investigation."  In his capacity as the City Attorney, Kirkpatrick sent a letter to Plaintiff on August 31, 2016, reporting on the HIPAA investigation.  ([Filing No. 166-3](#)).

Aside from Plaintiff's HIPAA complaint, Kirkpatrick was informed at the beginning of 2016 that Plaintiff had filed an internal EEO complaint for discrimination and retaliation that was being investigated by Kimberly Taylor-Riley ("Taylor-Riley").  On May 6, 2016, Taylor-Riley drafted a report of her investigation, ([Filing No. 115-5](#)), which report Kirkpatrick reviewed. Kirkpatrick avers he "subsequently provided written and verbal legal advice through emails, revised reports, and memorandums to the Mayor's Office and other department directors regarding that investigation, report, and other matters."   ([Filing No. 166-3](#)).  Plaintiff states

---

[1] The City Attorney's Office "offered to [LFR] union legal counsel to ask Torrey Gerdes if she would make the audio recordings available to the union to listen to them," but no one followed through with the offer.  Defense counsel's offered compromise to Plaintiff's counsel was to "request to make all the audio recordings available to her in exchange for Plaintiff's counsel agreeing not to seek the remainder of the file that was work product and attorney client privileged, but Plaintiff's counsel insisted that the entire file be produced . . ." ([Filing No. 166-1](#)).

Taylor-Riley's report concluded Plaintiff "had been discriminated and retaliated against by Mahler." ([Filing No. 188 at pp. 22-25](#)).

Plaintiff now requests any reports, memos, and communications of Elliott and Kirkpatrick from their investigations. The City first responds that Kirkpatrick did not conduct a separate "investigation" of Plaintiff's EEO complaint, but instead only reviewed Taylor-Riley's investigative report and provided legal advice based upon the report. ([Filing No. 176 at p. 3](#)). The City asserts all the documents requested by Plaintiff as to Elliott and Kirkpatrick are protected by the attorney-client and/or work product privileges. The City produced a privilege log and a USB storage device containing 126 emails for the court's *in camera* review regarding this privilege claim.[2] Additionally, the City argues that Plaintiff has not met the difficult burden required to depose Kirkpatrick or Elliott, as opposing counsel. ([Filing No. 165 at pp. 6-7](#)).

The last area of dispute pertains to Plaintiff's request for discovery related an internal EEO complaint filed by Witte on September 18, 2020, wherein Witte alleged Assistant Chief Pat Borer treated her "in an unfair, disrespectful, and now threatening manner which appears to be based at least in part on my sex." ([Filing No. 143-31](#)). Plaintiff seeks to depose Borer and Witte regarding Witte's EEO complaint. In the fall of 2020, the City Attorney's Office hired Tara Tesmer Paulson, an attorney at a private law firm, to conduct an independent investigation into the internal complaint filed by Witte against the then-Interim LFR Chief Pat Borer. Plaintiff asserts documents from Paulson's investigation into Witte's complaint against Borer are relevant as "me too" and widespread practice evidence. The City argues Witte's complaints about Borer are irrelevant to Plaintiff's claims in this lawsuit, and, similar to Gerdes' investigation file, Paulson's investigative file and report are protected from disclosure by the attorney-client privilege and work product doctrines. ([Filing No. 176 at pp. 8-10](#)).

Defendants have filed the instant motion asking the court to enter a protective order as to the following due to the attorney client privilege and/or work product doctrine:

    a.    Documents and emails listed in Defendants' Privilege Log submitted *in camera*;
    b.    Reports and memorandums of former City Attorney Kirkpatrick;
    c.    The scope of the deposition of Kirkpatrick;
    d.    The scope of the deposition of former Assistant City Attorney Elliott;
    e.    The depositions of Battalion Chief Borer and Witte; and

---

[2] Following a hearing held before the undersigned magistrate judge on February 11, 2022, regarding additional discovery disputes, the City also provided to the Court for *in camera* review a document authored by Kirkpatrick and withheld by Defendants entitled, "Dispositional Memorandum Revised." The Court has reviewed this document *in camera*.

      f.     Documents and recordings containing attorney work product/mental impressions of Gerdes and Foster.

(Filing No. 164).

# ANALYSIS

Federal Rule of Civil Procedure 26(b) provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The disputes before the court primarily implicate the scope of the attorney-client and work-product privileges.

"'The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.'"[3] *United States v. Yielding*, 657 F.3d 688, 706-07 (8th Cir. 2011)(quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *Id.* at 707. The principle behind the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. The same objectives of the attorney-client privilege "apply to governmental clients" and "aid[] government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011)(quoting 1 Restatement (Third) of the Law Governing Lawyers § 74, Comment b, pp. 573-574 (1998)).

For the attorney-client privilege to apply, "the parties to the communication in question must bear the relationship of attorney and client," and "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1978)(en banc). The attorney-client privilege also applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role in addition to when they represent their clients in litigation. *Martinez v. Cty. of Antelope, Nebraska*, No. 4:15CV3064, 2016 WL 3248241, at *7

---

[3] Because Plaintiff's claims arise under federal law, the federal law of privilege applies to this issue. See *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).

(D. Neb. June 13, 2016)(citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)). The attorney-client privilege does not apply where a lawyer acts in another capacity, such as a scrivener or business advisor. See *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984)(citations omitted); *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012)(citation omitted)("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply."). When a client communicates with an attorney, it is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary." *Diversified*, 572 F.2d at 610. A party withholding documents based on attorney-client or work-product privilege bears the burden of proving that privilege. See *id.* at 609.

A party may waive the attorney-client privilege. "The attorney client privilege cannot be used as both a shield and a sword," and a party cannot claim it relied on counsel's advice without permitting the opposing party to explore the substance of that advice. *United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998). Additionally, "Voluntary disclosure of attorney client communications expressly waives the privilege," and such waiver "covers any information directly related to that which was actually disclosed." *Id.* at 1263.

As to the work-product doctrine, Rule 26(b)(3) allows a party to discover materials "prepared in anticipation of litigation" only upon a showing that the requesting party has a substantial need for the material and cannot obtain the material or its equivalent elsewhere without incurring undue hardship. See *Fed. R. Civ. P. 26(b)(3)(A)(ii)*. To determine whether a document was prepared in anticipation of litigation, the court must consider whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G. D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). But, "there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." *Id.*

There are two categories of work-product: ordinary work product and opinion work product. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinary work product "includes raw factual information" and is discoverable only if the party seeking discovery has "a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* (citing *Fed. R. Civ. P. 26(b)(3)*). Opinion work

product includes "counsel's mental impressions, conclusions, opinions or legal theories" and "enjoys almost absolute immunity and can be discoverable only in very rare and extraordinary circumstances, such as when the materials demonstrate that an attorney engaged in illegal conduct or fraud." *Id.* (citation omitted).  The party seeking to overcome the work-product protection bears the burden of establishing substantial need and undue burden. See *id.* The work product doctrine reflects a "strong public policy" of discouraging "[i]nefficiency, unfairness and sharp practices . . . in the giving of legal advice and in the preparation of cases for trial;" without such confidentiality, "the interests of the clients and the cause of justice would be poorly served."  See *Upjohn*, 449 U.S. at 398 (citation omitted).

### I.   Documents sought from former City Attorneys Kirkpatrick and Elliott

Plaintiff seeks production of reports, memorandums, and communications of Kirkpatrick and Elliott related to their respective "investigations" of Plaintiff's 2016 complaints of discrimination, retaliation and/or unauthorized disclosure of her protected health information. Plaintiff argues Defendants have not met their burden to show a privilege applies; that Kirkpatrick and Elliott were acting in their business capacities rather than legal capacities; and, even if Kirkpatrick and Elliott were acting as legal advisors, Defendants waived any claim of privilege.  (Filing No. 170 at p. 26).  Plaintiff argues Kirkpatrick and Elliott, as employees of the City, "wore two hats" and often provided non-privileged business advice akin to in-house counsel; in fact, Plaintiff contends there is a presumption that in-house counsel provides business advice rather than legal advice.  (Filing No. 170 at p. 27)(citing *Lindley v. Life Invs. Ins. Co. of Am.*, 267 F.R.D. 382, 389 (N.D. Okla. 2010)).

With respect to Kirkpatrick, Plaintiff asserts he conducted an "investigation" of Plaintiff's 2016 EEO complaint, evidenced by former Mayor Chris Beutler's letter to Plaintiff dated July 25, 2016.  (Filing No. 170 at p. 29).  However, in that letter the mayor states, "City Law has advised me that they do not believe the investigative record supports a gender discrimination or retaliation claim," although the circumstances surrounding Plaintiff's allegations were "concerning."  (Filing No. 126-2).  Defendants point out that the mayor's letter makes no reference to a separate "investigation" by Kirkpatrick.  Instead, as Kirkpatrick states in his sworn affidavit, he reviewed Taylor-Riley's investigative report and "provided written and verbal legal advice through emails, revised reports, and memorandums to the Mayor's Office[.]"

(Filing No. 166-3).  The record before the Court demonstrates that Kirkpatrick's involvement with Plaintiff's 2016 EEO complaint was solely in his capacity as a legal advisor to the City,[4] which is confirmed by the Court's *in camera* review of emails submitted by Defendants in connection with this motion, as well as the Court's review of Kirkpatrick's Dispositional Memorandum submitted to the Court *in camera* on February 11, 2022.  See *Mauer v. Union Pac. R.R. Co.*, No. 8:19CV410, 2021 WL 4948931, at *1 (D. Neb. Oct. 25, 2021)("The essence of providing legal advice is applying the facts to the law and providing an opinion to the client on how to lawfully proceed.").

The Court also rejects Plaintiff's assertion that the mayor expressly waived the attorney-client privilege "when he disclosed Kirkpatrick's findings" to Plaintiff in his letter.  (Filing No. 170 at pp. 29-30).  Kirkpatrick was provided with Taylor-Riley's investigative report and, in his capacity as city attorney, he reviewed the report and provided an opinion to the mayor as to how to lawfully proceed.  The letter from the mayor informs Plaintiff as to the action that the City was going to take regarding her complaint, but nothing in the mayor's letter broadly waived the attorney-client privilege afforded to the city attorney in arriving at that recommended course of action.  Therefore, the communications, documents, reports, memoranda, and the like, generated by Kirkpatrick in connection with this review and recommendations for action based upon his review of Taylor-Riley's report are properly withheld as privileged.  See *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643 (8th Cir. 2001)("The attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action.").

Unlike Kirkpatrick, Elliott did investigate Plaintiff's claim that her private health information was disclosed in violation of HIPAA.  (Filing No. 166-4 at p. 1).  Still, that does not necessarily mean Elliott's communications are not privileged.  See *Crutcher-Sanchez v. Cty. of Dakota, Neb.*, No. 8:09CV288, 2011 WL 612061, at *7 (D. Neb. Feb. 10, 2011)("[F]actual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege.")(citation omitted).   As with any entity, when deciding if a governmental entity's emails are privileged, the court considers whether (1) the communication was made for the purpose of securing legal advice; (2) the employee who made the communication did so at the direction of her superior; (3) the superior was making the request to

---

[4] The city attorney is "the legal advisor of the mayor, the city council, and city officers of a city of the primary class."  Neb. Rev. Stat. § 15-322.

obtain legal advice for the entity; (4) the subject matter of the communication is within the scope of the employees' duties; and (5) the communications between the employee and the attorney were not disseminated beyond those persons who, because of the entity's structure, needed to know its contents. *Martinez*, No. 4:15CV3064, 2016 WL 3248241, at *7.

After review of the emails submitted by Defendants in *camera*, the Court finds Defendants have properly withheld emails to or from Elliott regarding the HIPAA investigation, as they are protected by the attorney-client privilege. Elliott was contacted by Linke on February 3, 2016, to determine whether a certain set of facts presented a HIPAA violation and what actions should or could be taken. (Privilege Log Item 67). The subject of this request was within the scope of Elliott's duties as an assistant city attorney providing legal advice to the City, not business advice. Elliott then provided legal opinions and advice to the City, and the Court does not have evidence such advice was disseminated beyond those persons who need to know its contents. Therefore, Elliott's communications as submitted *in camera* are protected by the attorney-client privilege.

## II.       Depositions of Kirkpatrick and Elliott

For similar reasons as above, the City seeks to prohibit depositions of Kirkpatrick and Elliott, or at least strictly limit them. (Filing No. 176 at pp. 4-7). "A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts, and it is difficult to persuade a court to do so." *Raml v. Creighton University*, No. 8:08CV419, 2009 WL 3335929, *2 (D. Neb. Oct. 15, 2009). And, the federal rules do not forbid deposing the counsel of an opposing party. *Desert Orchid Partners, LLC v. Transaction System Architects, Inc.*, 237 F.R.D. 215, 218 (D. Neb. 2006). Nevertheless, "federal courts have disfavored the practice of taking the deposition of a party's attorney" and have made clear that "the practice should be employed only in limited circumstances." *Id.* (quotation omitted). The Eighth Circuit has established a three-prong test for when a party may depose opposing counsel: "(1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

Plaintiff disputes that Kirkpatrick or Elliott qualify as "opposing trial counsel" and thus argues the *Shelton* three-prong test is inapplicable. (Filing No. 170 at pp. 30-32). *Shelton* may

not apply where the lawyer to be deposed solely acted as a business advisor to the party, rather than its counsel. See *Price v. Jarett*, No. 8:15CV200, 2017 WL 1437056, at *3 (D. Neb. Apr. 21, 2017)(citations omitted). But, where opposing in-house counsel has served as legal counsel regarding matters at issue in the pending litigation, *Shelton* properly applies. See *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 422-23 (8th Cir. 2019)(finding *Shelton* applied to the plaintiff's request to depose in-house defense counsel about her conversations with other employees and whether the plaintiff's employment record caused his termination); *Desert Orchid Partners*, 237 F.R.D. at 220 (concluding *Shelton* applied to plaintiff's request to depose former chief in-house counsel for the defendant); see also *Newkirk v. ConAgra Foods, Inc.*, No. 8:10CV22LSCFG3, 2010 WL 2135263, at *5 (D. Neb. May 27, 2010)(rejecting the plaintiffs' argument that *Shelton* did not apply because the attorney sought to be deposed were not the defendant's "trial" attorneys; "The principles announced in *Shelton* were not limited to 'trial' attorneys[.]").

The Court finds that *Shelton* applies to Plaintiff's request to take depositions of Kirkpatrick and Elliott. Both attorneys were employed by the City and provided legal advice to the City regarding matters at issue in the ongoing litigation. The Court further finds Plaintiff has not satisfied the elements of *Shelton* showing she should be entitled to depose Kirkpatrick or Elliott. Therefore, in order to depose Kirkpatrick and Elliott, Plaintiff must show "(1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

Plaintiff has not shown that any of the *Shelton* factors apply to Kirkpatrick's deposition. As discussed above, Kirkpatrick's only role in Plaintiff's 2016 EEO claim was to review Taylor-Riley's investigation and provide legal advice regarding the City's course of action. Any relevant information he has is privileged, not "crucial" to the case, and can be obtained from other sources, such as Taylor-Riley herself.

Elliott may have relevant and nonprivileged information regarding facts she learned during the course of her investigation into the potential HIPAA breach. However, Elliott is not the only source of that information. There are other means to obtain the same factual information, such as from Linke and Meints. Nor is Elliott's information "crucial" to the preparation of Plaintiff's case; Plaintiff's discrimination, retaliation, and harassment claims do

12

not rise or fall upon what facts Elliott learned during her investigation into this HIPAA issue. Under the circumstances, the Court finds Plaintiff has not shown the necessity of deposing Kirkpatrick and Elliott under *Shelton*.

### III.   Additional Miscellaneous Emails Submitted *In Camera*

The Court's discussion above does not address all the emails submitted *in camera*.  It is not completely clear to the Court whether any of the emails submitted *in camera* have been disclosed to Plaintiff, as they are not listed in the Privilege Log.[5]  For example, InCamera-242 to 247 contain email threads dated between January 28, 2016, and March 11, 2016, with the Subject Line "Re: New Complaint," sent to or from Linke in response to Taylor-Riley's email notifying Linke about Plaintiff's new complaint concerning gender.  Defendants' Privilege Log only lists emails dated March 14, 2016, with the subject line "Re: New Complaint" as being withheld on the basis of privilege.  (See Privilege Log Items 122-124).  The Court has reviewed the March 14, 2016, emails and does agree they are properly withheld on the basis of attorney-client privilege.  However, if Defendants have withheld any other emails prior to March 14, 2016, in the "Re: New Complaint" thread, they are not privileged and should be disclosed.

It is also not clear whether emails found on InCamera-14 to 15 have been disclosed.  The email on InCamera15 is dated July 18, 2016, with the subject line "Transfer" sent from Daren Merryman to Plaintiff, cc-ing Benes and Trouba.  InCamera-14 contains Plaintiff's July 22, 2016, response to that email.  These emails are not privileged (nor are they listed on the Privilege Log) and should be disclosed if they have not been already.  But, the Court finds Defendants did properly withhold the three emails related to the "Transfer" thread of emails listed as Items 9-11 in the Privilege Log.

Additionally, there are several emails submitted to the Court *in camera* that, based upon the limited information in Defendant's Privilege Log, seemed potentially relevant to Plaintiff's allegation of a HIPAA breach.  (See, e.g., Privilege Log Items 64, 76, 83, 101-102, 106, 114, 117-120).  However, review of these emails *in camera* substantiate Defendants' assertion that these emails are completely unrelated to Plaintiff and any issue in this lawsuit.  (Filing No. 165 at p. 4).  The Court finds Defendants have properly withheld these irrelevant communications.

---

[5] This confusion may be due, in part, to the undersigned magistrate judge's belated foray into the present discovery dispute after the case was reassigned in November 2021.

IV.   **Gerdes' April Warehouse Fire Investigation**

The bulk of Plaintiff's briefing focuses on her request for the contents of Gerdes' April Warehouse Fire investigative file, including audio and video interview recordings, documents, notes, memoranda, and materials reviewed during the investigation, and communications regarding the investigation.  Defendants have produced Gerdes' Investigative Report and the audio tape recording of Gerdes' interview with Plaintiff during the investigation.  The City objects to producing anything else on the basis of the attorney-client privilege and/or work product doctrine.

Plaintiff first disputes that Gerdes' investigation and related communications are privileged at all.  (Filing No. 170 at pp. 5-11).  Plaintiff asserts Gerdes conducted an investigation in the regular course of Defendants' operations and not for the purpose of litigation because the City and LFR policies require such investigation.  (Filing No. 115-3).  Plaintiff argues that, if Defendants "effectively disavow that the investigation had anything to do with enforcement of their EEO polices," then "the report is completely irrelevant" and will move in limine to exclude any evidence Defendants investigated this retaliation claim.  (Filing No. 170 at p. 11).

The Court finds Gerdes' investigative file is privileged work product that was created in anticipation of litigation rather than the regular course of Defendants' operations.  See Fed. R. Civ. P. 26(b)(3)(A)(ii)("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation[.]").  After Plaintiff filed her internal complaint regarding the April Warehouse Fire, Defendants tasked Witte with investigating the complaint in accordance with the City and LFR policies.  Defendants state all materials from Witte's internal investigation have been produced to Plaintiff.  (Filing No. 176 at p. 16).  It was only after Plaintiff filed her motion for preliminary injunction on June 11, 2021, related to the April Warehouse Fire that the City retained the legal services of Gerdes on June 22, 2021.  The scope of Gerdes' engagement was to determine: (1) whether Mahler followed proper protocol when interacting with Plaintiff during LFR's response to the April Warehouse Fire, and (2) if it is determined he did not, what reason(s) or justification(s), if any, exist for deviating from protocol; and to present such findings to the City.  (Filing No. 167-1).  It is clear that at the time Gerdes was retained by the City, litigation on this issue was anticipated.  "[W]ork product protection

14

applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Crutcher-Sanchez v. Cty. of Dakota, Neb.*, No. 8:09CV288, 2011 WL 612061, at *5 (D. Neb. Feb. 10, 2011)(citation omitted).

Plaintiff argues that even if any privilege attached to Gerdes' investigation, the City has waived any claim of privilege over the entire subject matter by voluntarily disclosing Gerdes' Investigative Report and by raising a *Faragher-Ellerth* affirmative defense. Plaintiff contends Defendants are selectively using privileged documents as a sword to support their defenses, but shielding other documents for their own benefit. (Filing No. 170 at pp. 12-15).

"The attorney client privilege cannot be used as both a shield and a sword," and a defendant cannot claim it relied on counsel's advice without permitting the opposing party to explore the substance of that advice. *Workman*, 138 F.3d at 1263-64. "When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). However, what constitutes the "same subject matter" is narrowly construed. See *Davis v. Hugo Enterprises*, No. 8:11CV221, 2013 WL 636009, at *2 (D. Neb. Feb. 20, 2013). "Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." *Broom, Clarkson, Lanphier & Yamamoto v. Kountze*, No. 8:14CV206, 2015 WL 7302226, at *7 (D. Neb. Nov. 18, 2015)(quotation omitted). If an intentional disclosure of work product is made, the protection is waived as to other undisclosed communications or information only if "(1) the waiver was intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a).

The Court finds the City did not broadly waive the privilege over Gerdes' entire investigative file by disclosing Gerdes' Investigative Report, which was marked by Gerdes as Privileged and Confidential. While the City has waived any claim of privilege to the disclosed document, such waiver does not extend to every single document, interview, note, and communication underlying Gerdes' report. "The work product doctrine is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Pittman v. Frazer*, 129 F.3d 983, 987-88 (8th Cir. 1997)(finding the defendant did not waive work product privilege for entire investigatory file despite disclosure of some of the protected material gathered by the investigator). Defendants and their counsel have not even "received or

seen the investigative file of Gerdes and Foster," nor is the file within the City's possession or control. Thus, Plaintiff is on the same footing as Defendant with respect to the investigative file; at a minimum, fairness does not require Gerdes to disclose her privileged work product she has not previously disclosed to anyone, including Defendants. See Fed. R. Evid. 502(a).

Plaintiff also asserts Defendants have impliedly waived any privileged by putting Gerdes' investigation at issue in this case by raising a *Faragher-Ellerth* defense. This defense provides that, if a "supervisor's harassment" does not culminate in tangible employment action, an "employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Thus, "'[w]hen an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation.'" *Robinson v. Vineyard Vines, LLC*, No. 15 CV 4972, 2016 WL 845283, at *4 (S.D.N.Y. Mar. 4, 2016)(quoting *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. at 41). The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party 'relies' on the privileged communication" to prove a claim or defense. *Spanel v. Cent. Cmty. Coll.*, No. 8:18CV380, 2021 WL 5907930, at *3 (D. Neb. Dec. 14, 2021).

Defendants argue they have not impliedly waived privilege by raising a *Faragher-Ellerth* defense to Plaintiff's "much earlier claims for harassment." Defendants contend their *Faragher-Ellerth* defense is inapplicable to Plaintiff's complaint regarding the April Warehouse Fire because that complaint was 1) not for harassment and 2) was not alleged harassment by a supervisor, as Plaintiff and Mahler were peers at that time (because Plaintiff no longer worked at Station 8). (Filing No. 176 at pp. 13-14). The Court agrees. Defendants have not put the reasonableness of Gerdes' investigation at issue because Defendants are not relying on the adequacy of Gerdes' investigation to support their *Faragher-Ellerth* defense. Therefore, they have not impliedly waived privilege. See, e.g., *Crutcher-Sanchez*, No. 8:09CV288, 2011 WL 612061, at *10 (finding the defendants did not impliedly waive privilege where "it does not appear the defendants rely on the adequacy of the [attorney's] investigation" as evidence supporting their *Faragher-Ellerth* affirmative defense).

16

The Court now turns to the specifics of Plaintiff's requests.  Gerdes' notes, summaries, outlines, drafts, and memoranda are opinion work product afforded "almost absolute immunity. See *Baker*, 209 F.3d at 1054 ("[C]ounsel's mental impressions, opinions, or legal theories," and "[n]otes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity.").  This Court has also extended work-product protection to audio recordings and transcriptions of witness interviews. *DatabaseUSA.com, LLC v. Van Gilder*, No. 8:17CV386, 2019 WL 6255084, at *3 (D. Neb. Nov. 22, 2019)(citing *Herrera v. Union Pacific Railroad Co.*, No. 8:15CV426, 2017 WL 1458677, at *1 (D. Neb. Apr. 24, 2017)("Counsel's questions of witnesses are often inexorably intertwined with his thought process and mental impressions, pushing that information into the category of opinion work product—which enjoys almost absolute immunity").

However, audio recordings of witness answers containing "nothing more than a factual recitation of the events," *may* be discoverable as ordinary work product.  See *Herrera*, No. 8:15CV426, 2017 WL 1458677, at *2.  Ordinary work product may be subject to discovery if the plaintiff "shows that [he] has substantial need for the materials to prepare [his] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Still, courts have consistently held there is no "substantial need" for a protected witness statement if the relevant witness is available to testify.  *Gutherless v. Union Pac. R.R. Co.*, No. 8:20CV442, 2021 WL 5771285, at *2 (D. Neb. Dec. 6, 2021)(collecting cases); see also *Baker*, 209 F.3d at 1054 ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.").  Here, all of the witnesses interviewed by Gerdes are available to be interviewed by Plaintiff.  Therefore, even assuming the audio recordings of Gerdes' interviews with witnesses contain pure recitation of facts, Plaintiff has not shown the requisite "substantial need" for the audio recordings.[6]

There is one item not addressed by either party. Chief Engler stated he terminated Plaintiff's employment based, in part, upon the "Transcript/Audio Recording of the April Warehouse Fire."  Gerdes' Investigative Report refers several times to the Radio Transcript of the Warehouse Fire, which is presumably contained within her investigative file.  It is not clear

---

[6] Plaintiff also requests billing statements between Gerdes' and the City.  While billing statements "do not provide any type of legal advice," and thus generally are not are not protected by the attorney-client/work product privileges, *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 660 (D. Neb. 1993), the Court cannot see how these billing statements could be relevant to Plaintiff's claims.

whether the Transcript/Audio Recording referenced by Chief Engler has previously been disclosed to Plaintiff, but in fairness, it should be disclosed if it has not been already.

## V.        Depositions of Witte and Battalion Chief Borer

Plaintiff argues Witte's internal EEO sex discrimination complaint against Borer may be relevant "me too" evidence showing LFR has "treated other women or others who objected to discrimination in a discriminatory manner." Plaintiff therefore seeks to depose both Witte and Borer. (Filing No. 170 at pp. 32-34). Defendants maintain Witte's internal complaint against Borer is irrelevant to this lawsuit because Borer is not a named defendant; Borer was not a decisionmaker with respect to any of Plaintiff's claims; Witte's allegations of discrimination occurred in 2020, "four years after the majority of the allegations in Plaintiff's lawsuit;" and Witte is not a firefighter and works in an administrative role at LFR headquarters. Defendants therefore seek to prohibit Borer's deposition entirely and prohibit inquiry into this topic during Witte's deposition. (Filing No. 165 at p. 9).

The Eighth Circuit has held that "me-too" evidence "should normally be freely admitted at trial" because "an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017)(quoting *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 155-56 (8th Cir. 1990)). "Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices . . . In discrimination cases . . . such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Hawkins*, 900 F.2d at 155. The admissibility of "me too" evidence depends on many factors, "including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Additionally, as identified by Judge Kopf in his April 22, 2019, Memorandum and Order, harassment of other employees may be relevant to a hostile work environment claim, which by nature constitutes a continuing violation. (Filing No. 30 at p. 29)(citing *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1173 (8th Cir. 2001)("[A] hostile work environment claim, by nature, constitutes a continuing violation," which allows the court to "consider background evidence from the pre-limitations period [which] may be relevant to illuminate whether [the plaintiff's] work

environment during the limitations period was sufficiently hostile."); *Mahler v. First Dakota Title Ltd. P'ship*, No. 16-CV-4127, 2018 WL 1096838, at *7 (N.D. Iowa Feb. 28, 2018)).

At this stage of the proceedings, the Court is not concerned with whether the "me too" or background evidence sought by Plaintiff ultimately will be admissible; instead, the Court is only concerned with whether such evidence is discoverable. Information within the scope of Rule 26(b) "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broader than the scope of admissibility. See, e.g., *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Rule 26(b) is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989). And, as stated above, "A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts, and it is difficult to persuade a court to do so." *Raml*, No. 8:08CV419, 2009 WL 3335929, *2.

According to Plaintiff, Borer has served as the Assistant Chief at LFR since 2012 and was alleged to have retaliated against two other employees for bringing forth complaints of sex discrimination of other women in the department. Plaintiff claims the defendants' discriminatory and retaliatory treatment of her began in October 2014, and continued through the date of her termination in October 2021. Plaintiff states Borer was a decisionmaker in her initial complaint of discrimination and retaliation against Mahler. Thus, on the record before the Court, the Court cannot say Witte's allegation of sex discrimination against Borer in 2020 is irrelevant to Plaintiff's claims. Given that "motions seeking to prevent the taking of a deposition is regarded unfavorably by the courts," the Court declines to limit the depositions of Borer and Witte as requested by Defendants.

### VI.     Tara Paulson's Investigation into Witte's Internal Sex Discrimination Complaint against Borer

Defendants' motion and accompanying brief only asks the Court to prohibit or limit the depositions of Borer and Witte regarding Witte's internal discrimination complaint against Borer; it was not apparent until Plaintiff filed her brief in opposition that the present dispute also encompasses Plaintiff's request for Paulson's investigative file from her investigation into Witte's complaint. (Filing Nos. 164-165; Filing No. 170 at pp. 32-34). As stated above, Witte's

complaint of sex discrimination is arguably relevant to Plaintiff's claims.  Based on the limited information before the Court, it appears Defendants did not perform an internal investigation in the regular course of operations in accordance with the City and LFR policies before hiring attorney Tara Paulson to conduct an independent investigation.  (Filing No. 143-32). At first glance, however, even if Paulson's investigation is not privileged, broad discovery into her investigatory files does not seem proportional to the needs of the case when considering their limited importance to Plaintiff's claims.  But, that issue is not squarely before the Court.

Accordingly,


**IT IS ORDERED**: Defendants' Motion for Protective Order (Filing No. 164) is granted, in part, and in part denied as set forth above.


Dated this 11th day of February, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge