IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA BENSON,<br><br>                **Plaintiff,**<br><br>vs.<br><br>CITY OF LINCOLN, a political subdivision; CHRIS BEUTLER, TOM CASADY, DOUG MCDANIEL, TIM LINKE, LEO BENES, ERIC JONES, DARREN MERRYMAN, and SHAWN MAHLER,<br><br>                **Defendants.** | 4:18CV3127<br><br>ORDER |

      This matter comes before the Court on the Motion to Quash and for Protective Order (Filing No. 327) filed by nonparties, Baylor Evnen, LLP and Torrey J. Gerdes, and Defendants' Motion in Joinder (Filing No. 331). These motions request that the Court preemptively limit the scope of Ms. Gerdes' individual deposition noticed by Plaintiff on October 20, 2022, (Filing No. 325), to prohibit Plaintiff from inquiring into certain subject matters protected by the attorney-client and work-product privileges. The Court held oral argument on the motions on November 9, 2022.[1]

## BACKGROUND

      The facts relevant to the issue before the Court is set forth in the Court's Order February 11, 2022. (Filing No. 217). Briefly, the dispute before the Court concerns the permissible scope of discovery into the third-party independent investigation performed by attorney Torrey Gerdes at the request of the City regarding Plaintiff's complaint of retaliation. Plaintiff alleges that she and Captain Shawn Mahler were dispatched to a warehouse fire on April 26, 2021, and during their response Captain Mahler "refused to make eye contact" with Plaintiff, "did not indicate how [Plaintiff]'s crew should assist with his ventilation plan," ignored or refused to communicate with Plaintiff, and "deserted [Plaintiff's truck] in . . . an immediately dangerous to life or health environment." Plaintiff alleges Mahler's actions were retaliatory because she had filed an internal

---

[1] The same issues were previously before the Court in the context of a Rule 30(b)(6) deposition notice issued by Plaintiff to Baylor Evnen. Plaintiff withdrew the Rule 30(b)(6) deposition notice before the motions became ripe for the Court's ruling. Because the same attorney-client and work product privilege issues are raised regarding Ms. Gerdes' individual deposition, the Court will also take into consideration the arguments made by counsel during the September 21, 2022, telephonic hearing on the Rule 30(b)(6) deposition dispute. (Filing Nos. 309-316).

complaint against him four days earlier. Plaintiff asserts her complaint was not adequately internally investigated and requested that the City retain an independent investigator.

The City retained Ms. Gerdes and Baylor Evnen on June 22, 2021, to conduct a third-party independent investigation of the April Warehouse Fire. (Filing No. 167-1). Per Ms. Gerdes' retention letter, the City Attorney's office engaged Baylor Evnen "to conduct an investigation as a neutral, independent third party investigator and to provide legal counsel in a privileged relationship. The City may also request our legal services to conduct future, other employment-related investigation(s) on the City's behalf. . . . The investigation we have been asked to perform is limited in scope to determining (1) whether Captain Shawn Mahler followed proper protocol when interacting with Acting Captain Amanda Benson during LFR's response to that fire call on April 26, 2021, and (2) If it is determined he did not, what reason(s) or justification(s), if any, exist for deviating from protocol; and to present our findings to the City."

Ms. Gerdes and another attorney at Baylor Evnen, Susan Foster, worked together to conduct the investigation. During the investigation, Ms. Gerdes interviewed Plaintiff, Mahler, and eleven other individuals. Ms. Gerdes also conducted follow-up interviews with several of those individuals. Ms. Gerdes completed the investigation on July 30, 2021, and prepared a written Investigation Report, which was marked as privileged and confidential by the firm, sent to the City on August 20, 2021. The City produced the Investigation Report (Filing No. 167-2) and Ms. Gerdes' audiotaped interview with Plaintiff to her in discovery, but otherwise maintained that Ms. Gerdes' communications, documents, and recordings in her investigative file were work-product or attorney-client privileged.

Plaintiff's employment with the City was terminated on October 19, 2021. Chief Engler stated his employment decision was based upon the evidence and testimony at a pre-discipline hearing and the following:

a. Transcript/Audio Recording of the April Warehouse Fire
b. Judge Kopf's Memorandum and Order denying Plaintiff's motion for preliminary injunction
c. Investigation Report of Gerdes
d. Plaintiff's statements to Gerdes during the April Warehouse Fire investigation
e. Declarations and/or statements of witnesses involved in the April Warehouse Fire filed by the City in this case on July 27, 2021
f. Plaintiff's sworn statement dated June 11, 2021, filed in this case

Chief Engler's stated reasons for terminating Plaintiff's employment were that:

> The evidence confirms that you made serious false allegations against a fellow firefighter. You reported to Lincoln Fire and Rescue (LF&R) and have continuously stated thereafter that you and your crew were abandoned in a dangerous burning warehouse by Captain Shawn Mahler at the April 26, 2021 fire scene. You also stated that his behavior "could have injured or killed [you], FAO Roberts, and FF Recruit Hurley." See, e.g., your June 11, 2021 sworn statement and incorporated attachments filed in Case No. 4:18CV3127. However, none of the evidence, audio recording/transcript, witness statements, the findings of investigator Torrey Gerdes, or the findings of Judge Kopf lend any credibility to your statements.

([Filing No. 172-2](#)).

Previously, the Court granted Defendants' motion for protective order as to Plaintiff's request for production of Ms. Gerdes' investigative file, including audio and video interview recordings, documents, notes, memoranda, and materials she reviewed during the investigation, and communications regarding the investigation, finding those items were protected by the attorney-client and/or work-product privileges. ([Filing No. 217](#)). The Court rejected Plaintiff's argument that the City had waived privilege over the entire subject matter by voluntarily disclosing Ms. Gerdes' Investigation Report in discovery, finding that fairness did not require her to disclose work product she had not disclosed to anyone else, including the City. The Court also agreed that the City had not impliedly waived privilege by raising a *Faragher-Ellerth* defense to Plaintiff's "much earlier claims for harassment" because Plaintiff's claim regarding the warehouse fire was not for harassment by a supervisor, but was instead for retaliation by a peer; as such the City could not be relying on the reasonableness of Ms. Gerdes' investigation as evidence supporting a *Faragher-Ellerth* defense. ([Filing No. 217 at pp. 15-16](#)).

The instant motions concern the permissible scope of Ms. Gerdes' individual deposition in light of the Court's prior rulings regarding the privileged status of Ms. Gerdes' investigative file. Baylor Evnen and Ms. Gerdes seek a protective order prohibiting a deposition, testimony, or other discovery on the following topics:

- The April Warehouse Fire investigation performed by Ms. Gerdes, Ms. Foster, and Baylor Evnen

- The May 2022 investigation performed by Ms. Gerdes, Ms. Foster, and Baylor Evnen regarding the complaint for harassment brought by Firefighter/Paramedic, Jessica Stover, as to Firefighter Trent Borchers

3

- o The recording equipment utilized in connection with those investigations, the cause of the skips or anomalies to the recordings made of Plaintiff's interview with Ms. Gerdes on July 14, 2022, and whether any other recorded interviews performed by Baylor Evnen regarding the investigations contain similar anomalies or skips.[2]

- o The number, dates and length of meetings, emails, telephone conversations, text messages or other form of communications Baylor-Evnen attorneys or staff had with Chris Connolly, Don Taute, Mayor Gaylor-Baird, any member of Mayor Gaylor-Baird's staff, Heidi Guttau, George Martin, Jocelyn Golden, Abigail Littrell, Yohance Christie, Doug McDaniel, Daisy Brayton, any other attorney employed by the City of Lincoln or any attorney or law firm hired to defend the named defendants herein from June 2021 to present regarding the engagements for the investigations.

- o The background, education, training, and experience of the investigators or Baylor Evnen staff who performed the investigations

- o The number of employment investigations performed by the investigators who performed since being employed by Baylor Evnen and the number of times that those investigations yielded a finding of discrimination, harassment, or retaliation against an employer.

- o Any contracts, agreements, and invoices relating to the investigations.

- o The annual amount of compensation that the City of Lincoln paid to Baylor Evnen from 2015 to the present.

- o A general prohibition or limitation forbidding Plaintiff from attempting to seek attorney-client privileged information and/or attorney work product/mental impressions of Ms. Gerdes and Baylor Evnen in this case and for Baylor Evnen's other clients.

- o Limiting the scope of the deposition of Ms. Gerdes to avoid reviewing each and every client file in which Baylor Evnen performed an investigation of an employment matter.

(Filing No. 327; Filing No. 331). Ms. Gerdes' motion primarily asserts that the Court should prohibit inquiry into the above topics, including her investigation of the April Warehouse Fire, because this Court's prior Order found those topics were privileged.

Plaintiff contends circumstances have changed subsequent to the Court's February 2022 Order. Plaintiff asserts that the City's deposition testimony and other representations by defense counsel reveal that the City does in fact intend to rely on the reasonableness of Ms. Gerdes'

---

[2] Plaintiff has alleged her audio recording of her interview with Ms. Gerdes contains anomalies or skips and omissions. (Filing No. 170 at p. 2).

investigation at trial. Plaintiff argues that the Court previously did not consider Defendants' affirmative defenses of good faith, equitable estoppel, unclean hands, or same decision, and that the City has indicated it intends to use Ms. Gerdes' Investigation Report to support those defenses. Plaintiff asserts that the City has affirmatively placed Ms. Gerdes' investigation of the April Warehouse Fire "at issue" in this litigation and has therefore waived any claim of privilege it may have held.

During the telephonic hearings in this matter, counsel for Defendants affirmatively represented to the Court that it has identified Ms. Gerdes as a potential witness and that the City intends to offer Ms. Gerdes' Investigation Report (Filing No. 167-2) as evidence to the jury, but maintains her report would only be offered as evidence of the legitimate, non-retaliatory or non-discriminatory reason for Plaintiff's termination under the *McDonnell Douglas* burden-shifting framework. The City asserts that using the Investigation Report in such a manner does not waive privilege because the City is not utilizing it in support of a claim or affirmative defense.

## ANALYSIS

"The attorney client privilege cannot be used as both a shield and a sword," and a party cannot claim it relied on counsel's advice without permitting the opposing party to explore the substance of that advice. *United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998). "Voluntary disclosure of attorney client communications expressly waives the privilege," and such waiver "covers any information directly related to that which was actually disclosed." *Id.* at 1263. "When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter." *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982). If an intentional disclosure of work product is made, the protection is waived as to other undisclosed communications or information only if "(1) the waiver was intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party 'relies' on the privileged communication" to prove a claim or defense. *Spanel v. Cent. Cmty. Coll.*, No. 8:18CV380, 2021 WL 5907930, at *3 (D. Neb. Dec. 14, 2021).

5

After review, the Court finds that the City has now waived any claim of privilege in Ms. Gerdes' investigation into the April Warehouse Fire by affirmatively representing that the City intends to offer Ms. Gerdes' Investigation Report as evidence at trial and by representing that the City will rely on Ms. Gerdes' investigation as part of its defense to Plaintiff's claims. This finding is not inconsistent with the Court's prior Order. Previously, the Court was unwilling to say that the City's mere disclosure of Ms. Gerdes' Investigation Report (which Ms. Gerdes marked "privileged and confidential") to Plaintiff in discovery acted as a broad subject matter waiver of the privilege over Ms. Gerdes' entire investigative file. The Court also found the Defendants' raising of a *Faragher-Ellerth* affirmative defense in their answer did not waive the privilege because the City was not relying on the Investigation Report to support that defense. See, e.g., *Cage v. Harper*, No. 17-CV-7621, 2019 WL 6911967, at *1 (N.D. Ill. Dec. 19, 2019) ("Merely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. The privileged party must affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived."). But now, the City has affirmatively stated it will offer Ms. Gerdes' Investigation Report as evidence to the jury as evidence of the legitimate, non-retaliatory or non-discriminatory reason for Plaintiff's termination. See, e.g., *Crawford v. Coram Fire Dist.*, No. 12 CV 3850 DRH WDW, 2014 WL 1686203, at *5 (E.D.N.Y. Apr. 29, 2014) ("If Defendants intend to assert 'reliance on advice of counsel' as a legitimate, non-discriminatory reason for the actions they took . . ., then Defendants will have affirmatively put the otherwise privileged information at issue by making it relevant to the case, thereby opening the door to Plaintiffs to inquire about the investigation and the advice that was given."). The City also appears to intend to rely on Ms. Gerdes' investigation to prove that the City had a good faith basis for their employment decisions. See Filing Nos. 311 and 344; Filing No. 334-23 at pp. 3-6; *Walker v. Cnty. of Contra Costa*, 227 F.R.D. 529, 533 (N.D. Cal. 2005) ("If a defendant employer hopes to prevail by showing that it investigated an employee's complaint and took action appropriate to the findings of the investigation, then it will have put the adequacy of the investigation directly at issue, and cannot stand on the attorney-client privilege or work product doctrine to preclude a thorough examination of its adequacy."); *Whitney v. Franklin Gen. Hosp.*, No. C13-3048, 2015 WL 1879514, at *7 (N.D. Iowa Apr. 23, 2015) ("Defendants want to eat their cake and have it too. Defendants want to offer testimony that they consulted with [counsel] prior to taking any action, and have the jury conclude

they acted in good faith by relying on his advice. . . . Because Defendants want the jury to conclude that they followed [counsel's] advice, they have effectively placed the content of [counsel's] advice at issue.").

The City has chosen to inject Ms. Gerdes' investigation into this litigation, but objects to Plaintiff exploring the adequacy of the investigation or discovering any information about her investigation on the basis of privilege. In other words, the City wants to use some privileged information—Ms. Gerdes' Investigation Report—as a sword, while also invoking the attorney-client privilege to shield Plaintiff from obtaining facts and communications underlying Ms. Gerdes' investigation and conclusions contained in her report. See, e.g., *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 894 (M.D. Tenn. 2010) (finding "the City waived its privilege and work-product protection not by disclosing [the internal investigative] report, but by making tactical use of it in this litigation."); *Whitworth v. Consol. Biscuit Co.*, No. CV 06-112-DCR, 2007 WL 9736117, at *5 (E.D. Ky. Feb. 2, 2007) ("The classic case for implied waiver arises when a party relies on the advice of counsel but then objects to discovery concerning the content or context of that advice."). It would be "patently unfair" for the City to present Ms. Gerdes' Investigation Report to a jury without providing Plaintiff with a full opportunity to explore and cross-examine Ms. Gerdes on the investigation. See, e.g., *Doe v. Baylor University*, 335 F.R.D. 476, 498 (W.D. Tex. 2020) ("It would be patently unfair for a party to assert that they relied upon the advice of counsel, yet deprive the opponent of the opportunity to understand why the advice was given, what other alternatives were looked at, why certain advice was rejected, and how the advice was interrelated to other business decisions. Plaintiffs are entitled to understand and ask questions about the validity of counsel's advice, and Defendants may not use the assertion of the privilege both as a sword and a shield.").

In sum, the Court agrees with Plaintiff: the City must now choose. If the City chooses to proceed with its tactical decision to use Ms. Gerdes' investigation as evidence in this matter, thereby placing the investigation "at issue," then the City will waive any and all privileges attached to the investigation, and Ms. Gerdes' deposition can proceed without limitation as to the April Warehouse Fire. If the City stipulates that it will not call Ms. Gerdes to testify regarding her investigation and will not offer Ms. Gerdes' Investigation Report as evidence in this matter, then it may properly preserve the privileges attached to her investigation.

Ms. Gerdes' motion raises a number of other concerns regarding her deposition. Unlike a Rule 30(b)(6) deposition, a party is not required to set forth the topics of inquiry for an individual's deposition. The City disclosed Ms. Gerdes' as a potential witness and represented it will use Ms. Gerdes' investigation as evidence at trial. As such, the Court is not inclined to prospectively limit Ms. Gerdes' deposition.[3] However, the Court will clarify that this ruling regarding waiver of privilege only applies to Ms. Gerdes' investigation of the April Warehouse Fire; inquiries into other investigations performed by Ms. Gerdes may still be properly objected to as privileged.[4] Furthermore, the Court will not at this time limit the duration of the deposition beyond that allowed under Federal Rule of Civil Procedure 30(d)(1). Upon consideration,

**IT IS ORDERED**: Baylor Evnen, LLP and Torrey J. Gerdes' Motion to Quash and for Protective Order (Filing No. 327) and Defendants' Joinder in Motion for Protective Order Regarding Deposition of Torrey Gerdes (Filing No. 331) are granted in part and denied in part, as set forth in this order.

Dated this 18th day of November, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

---

[3] Defendants and Gerdes have specifically agreed to allow Plaintiff to inquire into Gerdes' background, education, training, and experience; and the total amount paid to Baylor Evnen for the investigation. (See Filing No. 329-1).

[4] To include the Borchers' investigation. (See Filing No. 301-2).