IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA BENSON,<br><br>               Plaintiff,<br><br>      vs.<br><br>CITY OF LINCOLN, a political subdivision;<br>CHRIS BEUTLER; TOM CASADY; DOUG<br>MCDANIEL; TIM LINKE; LEO BENES; ERIC<br>JONES; DARREN MERRYMAN; and SHAWN<br>MAHLER,<br><br>               Defendants. | **4:18CV3127**<br><br><br>**MEMORANDUM AND ORDER<br>REJECTING MAGISTRATE JUDGE'S<br>ORDER<br>AND<br>PROTECTIVE ORDER** |

Plaintiff Amanda Benson, a female firefighter/EMT with Lincoln Fire and Rescue (LFR), brought this action alleging violations of her civil rights against the City of Lincoln, Nebraska, the Mayor, and several LFR employees. Filing 188 (Fourth Amended Complaint).[1] This case is now before the Court on Defendants' Statement of Objections to Magistrate Judge's Order (Filing No. 345) Regarding the Deposition of Attorney Torrey Gerdes, Filing 348, and Interested Parties Torrey Gerdes and Baylor Evnen's Statement of Objections, Filing 350.

## I.  INTRODUCTION AND SUMMARY OF OPINION

Attorney Torrey Gerdes performed an independent third-party investigation for Defendants of a specific warehouse fire incident in which Benson alleged that another firefighter failed to communicate with her and left her and her crew in a dangerous situation despite assignment of her crew to work for the other firefighter during the incident. The movants assert that the Magistrate Judge erroneously concluded that Defendants waived attorney-client and work-product privileges

---

[1] Somewhat more specifically, Benson asserts claims of violations of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101, *et seq.*; Article I, Section 3 of the Constitution of the State of Nebraska; Title VII of the Civil Rights Act of 1965; and the Fourteenth Amendment to the United States Constitution, Equal Protection Clause. Filing 188.

by disclosing Gerdes's Investigation Report concerning that incident and stating that they would rely on it at summary judgment or trial. The Court concludes that the Objections must be sustained, the underlying Order rejected, and new conditions imposed upon any deposition of Torrey Gerdes.

In this case, the Court finds that the Magistrate Judge's fundamental error was concluding that Defendants intend to rely on the attorney's investigation to support affirmative defenses. The record demonstrates that they instead have made clear that they are offering the attorney's Investigation Report only as one piece of evidence to support their proffered legitimate, nondiscriminatory and/or nonretaliatory reason for terminating Benson's employment. Courts have long held that a legitimate, nondiscriminatory or nonretaliatory reason is not an affirmative defense but a denial of the plaintiff's allegations. Courts have also recognized that the correctness of the legitimate reason is not put at issue through an investigative report. Similarly, Defendants have made clear that their intention is to offer Gerdes's testimony only if necessary to lay foundation for her Investigation Report, not as the basis for any affirmative defense based on advice of counsel.

Although Defendants' disclosure of Gerdes's Investigation Report waived attorney-client privilege as to that report, Defendants do not oppose allowing Benson to depose Gerdes about her Investigation Report. However, as a matter of law, that waiver did not extend to any other attorney-client privileged communications or protected work product underlying the Investigation Report.

The Court acknowledges that other courts have correctly held that attorney-client and/or work-product privileges are waived when a defendant relies on an attorney's investigation of a plaintiff's claims and thus puts the attorney's investigation "at issue" to defend against a plaintiff's claims. These cases involve putting the attorney's investigation "at issue" in support of an affirmative defense, such as the *Ellerth/Faragher* affirmative defense, the *Kolstad* affirmative

2

defense, or another defense premised on the attorney's advice or the adequacy of the attorney's investigation. The Court finds that the attorney's investigation is offered here for a very different reason. Namely, it is offered to show a legitimate, nondiscriminatory and/or nonretaliatory reason for terminating Benson's employment. Thus, those cases on which Benson relies are inapplicable here.

### A.  Factual Background

The Court agrees with the Magistrate Judge's statement that the dispute now before the Court is one that "concerns the permissible scope of discovery into the third-party independent investigation performed by attorney Torrey Gerdes at the request of the City regarding [one of] Plaintiff's [internal] complaint[s] of retaliation." Filing 345 at 1. However, the Court finds that more context for that dispute is required than the Magistrate Judge provided.

On May 5, 2021, Acting Captain Amanda Benson filed an internal complaint against Captain Shawn Mahler. Filing 114-3. Benson claimed that when Benson and Mahler and their crews (Truck 1 or T1 and Truck 8 or T8, respectively) were dispatched on April 26, 2021, to a warehouse fire (April Warehouse Fire), Mahler engaged in misconduct that endangered Benson and her crew. Filing 114-3 at 1. More specifically, Benson alleged that Mahler would not look at her or communicate with her when she spoke to Mahler. Filing 114-3 at 1. Benson also alleged that Mahler would not respond to Benson's questions about what Mahler wanted done to assist him with ventilation. Filing 114-3 at 1–2. Most critically, Benson alleged that "Mahler had abandoned us in an unsafe environment," Filing 114-3 at 2, and that "[h]is refusal to communicate could have injured or killed me, FAO Roberts, and FF Recruit Hurley," Filing 114-3 at 3. On June 11, 2021, Benson filed a Motion for Preliminary Injunction in this lawsuit based on these allegations. Filing 112 at 2 (¶ 5). In that Motion, Benson asked that the Court to do the following:

1) order the City of Lincoln to immediately initiate disciplinary proceedings against Mahler; 2) enjoin Mahler from assignment/dispatch to any fire scene during the pendency of disciplinary proceedings; and 3) appoint an independent, third-party investigator to investigate Plaintiff's complaint about Mahler's actions at the recent warehouse fire.

Filing 112 at 2 (¶ 8).

On June 22, 2021, the City retained Gerdes to conduct a third-party independent investigation of the April Warehouse Fire. Filing 167 at 2 (¶ 5) (Gerdes Aff.). Gerdes's investigation involved interviewing Benson, Mahler, and eleven other individuals present at the warehouse fire. Filing 167 at 2 (¶ 7). Gerdes completed her investigation on July 30, 2021. Filing 167 at 2 (¶ 8). Gerdes did not complete her report until later, however. Filing 167 at 2 (¶ 9).

Before Gerdes completed her report, Judge Kopf denied Benson's Motion for Preliminary Injunction on August 16, 2021. Filing 146. The pertinent findings by Judge Kopf included that no one on Benson's crew or Mahler's crew heard the incident commander (IC) designate Mahler as a group supervisor. Filing 146 at 4 (¶ 11). Judge Kopf further concluded that the IC stated that Mahler was not designated as a ventilation group supervisor and that it was not the IC's intent to designate T1 to "work for" T8. Filing 146 at 5 (¶ 11). Judge Kopf found that both crews were required to report to their respective Captains and that Benson's crew believed at all times that Benson was their direct supervisor. Filing 146 at 4–5 (¶ 11). Finally, for present purposes, Judge Kopf found, "To the extent Plaintiff requests that the court enjoin Mahler's retaliatory or discriminatory conduct, Plaintiff has failed to show that Mahler engaged in any such conduct in this instance." Filing 146 at 12.[2]

_____

[2] As to disposition of Benson's Motion for Preliminary Injunction, Judge Kopf concluded first that Benson's Motion should be denied because it did not seek relief of the same character as that which may be granted finally, that is, remedies for discriminatory and retaliatory employment practices. Filing 146 at 10–11. He found that her Motion instead sought the imposition of directives upon LFR "regarding whom it should discipline, whom it should send to fire scenes, and whom to investigate—issues in which federal courts should not be involved." Filing 146 at 10–11. Turning to consideration of the pertinent factors for preliminary injunctive relief, Judge Kopf concluded that there

Four days after Judge Kopf's ruling, Gerdes completed her written Investigation Report and sent it to the City. Filing 167 at 2 (¶ 9). The Investigation Report was marked "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT." Filing 167-2 at 1. Gerdes's August 20, 2021, Investigation Report states in part,

> The primary purpose of the investigation was to provide legal analysis and advice to the City by conducting a neutral, independent investigation of the allegations in the complaint. This included analyzing policies and procedures applicable to the Fire Incident and reaching factual findings, including facts that would allow the City to evaluate whether a conflict of interest may exist in its continued joint representation of the City and Shawn Mahler as co-defendants in the Lawsuit identified below.

Filing 167-2 at 1. The Investigation Report then clarifies,

> The scope of our independent investigation was to determine: (1) Whether Captain Mahler followed LFR protocol when interacting with Acting Captain Benson during the fire incident on April 26, 2021; and (2) if it were determined Captain Mahler did not follow LFR protocol, what reason(s) or justification(s), if any, existed for deviating from protocol.

Filing 167-2 at 2, 34.

The Investigation Report sets out an extensive discussion of the evidence and findings. Filing 167-2 at 7–34. The report states, "Based upon the factual findings outlined above, we conclude that Captain Mahler was not assigned as a group supervisor and did not violate LFR communication protocol in his interactions and communication with Acting Captain Benson at the [April Warehouse] Fire Incident." Filing 167-2 at 34. The Investigation Report sets out five reasons for this conclusion. First, it finds that "Shawn Mahler was not assigned as a Ventilation

---

was no threat of irreparable harm, because "any potential injuries to Plaintiff could be compensated through a damages award." Filing 146 at 13. He also concluded that in the absence of proof of any irreparable harm, the injury to Mahler from a preliminary injunction was greater than any injury to Benson without one. Filing 146 at 13. He then concluded that it was "not in the public's best interest for a court to dictate when and how LFR investigates, disciplines, and suspends its employees from service." Filing 146 at 14. Finally, Judge Kopf concluded that even if Benson could somehow demonstrate a likelihood of success on the merits, such likelihood was meaningless considered alone, and that the relative harms to the parties and the public weighed against a preliminary injunction. Filing 146 at 14.

Group Supervisor during the April 26, 2021 Fire Incident." Filing 167-2 at 34. Second, it finds that "Shawn Mahler had no duty to supervise Truck 1 or communicate in the role of Group Supervisor with Truck 1's crew after Truck 1 was assigned to 'assist with ventilation—getting one of those doors open.'" Filing 167-2 at 38. Third, the Investigation Report finds that "Shawn Mahler did not abandon Truck 1 in an [immediately dangerous to life or health (IDLH)] environment after Truck 1 was assigned to 'assist with ventilation—getting one of those doors open.'" Filing 167-2 at 39. Fourth, it finds that "Captain Shawn Mahler did not have an obligation to call a Mayday regardless of whether he knew where Truck 1 was physically located." Filing 167-2 at 40. Finally, the Investigation Report finds that "Shawn Mahler did not fail to follow reasonable communication protocol by his communication with Acting Captain Amanda Benson after Incident Command assigned Truck 1 to replace Truck 8." Filing 167-2 at 40. The Investigation Report does not recommend that the City take or not take any action in light of its findings and conclusion. It also does not expressly "evaluate whether a conflict of interest may exist in its continued joint representation of the City and Shawn Mahler as co-defendants in [Benson's] Lawsuit," even though that was a stated purpose of the Investigation Report. Filing 167-2 at 1.

On October 19, 2021, after a hearing, Chief Engler terminated Benson's employment. Filing 172-2 at 1 (Notice of Dismissal). Chief Engler stated that he considered the following evidence in reaching his decision:

 a. Transcript/Audio Recording of the April Warehouse Fire

 b. Judge Kopf's Memorandum and Order denying Plaintiff's motion for preliminary injunction

 c. Investigation Report of Gerdes

 d. Plaintiff's statements to Gerdes during the April Warehouse Fire investigation

 e. Declarations and/or statements of witnesses involved in the April Warehouse Fire filed by the City in this case on July 27, 2021

6

f. Plaintiff's sworn statement dated June 11, 2021, filed in this case

Filing 172-2 at 1. Chief Engler's stated reasons in Benson's Notice of Dismissal were the following:

> The evidence confirms that you made serious false allegations against a fellow firefighter. You reported to Lincoln Fire and Rescue (LF&R) and have continuously stated thereafter that you and your crew were abandoned in a dangerous burning warehouse by Captain Shawn Mahler at the April 26, 2021 fire scene. You also stated that his behavior "could have injured or killed [you], FAO Roberts, and FF Recruit Hurley." *See, e.g.*, your June 11, 2021 sworn statement and incorporated attachments filed in Case No. 4:18CV3127.
>
> However, none of the evidence, audio recording/transcript, witness statements, the findings of investigator Torrey Gerdes, or the findings of Judge Kopf lend any credibility to your statements.

Filing 172-2 at 1–2.

The City produced the Investigation Report to Benson on August 24, 2021. Filing 166-1 at 3 (¶ 13). The City also subsequently received the audio recording of Gerdes's audiotaped interview with Benson. Filing 166-1 at 3 (¶ 14). The City represented that it had also produced that recording to Benson. Filing 165 at 10. Nevertheless, the Defendants and the Interested Parties have asserted that Gerdes's other communications, documents, and recordings in her investigative file are work-product privileged or attorney-client privileged and need not be disclosed. Filing 327; Filing 331.

### B. Procedural Background

#### 1. The First Ruling on Privileges and the Resurrection of the Issues

On February 1, 2022, the Magistrate Judge granted Defendants' motion for a protective order as to Benson's request for production of Gerdes's investigation file, including audio and video interview recordings, documents, notes, memoranda, and materials she reviewed during the investigation, and communications regarding the investigation. Filing 217. The Magistrate Judge had found that those items were protected by the attorney-client and/or work-product privileges

7

and that those privileges were not waived by the City's disclosure of the Investigation Report in discovery. Filing 217 at 15–16.

Subsequently, Benson filed but then withdrew a disputed notice for a Rule 30(b)(6) deposition of Baylor Evnen, LLP. Filing 301; Filing 322. Benson noticed the individual deposition of Torrey Gerdes instead. Filing 325. Baylor Evnen and Gerdes filed Motions to Quash and for Protective Order. Filing 327. The Defendants filed their Joinder in Motion [for] Protective Order Regarding Deposition of Torrey Gerdes. Filing 331.

   2.   *The Challenged Order*

As the Magistrate Judge explained, "Ms. Gerdes' motion primarily asserts that the Court should prohibit inquiry into [certain] topics, including her investigation of the April Warehouse Fire, because this Court's prior Order found those topics were privileged." Filing 345 at 4; *see also* Filing 327 at 3–4 (identifying nine topics that should not be subject to inquiry); Filing 328-1 at 8–9 (setting out terms of a proposed compromise on limitations of the deposition). He also explained that Benson "contends circumstances have changed subsequent to the Court's February 2022 Order," because the City had indicated that it "does in fact intend to rely on the reasonableness of Ms. Gerdes' investigation at trial" in support of various defenses, thus affirmatively placing Gerdes's investigation "at issue" in this litigation and waiving any claim of privilege the City may have had. Filing 345 at 3–4. The Magistrate Judge found that Defendants had identified Gerdes as a potential witness and that the City intended to offer Gerdes's Investigation Report as evidence to the jury. Filing 345 at 5. The Magistrate Judge acknowledged but evidently rejected Defendants' argument that they would use the Investigation Report only "as evidence of the legitimate, non-retaliatory or non-discriminatory reason for [Benson's] termination under the *McDonnell Douglas* burden-shifting framework," which Defendants asserted did not waive any privilege. Filing 345 at 5.

In the challenged Order, the Magistrate Judge concluded,

> In sum, the Court agrees with Plaintiff: the City must now choose. If the City chooses to proceed with its tactical decision to use Ms. Gerdes' investigation as evidence in this matter, thereby placing the investigation "at issue," then the City will waive any and all privileges attached to the investigation, and Ms. Gerdes' deposition can proceed without limitation as to the April Warehouse Fire. If the City stipulates that it will not call Ms. Gerdes to testify regarding her investigation and will not offer Ms. Gerdes' Investigation Report as evidence in this matter, then it may properly preserve the privileges attached to her investigation.

Filing 345 at 7. He then clarified that "this ruling regarding waiver of privilege only applies to Ms. Gerdes' investigation of the April Warehouse Fire; inquiries into other investigations performed by Ms. Gerdes may still be properly objected to as privileged." Filing 345 at 8.

### 3.  The Objections

The Defendants now make the following objections to the Magistrate Judge's Order as clearly erroneous and/or contrary to law in the following respects:

a.      In finding [at Filing 345 at 7] that by offering Ms. Gerdes' Investigation Report regarding the April 26, 2022 Warehouse Fire ("Gerdes Investigation Report") into evidence to articulate one of its legitimate nondiscriminatory/non-retaliatory reasons for terminating Plaintiff's employment, that City would waive any privilege, including any privilege protecting Gerdes' investigation work product – investigation notes and recorded interviews – which privilege was already previously held to apply in the Magistrate Judge's prior ruling (Filing No. 217) which was upheld by Judge Kopf (Filing No. 252);

b.      By finding [at Filing 345 at 6] that City "will rely [on] Ms. Gerdes['] investigation as part of its defense to Plaintiff's claims." City has represented that it only intends to offer the Gerdes Investigation Report to articulate/produce one of its legitimate nondiscriminatory/non-retaliatory reasons for termination which is a permissible use and is not using such report for any claim or affirmative *defense*;

c.      By finding [at Filing 345 at 7] that by offering the Gerdes' Investigation Report to articulate one of its legitimate nondiscriminatory reasons for termination "the City has chosen to inject Ms. Gerdes' *investigation* into this litigation" (emphasis added) and places such *investigation or the reasonableness of such investigation* "at issue" in a manner which thereby waives any and all privileges previously held to apply and any attorney-client confidentiality;

d.      By finding [at Filing 345 at 7] that by offering the Gerdes' Investigation Report as a legitimate nondiscriminatory/non-retaliatory reason for

9

termination (which is not an affirmative defense), City would be using the Report as a sword and a shield;

e.      By holding [at Filing 345 at 7] that "the Court agrees with Plaintiff: the City must now choose. If the City chooses to proceed with its tactical decision to use Ms. Gerdes' investigation as evidence in this matter" it waives any and all privileges; if it does not want to waive privilege, then it must stipulate it will not offer her Report or call her to testify.

f.      By not granting the protective order to limit the deposition of Torrey Gerdes to the reasonable scope and time limitations proposed by Gerdes and Defendants as set forth in Filing No. 328-1 at Exhibit C. [*See* Filing 345 at 8.]

Filing 348 at 1–3 (emphasis in the original).

Gerdes and Baylor Evnen make the following objections to the Magistrate Judge's Order:

1.      The magistrate judge erroneously found [at Filing 345 at 7] a complete "at issue" waiver of all attorney-client privileged and work product materials related to the April Warehouse Fire Investigation. Such a conclusion is contrary to law and clear error. This conclusion was reached without analyzing the differing standards for a waiver of fact work product, opinion work product, and attorney-client privilege. The magistrate judge erroneously applied the standard for an "at issue" waiver of attorney-client privilege to all protected documents, including opinion work product, which requires a more narrowly-tailored review for waiver.

2.      The magistrate judge did not address the undue burden on non-parties Baylor Evnen and Gerdes by allowing Plaintiff Amanda Benson to depose Gerdes as to information protected by the work-product doctrine and attorney-client privilege. It was contrary to law and clear error for the magistrate judge to deny Baylor Evnen's Motion to Quash on this basis under Federal Rule of Civil Procedure 45 and Motion for Protective Order seeking to limit the areas of inquiry to only non-privileged, relevant, and proportionate issues.

3.      The magistrate judge erred by declining to prospectively limit a non-party deposition under Rule 45 that is unduly burdensome and seeks privileged and protected information, as it relates to "other employment investigations." It was contrary to law and clear error for the magistrate judge to deny Baylor Evnen's Motion to Quash on this basis under Federal Rule of Civil Procedure 45 and Motion for Protective Order seeking to limit the areas of inquiry to only non-privileged, relevant, and proportionate issues.

4.      The magistrate judge erred by declining to grant a protective order limiting the deposition of Torrey Gerdes to the reasonable scope and time limitations proposed by Gerdes and Defendants as set forth in Filing 328-1 at

Exhibit C.

Filing 350 at 1–2.

The protective order Defendants and the Interested Parties proposed was first cast as the following stipulation, which Benson rejected:

1. In regard to Gerdes' investigation into the events of April 26, 2021, Plaintiff may inquire into the general methods by which Gerdes conducts investigations and into the facts set forth in the Investigation Report in Exhibit A of Filing No. 301. Plaintiff will not inquire into topics that have already been determined to be protected by attorney-client privilege and/or work Product Doctrine as set forth in the Court's Order at Filing No. 217 and in accordance with the Court's guidance at Filing No. 311.

2. Plaintiff will not inquire into the investigation referred to in Exhibit B of Filing No. 301 or any other investigation that does not directly involve the Plaintiff.

3. Plaintiff will not inquire into communications by Gerdes that are attorney-client privileged, including communications with the City or its attorneys or any of Gerdes' other clients.

4. Plaintiff may inquire into Gerdes' background, education, training, and experience, but Plaintiff will not inquire into the number of times that an investigation by Gerdes, Foster, or Baylor Evnen has resulted in a finding of discrimination, harassment, or retaliation against an employer client or into any privileged information regarding investigations that Gerdes or Baylor Evnen has performed for other entities.

5. In lieu of deposition testimony on the following topics, the parties agree that (a) Gerdes has submitted affidavits on the topics of the recording devices, method of recording and the engagement letters for the investigations set forth in Exhibits A and B of Filing No. 301 (see Filing Nos 167, 177-2, 316-1), and (b) City will submit the total amounts paid to Baylor Evnen for the investigations set forth in Exhibits A and B of Filing No. 301.

6. Defendants' and Gerdes' agreement to this deposition does not constitute a subject-matter waiver on any subject addressed therein.

7. The deposition will not exceed two (2) hours except upon a showing of "good cause" for additional time.

8. Violation of any of the terms of this Stipulation shall permit the Deponent to immediately terminate the deposition and seek a protective order from the Court.

Filing 328-1 at 8–9.

If nothing else, the number and nature of the Objections suggest that the Objections will require many more pages to resolve than the Magistrate Judge took to resolve the original Motion to Quash and Joinder.[3]

## II. LEGAL ANALYSIS

### A. Standard of Review

Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> **(a) Nondispositive Matters.** When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636 (b)(1)(A) (authorizing designation of a magistrate judge "to hear and determine any pretrial matter," and authorizing a district judge to "reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law." (citing 28 U.S.C. § 636(b)(1)(A)); *see generally Devine v. Walker*, 984 F.3d 605, 607–08 (8th Cir. 2020) (explaining that the Circuit Courts of Appeals lack jurisdiction over direct appeals of a magistrate judge's decision on a nondispositive pretrial matter and may only review decisions of a district court).

---

[3] While the Magistrate Judge's Order was eight pages long, the parties have submitted a total of 119 pages of briefing on the Objections to that Order.

The Eighth Circuit Court of Appeals has explained that a finding of fact is clearly erroneous "only when [the court is] left with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Gray*, 59 F.4th 329, 332 (8th Cir. 2023) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Doe v. United States*, 58 F.4th 955, 963 (8th Cir. 2023) (explaining that findings are not clearly erroneous when "[v]iewing the record as a whole, '[the court is] not left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010)). "An order is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1043 (S.D. Iowa 2010) (internal quotation marks omitted).

With these standards in mind, the Court turns to the law applicable to the privilege issues before the Magistrate Judge and now before the Court.

## B.  Privilege and Waiver

The party asserting a privilege has the burden of showing that the privilege applies. *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020). Thus, that burden in this case is on Defendants and the Interested Parties.

### a.  Attorney-Client Privilege

As to the attorney-client privilege, the Eighth Circuit Court of Appeals has explained,

Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client. [T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system.

*Ivers*, 967 F.3d at 715–16 (internal quotation marks and citations omitted). To invoke the attorney-client privilege, the party asserting it "must show that the statements at issue were 'made for the purpose of facilitating the rendering of legal services to the client.'" *Id.* at 716 (quoting *United*

13

*States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012)). In this case, the Investigation Report expressly states that it was prepared for "[t]he primary purpose . . . to provide legal analysis and advice to the City." Filing 167-2 at 1; *see also* Filing 167-2 at 2 ("As third-party investigators, we are providing legal services to the City . . . ."). Thus, there is no question that the Investigation Report was a communication "made for the purpose of facilitating the rendering of legal services to" the City. *Ivers*, 967 F.3d at 716.

The Eighth Circuit Court of Appeals has explained that as a general matter "[v]oluntary disclosure of attorney client communications expressly waives the [attorney-client] privilege." *United States v. Hahn*, 58 F.4th 1009, 1012 (8th Cir. 2023) (quoting *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998)). Where a party voluntarily testifies about his communications with his attorney, the party waives attorney-client privilege, but the waiver extends only to "any information directly related to that which was actually disclosed." *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009) (quoting *Workman*, 138 F.3d at 1263).

In addition, "[a] waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).

> There are two situations in which at-issue waiver is commonly found. The first is when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication—for example, when a client uses reliance on legal advice as a defense or when a client brings a legal malpractice action. The second is when a client's testimony refers to a specific privileged document.

*Baker*, 209 F.3d at 1055 (citations omitted) (applying Missouri and Michigan law to attorney-client privilege in a diversity case); *Davis*, 583 F.3d at 1090 (explaining that a party implicitly waives attorney-client privilege by raising the attorney's advice as the basis for a claim or defense). A party "cannot use attorney-client privilege 'as both a shield and a sword.'" *Davis*, 583 F.3d at

1090 (quoting *Workman*, 138 F.3d at 1264). In other words, a party "cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with [counsel] for his own benefit." *Workman*, 138 F.3d at 1263. However, the "at issue" waiver does not apply where a party has used witness testimony and made factual representations that are allegedly contrary to what the privileged documents will reveal. *Baker*, 209 F.3d at 1055.

The fighting issues here include whether any waiver of the attorney-client privilege has occurred and if so the scope of such waiver.

b.   Work-Product Privilege

Turning to the work-product privilege,

The work product privilege is distinct from and broader than the attorney-client privilege. While the purpose of the attorney-client privilege is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel, the work product privilege functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny. Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, both the attorney and the client hold the privilege.

*In re Green Grand Jury Proc.*, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotation marks and citations omitted). In short, the work-product privilege is "based on the attorney's interest in protecting his opinions and thought processes from disclosure." *In re Grand Jury Proc., G.S., F.S.*, 609 F.3d 909, 912 (8th Cir. 2010) (quoting *In re Green Grand Jury Proc.*, 492 F.3d at 980).

More specifically,

In analyzing the extent of an attorney's own work product privilege, we distinguish between two types of work product. Non-opinion work product is generally discoverable upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Opinion work product—which encompasses a lawyer's opinions, conclusions, mental impressions, and legal theories—is afforded substantially more protection.

15

*In re Grand Jury Proc., G.S., F.S.*, 609 F.3d at 912–13 (internal quotation marks and citations omitted). "Ordinary" or "non-opinion" work product includes "raw factual information." *In re Green Grand Jury Proc.*, 492 F.3d at 980. On the other hand, "[n]otes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." *Id.* at 981–82.

> As to discovery of work product, the Eighth Circuit Court of Appeals has explained,

> We recognized that opinion work product enjoys substantially greater protection than ordinary work product. Ordinary work product is generally discoverable upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Opinion work product, by contrast, enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

*In re Green Grand Jury Proc.*, 492 F.3d at 980. "Although disclosure to an adversary ordinarily waives work product protection, there must be an intention that the opposing party see the work product." *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998). The Eighth Circuit Court of Appeals has recognized that "disclosure to an adversary waives work product protection as to items actually disclosed," but "disclosure of some documents does not destroy work product protection for other documents of the same character." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (quoting Wright & Miller, Federal Practice and Procedure § 2024 at 209, with emphasis added by the appellate court).

> A waiver of the work-product privilege may also be implied:

> With respect to the issue of implied waiver, the Court must not only look at whether [the party holding the privilege] intended to waive the privilege, but also whether the interests [of] fairness and consistency mandate a finding of waiver. *See* Wigmore, *Evidence in Trial at Common Law*, § 2327 at 636. (J. McNaughton rev.1961). "When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way." *In re Sealed Case*, 676 F.2d 793, 818 (D.C.Cir.1982).

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002). As to the first requirement, a party places work product "squarely at issue," thus waiving the work product privilege, when it relies on the work product as the basis for a claim or defense. *Id.*

As to the relationship between the privileges and waivers, the Eighth Circuit Court of Appeals has cited with approval a Fourth Circuit case holding that waiver of attorney-client privilege does not waive protection accorded to opinion work product. *Baker*, 209 F.3d at 1055 (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988)).

### C. Discussion of the Objections

The Court will consider each of the Objections to the Magistrate Judge's Order, although not necessarily in the sequence in which the objectors raise them. The Court will address at the same time similar or related Objections by the Defendants and the Interested Parties.

1. *The Fundamental Error Is the Finding that Defendants Would Rely on the Investigation and Report as Part of Their Defenses*

The Court begins its discussion with Defendants' second Objection because the Court concludes that it identifies the fundamental error in the Magistrate Judge's Order. That Objection is that the Order is clearly erroneous and/or contrary to law because it finds "that [the] City 'will rely [on] Ms. Gerdes['] investigation as part of its defense to Plaintiff's claims.'" Filing 348 at 2 (quoting Filing 345 at 6).

As Defendants succinctly explain in their second Objection itself, the "City has represented that it only intends to offer the Gerdes Investigation Report to articulate/produce one of its legitimate nondiscriminatory/non-retaliatory reasons for termination which is a permissible use and is not using such report for any claim or affirmative *defense*." Filing 348 at 2 (emphasis in the original). Benson counters that Chief Engler testified that Gerdes was retained to perform an investigation in response to Benson's grievance and that the City has made clear that it intends to

17

rely upon that investigation to prove several affirmative defenses. Filing 353 at 10, 11, 15–18, 22, 25. In reply, Defendants contend that Benson focuses her brief entirely on affirmative defenses that Defendants have already confirmed that they do not intend to support with the Investigation Report. Filing 355 at 1.

Contrary to Benson's contentions and the Magistrate Judge's finding, the record reflects no intent on the part of Defendants to use the Investigation or the Investigation Report to support any affirmative defense. First, the Magistrate Judge acknowledged that Defendants assert that they would use the Investigation Report only "as evidence of the legitimate, non-retaliatory or non-discriminatory reason for [Benson's] termination under the *McDonnell Douglas* burden-shifting framework," which the City asserted did not waive any privilege. Filing 345 at 5. The Magistrate Judge had also correctly concluded in his prior ruling that the Investigation Report could not support the *Ellerth-Faragher* affirmative defense to claims of harassment by a supervisor where that defense was only available as to chronologically earlier alleged misconduct. Filing 217 at 16. He also correctly held that Benson's grievance about the April Warehouse Fire was not a claim of harassment and that the grievance did not involve conduct by a supervisor where Mahler and Benson were peers at the time. Filing 217 at 16.

Benson nevertheless asserts,

> In his deposition, the City's 30(b)(6) representative [Chief Engler] expanded on the written 30(b)(6) response, testifying the City would rely on the Gerdes investigation to support its affirmative defenses of good faith, equitable estoppel, unclean hands, and same decision. (Doc. 334-23, p. 2); (Doc. 335-2, p. 4); (Doc. 334-23, p. 3, 10:14-12:22 (good faith)); (*Id.*, p. 9, 34:17-35:21) (equitable estoppel)); (*Id.*, p. 10, 39:10-40:10) (unclean hands)); and (*Id.*, p. 11, 41:7-42:42:14) (same decision)).

Filing 353 at 7 (¶ 26) (footnote omitted); *see also* Filing 353 at 10. She argues, "The City also affirmatively represented it intends to call Gerdes to testify at trial." 353 at 8 (¶ 29) (citing Filing 345 at 6; Filing 353 at 11 (citing Filing 311 at 22:44 (conference call recording)). She contends

further that Chief Engler testified that he relied on the legal advice provided by the Gerdes Investigation to terminate Benson and as the basis for a good faith defense. Filing 353 at 11 (citing Filing 334-23 at 3, 4, 6 (Rule 30(b)(6) Depo. 12:7-14, 14:7-21, 23:15-20)).

Benson's assertions (and the Magistrate Judge's findings) that Defendants intend to use the Investigation Report and Gerdes' Investigation to support defenses do not bear scrutiny. First, Gerdes cites no authority that a deponent or individual party—such as Chief Engler—decides trial strategy or binds counsel to pursue that strategy by statements in a deposition or discovery response, and the Court has found none. *See Taylor v. Steele*, 6 F.4th 796, 802 (8th Cir. 2021) (explaining that matters of legal strategy are generally left to counsel, although a client may have the right to expressly prohibit certain strategies), *cert. denied sub nom. Taylor v. Blair*, 142 S. Ct. 2757 (2022). Second, it may be true that a Rule 30(b)(6) deponent may have provided written answers on some topics—with the assistance of counsel—suggesting that Defendants would rely on the Investigation Report or Gerdes's Investigation in support of various affirmative defenses. *See* Filing 335-2 at 4. Nevertheless, because counsel determines strategy, a deponent's identification of certain evidence as supporting affirmative defenses does not bind counsel ultimately to rely on that evidence to support those affirmative defenses. Nor does it bind counsel to assert those affirmative defenses at summary judgment or at trial. Benson cites no authority so holding. Here Defendants' counsel has repeatedly stated that they do not intend to make such use of Gerdes' Investigation Report or her testimony. *See, e.g.,* Filing 348 at 2; Filing 349 at 16. Third, Benson mischaracterizes counsel's comments during the telephone hearing with the Magistrate Judge as affirmatively representing that Defendants intend to call Gerdes to testify at trial as to any affirmative defense. Filing 353 at 11. Rather, counsel stated to the Magistrate Judge that Defendants intend to call Gerdes only if necessary to establish foundation for her Investigation

19

Report. *See* Filing 311 at 22:56–23:17. Fourth, logically, the Investigation Report and Gerdes's Investigation have nothing to do with Benson's claims in this action involving alleged misconduct by Defendants prior to the April Warehouse Fire, so they are irrelevant to any affirmative defenses to claims involving alleged misconduct prior to the date of that incident.[4]

Defendants commit significant parts of their briefing to argument that the Investigation Report is not hearsay, so that Gerdes need not testify to anything other than foundation for that Report. The Court agrees that so long as the Investigation Report is not offered for its truth but only to show the basis for Chief Engler's belief that Benson had engaged in misconduct, the Investigation Report is not hearsay. *See* Fed. R. Evid. 801(c). Thus, identifying Gerdes as a witness for the limited purpose of establishing foundation of the Investigation Report, if necessary, was not identification of Gerdes as a witness in support of any affirmative defenses.

In short, the Magistrate Judge's findings that Defendants intend to use the Investigation Report and to call Gerdes in support of various affirmative defenses are clearly erroneous because after reviewing the record the Court is left with a definite and firm conviction that such findings are mistaken. *See* Fed. R. Civ. P. 72 (standard of review); *Gray*, 59 F.4th at 332 (explaining the "clearly erroneous" standard). Defendants' second Objection to the Magistrate Judge's Order is sustained.

---

[4] By the time Benson filed her internal complaint about the April Warehouse Fire incident, this litigation was already almost three years old. Benson had filed her original complaint and an amended complaint in state court, as well as Second and Third Amended Complaints after removal of this action to this Court. *See* Filing 18; Filing 94. These pleadings asserted claims based on alleged misconduct that occurred from 2014 to April 2021. Filing 94 at 4–32 (¶¶ 20–140). Defendants' Answers asserted various affirmative defenses to the claims in those versions of the Complaint. On November 11, 2021, Benson filed her Fourth Amended Complaint incorporating for the first time allegations related to the April Warehouse Fire incident. Filing 188 at 32–39 (¶¶ 142–166).

2. *Offering the Investigation Report Does Not Waive Any Privilege Because It Did Not Put the Investigation "At Issue"*

Defendants' first Objection is that the Magistrate Judge erred in concluding that offering the Investigation Report into evidence to show a legitimate reason for terminating Benson would waive any privilege. Filing 348 at 1–2 (¶ a). Defendants' third Objection is that the Magistrate Judge erred in concluding that offering the Investigation Report would put the investigation "at issue" in such a manner as to waive any privileges. *See* Filing 348 at 1–2 (¶ c). Similarly, the Interested Parties' first Objection is that the Magistrate Judge erroneously found a complete "at issue" waiver of all privileges related to the April Warehouse Fire. Filing 350 at 1–2. The Court finds these Objections are so intertwined that they should be analyzed together.[5]

Defendants assert that a waiver of privilege only occurs if reliance on the privileged information is in itself an element of a claim or defense on a subject at issue in the litigation, but denials of an opponent's allegations are insufficient to waive a privilege. Filing 349 at 18. Defendants point out that they have not asserted any claims against Benson and that they are not relying on the investigation or its reasonableness in support of any affirmative defense. Filing 349 at 19–20. The Interested Parties argue that the Magistrate Judge erred by failing to distinguish between Defendants' offer of the Investigation Report and the privileged portions of the investigation itself, and by failing to distinguish among waivers of ordinary work product, opinion work product, and attorney-client privilege. Filing 351 at 6. Benson responds that determining whether privileged information has been placed "at issue" thereby waiving privileges requires consideration of the following factors: (1) whether the assertion of the privilege is the result of

---

[5] Indeed, Defendants argued together their assertions that the Magistrate Judge erred in holding that by offering the Investigation Report as one of the legitimate nondiscriminatory and/or nonretaliatory reasons for Benson's termination that the City would waive privilege and that the Magistrate Judge also erred in finding that the City had put the investigation and its reasonableness "at issue." Filing 349 at 18.

some affirmative act, such as filing suit or asserting an affirmative defense; (2) whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case; and (3) whether applying the attorney-client privilege would deny the opposing party access to information that was vital to the opposing party's defense. Filing 353 at 15–16. She contends that these factors are all present here as to Defendants' various defenses. Filing 353 at 16–26.

To begin with, "factual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010) (emphasis in the original). The question here is whether that privilege has been waived because the investigation has been put "at issue" or otherwise waived in this litigation.

The Court finds that the privileges have not been put "at issue" or otherwise waived. First, this Court agrees with the court in *Parada v. Great Plains Intern. of Sioux City, Inc.*, 483 F. Supp. 2d 777, 809 (N.D. Iowa 2007), that assertion of a legitimate, nondiscriminatory (or nonretaliatory) reason for an employer's adverse action toward an employee is not itself assertion of an affirmative defense. The court in *Parada* reasoned that an employer is only required to articulate or produce a legitimate reason for its actions, but the employer does not bear a burden to prove or persuade, only to make a minimal evidentiary showing. *Parada*, 483 F. Supp. 2d at 809. The Eighth Circuit Court of Appeals subsequently distinguished the Equal Pay Act, under which the employer bears a burden of persuasion to show one or more of the enumerated justifications other than sex for a pay differential, and Title VII, under which a "defendant need only articulate a [legitimate reason] defense." *Bauer v. Curators of Univ. of Missouri*, 680 F.3d 1043, 1045–46 (8th Cir. 2012).

Other courts have recognized that a party must go beyond mere denial of an opposing party's allegations and assert an affirmative defense or at least affirmatively inject a new factual or legal issue into the case to waive attorney-client privilege. *See, e.g., Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) ("Having gone beyond mere denial, affirmatively to assert good faith, [the defendant] injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege."); *Lorenz v. Valley Forge Ins. Co*., 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case."); *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir.) ("[B]y asserting fraud, [the defendant] . . . waived his right to assert the privilege to prevent disclosure of communications which might have proven he did not rely on [the plaintiffs'] statements."), *cert. denied*, 459 U.S. 1017 (1982). The difference between a denial based on an attorney's investigation and assertion of an affirmative defense based on an attorney's investigation is nuanced, but nevertheless clear.

For example, an employer who asserted that it acted reasonably by employing an outside attorney to investigate a Title VII claim waived the privilege. *See Johnson v. Rauland–Borg Corp*., 961 F.Supp. 208, 211 (N.D. Ill. 1997). The privilege is also waived when a party directly places the reasonableness of the attorney's investigation at issue. *See United States Equal Emp. Opportunity Comm'n v. Nabors Indus., Ltd*., No. 5-16-CV-00758-FB-RBF, 2018 WL 11195496, at *3 (W.D. Tex. Aug. 21, 2018). Specifically, "courts assessing hostile work environment claims under Title VII . . . routinely hold that the *Ellerth/Faragher* affirmative defense waives attorney-client privilege when outside counsel investigates harassment allegations." *Brown v. Town of Front Royal, Virginia*, No. 5:21-CV-00001, 2022 WL 1321570, at *8 (W.D. Va. May 3, 2022)

(citing cases); *see also United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*, 342 F.R.D. 161, 188 (D.D.C. 2022) (holding that a party waives attorney-client privilege over an attorney's investigation by relying on the investigation to establish the *Kolstad* defense based on its subjective belief as to the lawfulness of its actions and those of its employees).

On the other hand, a holding that a party waived its attorney-client privilege simply because an attorney conducted an internal investigation or provided legal advice related to that investigation would be contrary to law. *Brown*, 2022 WL 1321570, at *8. There is no authority for the proposition that a party waives or abrogates attorney-client privilege simply "because an informed attorney relates to an uninformed client . . . the facts of the attorney's investigation." *See Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2016 WL 7626536, at *9 (D.S.C. Mar. 8, 2016) (citing *Johnson v. Couturier*, 261 F.R.D. 188, 191 (E.D. Cal. 2009)). Moreover, "the fact that an attorney investigates a claim and reports to a corporate client does not waive privilege where 'no actual defense of reliance on the attorney's recommendations or findings is made as a basis of the defense against the claim.'" *Stockton v. HouseCalls Home Health Servs., Inc*., No. 06-CV-357-GKF-PJC, 2007 WL 9782747, at *4 (N.D. Okla. June 15, 2007) (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, pp. 362–63 (ABA 4th ed. 2001)). Indeed, where a defendant relies on termination of a plaintiff for a legitimate business reason, there is no waiver of attorney-client privilege as to counsel's advice concerning that legitimate reason, because the advice is irrelevant to any claim or defense in the case. *See Stonerock v. Teays Valley Loc. Sch. Dist.*, No. 2:07-CV-1027, 2009 WL 10678856, at *5 (S.D. Ohio Jan. 15, 2009). "[M]erely provid[ing] a legitimate, nondiscriminatory reason for [defendants'] action" is not "the assertion of a cognizable defense [that] placed privileged communications at issue in th[e] litigation." *Id.* A legitimate nondiscriminatory or nonretaliatory reason does not put the reasonableness of the

defense or the investigation at issue, because as explained below, the legitimacy of the reason does not even depend upon whether or not it is correct. *See Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir.), *cert. denied*, 142 S. Ct. 585 (2021). Defendants here have relied on the Investigation Report only for this limited purpose, so no waiver has resulted.

Thus, the Court concludes that the Magistrate Judge clearly erred and/or ruled contrary to law that by citing the Investigation Report in support of a legitimate nondiscriminatory, nonretaliatory reason for Benson's termination the Defendants demonstrated an intent to rely on the "advice of counsel" as a defense or as a basis for any other defense. *See Fed. R. Civ. P. 72* (standard of review); *Gray*, 59 F.4th at 332 (explaining the "clearly erroneous" standard); *Haviland*, 692 F. Supp. 2d at 1043 (explaining the "contrary to law" standard). Specifically, that ruling is contrary to law, because it misapplies relevant case law. *Haviland*, 692 F. Supp. 2d at 1043. The Investigation Report is offered to support a denial that is not an affirmative defense. *See Bauer*, 680 F.3d at 1045–46; *Prada*, 483 F. Supp. 2d at 809. Also, again logically, the Investigation Report and Gerdes's investigation have nothing to do with Benson's claims in this action involving alleged misconduct by Defendants prior to the April Warehouse Fire, so they are irrelevant to any affirmative defenses to claims involving alleged misconduct prior to the date of that incident. To put it another way, the Investigation Report and related work product are not "at issue" because they are not the basis for a claim or defense. *See Parmida*, 281 F.3d at 732 (work-product privilege); *Baker*, 209 F.3d at 1055 (attorney-client privilege); *Davis*, 583 F.3d at 1090 (attorney-client privilege).

Furthermore, the Eighth Circuit Courts of Appeals has explained,

> Although "a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination," if the employer's proffered reason was "truly ... the reason for the plaintiff's termination," we will not "decide whether [that] reason was wise, fair, or even

correct." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) (quoting *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)). "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Wilking*, 153 F.3d at 873 (cleaned up).

*Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir.), cert. denied, 142 S. Ct. 585 (2021); *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014) ("Our precedent establishes that the 'critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.'" (quoting *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012)). Thus, the offer of the Investigation Report as support for a legitimate reason for Benson's termination does not even bring into question whether the Investigation Report itself or any of the work product on which it is based is accurate. *Id.* To demonstrate otherwise, Benson would have to show that, based on what Defendants knew at the time the decision to terminate Benson was made, Defendants could not in good faith have believed the Investigation Report's finding that Benson's statements about Captain Mahler's conduct during the April Warehouse Fire were contrary to all the evidence. *Id.* Benson has not done so thus far. On the other hand, there is nonprivileged evidence in the record corroborating the finding in the Investigation Report, including the other evidence Chief Engler stated he relied on to make the termination decision. *See* Filing 172-2 at 1 (Notice of Dismissal); *see also* Filing 345 at 2.

Under these circumstances, the second factor Benson contends is relevant to determining whether there has been an "at issue" waiver is not satisfied. That factor asks whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case. *See Seneca Ins. Co. v. Western Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (cited

by Benson, Filing 353 at 15–16). Defendants have not made the Investigation Report or related work product relevant to the case by asserting an affirmative defense to which they relate.

Because no privileged communication or work product has been put "at issue," the Court will give only limited further consideration to the Interested Parties' Objection that the Magistrate Judge failed to distinguish among the various privileges in finding a waiver. Filing 351 at 6. Suffice it to say that "[v]oluntary disclosure of attorney client communications expressly waives the [attorney-client] privilege," *see Hahn*, 58 F.4th at 1012 (quoting *Workman*, 138 F.3d at 1263), but the waiver extends only to "any information directly related to that which was actually disclosed." *Davis*, 583 F.3d at 1090 (quoting *Workman*, 138 F.3d at 1263). Thus, to the extent there was any waiver of attorney-client privilege from disclosure of the Investigation Report, that disclosure does not waive protection afforded to opinion work product. *Baker*, 209 F.3d at 1055 (citing *In re Martin Marietta Corp.*, 856 F.2d 626). Furthermore, the disclosure of work product in the Investigation Report waived work-product protection only as to that information. *Pittman*, 129 F.3d at 988. Benson has not demonstrated an inability to secure the substantial equivalent of the materials protected by ordinary work-product privilege by alternate means without undue hardship, so she is not entitled to the protected materials. *See In re Green Grand Jury Proc.*, 492 F.3d at 980. This is so, because Benson has every opportunity that Gerdes had to interview all the relevant witnesses and to hear the audio recording of the firefighters responding to the April Warehouse Fire. Finally, the circumstances here fall well short of the extraordinary circumstances required to overcome the nearly absolute immunity from discovery afforded opinion work product. *Id.*

Defendants' intention to offer Gerdes's testimony also does not put any privileged communication or materials "at issue." Defendants intend to offer Gerdes's testimony, if at all,

only to address foundational or hearsay objections to her Investigation Report. *See, e.g.*, Filing 349 at 17. To the extent that the Magistrate Judge found otherwise as to Defendants' intent concerning Gerdes's testimony or waiver from offering even testimony so limited, that finding was clearly erroneous—*i.e.*, the Court is left with the definite and firm conviction that a mistake has been made on this point, *see Gray*, 59 at F.4th at 332.[6] In addition, Defendants' direct examination of Gerdes would limit the scope of any cross-examination, unless Defendants somehow "open the door" to a broader cross-examination. *See* Fed. R. Evid. 611(b) (providing that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of witnesses."); *see also Nicholson v. Biomet, Inc*., 46 F.4th 757, 765 (8th Cir. 2022) ("The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." (quoting *Valadez v. Watkins Motor Lines, Inc*., 758 F.3d 975, 981 (8th Cir. 2014)).

Under these circumstances, Defendants' first and third Objections and the Interested Parties' first Objection are sustained.

### 3. Defendants Are Not Using Privileges as Both Swords and Shields

Defendants' fourth Objection is that the Magistrate Judge erred in finding that by offering the Investigation Report as a legitimate nondiscriminatory or nonretaliatory reason for termination, Defendants would be using the Investigation Report as both a sword and a shield. Filing 348 at 2 (¶ d). The Court concludes that this Objection is closely related to the Objections just discussed. *See* Filing 353 at 15 (Benson's citation of *Seneca Ins. Co.*, 774 F.3d at 1277-78, as supporting the

---

[6] Of course, such representations estop Defendants from making any broader use of Gerdes's testimony, at least in the absence of notice of intent to do so, Benson's opportunity to respond, and the Court's determination on admissibility.

proposition that the doctrine of "at issue" waiver recognizes that privileged information cannot be used as both a sword and a shield).

Defendants argue that the Magistrate Judge's finding that Defendants are using privileged information as both a sword and a shield is contrary to the law of the case, that is, the Magistrate Judge's prior ruling. Filing 349 at 25 (citing Filing 217 at 15). They also reiterate the Magistrate Judge's prior finding that Benson is on exactly the same footing as Defendants with respect to the investigation, where neither side has received or seen the investigative file, so that fairness does not require disclosure of Gerdes's work product. Filing 349 at 25. They argue that an opinion or mental impression of counsel that was never communicated to the client provides little assistance to a factfinder in determining substantive issues and any relative value it has is outweighed by the policies supporting the privileges. Filing 349 at 26. Benson argues that Defendants are using privilege as both a sword and a shield, because it is improper for Defendants to rely upon Gerdes's advice, then deprive Benson of the opportunity to understand why the advice was given and related information about such advice. Filing 353 at 15. Benson also argues that fairness requires that she have full access to the Gerdes investigation, not just the Investigation Report that Defendants intend to use as a sword, but also all the communications and the investigation file Defendants have continually tried to shield. Filing 353 at 28.

In this case, Defendants are not attempting to use attorney-client privilege as both a sword and a shield, because as explained above they are not raising any advice of counsel as the basis for any claim or defense. *See Davis*, 583 F.3d at 1090 (explaining that a party cannot use attorney-client privilege as both a shield and a sword by raising the attorney's advice as the basis for a claim or defense); *Workman*, 138 F.3d at 1263 (explaining that a party cannot selectively assert that privilege to block introduction of information harmful to his case after introducing other aspects

of his communications with counsel for his own benefit). Again, a legitimate nondiscriminatory or nonretaliatory reason for adverse action is not a defense to any claim and the correctness of the reason is not at issue. *See Canning*, 995 F.3d at 612 (explaining that if the employer's proffered reason was truly the reason for the plaintiff's termination, the court will not decide whether that reason was wise, fair, or even correct); *Bauer*, 680 F.3d at 1045–46 (explaining that under Title VII a legitimate nondiscriminatory, nonretaliatory reason must only be shown not proved); *Parada*, 483 F. Supp. 2d at 809 (explaining that a legitimate nondiscriminatory, nonretaliatory reason is not an affirmative defense). Moreover, nothing in the record supports the notion that Defendants ever received any privileged information or communications from Gerdes other than the Investigation Report. Anything that counsel knew that was not communicated to Defendants' decisionmakers remains privileged and is not discoverable. *See In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006) (explaining that work product that is never communicated to the client is not discoverable); *see also Medtronic, Inc. v. Edwards LifeSciences Corp.*, 2013 WL 12149252, *6 (D. Minn. 2013) (citing *EchoStar*, 448 F.3d at 1303). Thus, Defendants' continued assertions of attorney-client privilege and work-product privilege as to any information or communications beyond the Investigation Report itself are not improper use of privileges as both swords and shields. The Magistrate Judge's contrary conclusion was clearly erroneous and contrary to law. Fed. R. Civ. P. 72 (standard of review); 28 U.S.C. § 636 (b)(1)(A); *Ferguson*, 484 F.3d at 1076.

Defendants' fourth Objection is sustained.

### 4.   *The Choice Posed by the Order Was Clearly Erroneous and Contrary to Law*

Defendants' fifth Objection is that the Magistrate Judge erred in holding that Defendants must now choose whether to proceed with their tactical decision to use Gerdes's investigation as evidence in this matter, and thereby waive all privileges, or stipulate that they will not offer her

Investigation Report or call her to testify. Filing 348 at 2 (¶ e). Because all the premises of that

holding are clearly erroneous and/or contrary to law, for the reasons stated above, it follows that

this holding is also clearly erroneous and/or contrary to law. Fed. R. Civ. P. 72 (standard of

review); 28 U.S.C. § 636 (b)(1)(A); *Ferguson*, 484 F.3d at 1076.

Defendants' fifth Objection is sustained.

5. *The Order Failed to Consider the Undue Burden on the Interested Parties*

The Interested Parties' second and third Objections are unique to them. The second

Objection is that the Magistrate Judge did not address the undue burden on them by allowing

Benson to depose Gerdes as to information protected by the work-product doctrine and the

attorney-client privilege. Filing 350 at 2 (¶ 2). Their third Objection is that the Magistrate Judge

erred by declining to prospectively limit a non-party deposition that otherwise would impose an

undue burden as it relates to "other employment investigations." Filing 350 at 2 (¶ 3). In support

of both Objections, the Interested Parties assert that "[i]t was contrary to law and clear error for

the magistrate judge to deny Baylor Evnen's Motion to Quash on this basis under Federal Rule of

Civil Procedure 45 and Motion for Protective Order seeking to limit the areas of inquiry to only

non-privileged, relevant, and proportionate issues." Filing 350 at 2 (¶¶ 2–3).

Rule 45 of the Federal Rule of Civil Procedure provides in pertinent part, "On timely

motion, the court for the district where compliance is required must quash or modify a subpoena

that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver

applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(a)(1)(A)(iii)-(iv). For the

reasons set out above, information related to Gerdes's investigation was protected by the work-

product doctrine and/or the attorney-client privilege and no exception or waiver applies. Thus,

permitting Gerdes to be deposed on such matters would be contrary to Rule 45(a)(1)(A)(iii)-(iv)

and consequently contrary to law. Fed. R. Civ. P. 72 (standard of review); 28 U.S.C. § 636 (b)(1)(A); *Ferguson*, 484 F.3d at 1076. The Interested Parties' second Objection is sustained.

The Interested Parties' third Objection requires a bit more discussion. The Magistrate Judge stated, "[I]nquiries into other investigations performed by Ms. Gerdes may still be properly objected to as privileged." Filing 345 at 8. The Interested Parties contend that such investigations are privileged and that inquiries into them would be unduly burdensome. Filing 351 at 6. They object to the Magistrate Judge's failure to bar such inquiries where he instead simply observed that the Interested Parties or the Defendants may object to them on privilege grounds. Filing 351 at 15. Defendants point out the same deficiency in the Order that the Interested Parties do. Filing 349 at 11. Benson does not expressly or clearly respond to this Objection. In their reply, the Interested Parties assert that Benson's proposed deposition of Gerdes—including inquiry into "other investigations" including the "Borchers Investigation"—is unduly burdensome because Benson seeks to question Gerdes about materials and topics that are privileged, irrelevant, overbroad, or available by other means. Filing 354 at 10.

The Court concludes first that inquiry into "other investigations" would intrude upon attorney-client and work-product privileges, just as production of Gerdes's work product as to her investigation into the April Warehouse Fire would intrude upon such privileges. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). An inquiry into "other investigations" is also irrelevant to any issue properly related to the investigation in this case, making the inquiries unduly burdensome. *See* Fed. R. Civ. P. 45(a)(1)(A)(iv). Under Rule 45, such inquiries should be barred, not merely left subject to objections, and the failure to bar them was contrary to law. Fed. R. Civ. P. 72 (standard of review); 28 U.S.C. § 636 (b)(1)(A); *Ferguson*, 484 F.3d at 1076. The Interested Parties' third objection is also sustained.

32

6. *The Order Failed to Impose Appropriate Limitations on any Deposition of Gerdes*

Defendants' last Objection to the Magistrate Judge's Order is that it failed to grant a protective order as requested to limit the deposition of Gerdes to the reasonable scope and time limitations proposed by Gerdes and Defendants as set forth in Filing 328-1, Exhibit C. Filing 348 at 2–3. Similarly, the Interested Parties' last Objection is that the Magistrate Judge erred by declining to grant a protective order limiting the deposition of Gerdes to the reasonable scope and time limitations proposed by Gerdes and Defendants as set forth in Filing 328-1, Exhibit C. Filing 350 at 2.

Defendants argue that the Magistrate Judge should have prohibited inquiries into "the number, dates and length of meetings, emails, telephone conversations, text messages or other form of communications Baylor Evnen attorneys or staff had with" various individuals as such inquiries involved information and testimony regarding communications that are *per se* protected by the attorney-client and work-product privileges. Filing 349 at 28. They also argue that the Magistrate Judge should have limited Gerdes's deposition to a reasonable period of two hours in the interest of proportionality and privilege protections. Filing 349 at 29. The Interested Parties similarly assert that the limitations they request are consistent with Rule 26(c) of the Federal Rule of Civil Procedure and the avoidance of undue burden on non-parties. Filing 351 at 5, 14–15. Benson argues that the proposed limitations are not appropriate when the law firm earned nearly $180,000 in revenue from the City to perform Gerdes's investigation and the City named Gerdes as a witness. Filing 353 at 37. In short, Benson contends that the City has waived any privileges or limitations on the deposition in light of the "paramount importance" of Benson's rights. Filing 353 at 37–38.

As the Eighth Circuit Court of Appeals recognized over two decades ago,

Although the federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). "It is clear from experience that pretrial discovery by depositions ... has a significant potential for abuse." *Id.* "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Id.* at 34–35. Because of liberal discovery and the potential for abuse, the federal rules "confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36, 104 S.Ct. 2199. Fed.R.Civ.P. 26(c) provides that "for good cause shown, the court ... in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P 45(c) provides that a court shall quash or modify a subpoena if it "subjects a person to undue burden."

The district court correctly recognized that discovery may not be had on matters irrelevant to the subject matter involved in the pending action, *see* Fed.R.Civ.P. 26(b)(1), and "[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed.Cir.1990) (emphasis omitted).

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). It is also worth mentioning that Defendants and the Interested Parties do not seek to prevent Gerdes's deposition entirely, which is a request that is regarded unfavorably by the courts. *See, e.g.*, *Raml v. Creighton Univ.*, No. 8:08CV419, 2009 WL 3335929, at *2 (D. Neb. Oct. 15, 2009) (citing *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001)).

The Magistrate Judge's Order only implicitly suggests—but never directly states—that the movants failed to show the required "good cause" for a protective order concerning Gerdes's deposition. *Miscellaneous Docket Matter No. 1*, 197 F.3d at 925; Fed. R. Civ. P. 26(c). However, the Court now finds that good cause is shown by the possibility of abuse not only in the form of delay and expense but perhaps more importantly because the unfettered deposition of Gerdes would trespass into matters that seriously implicate privilege issues and the privacy interests of

34

third parties, for the reasons set out above. *Id.* The harm to Gerdes from the compelled disclosure of privileged information substantially outweighs any need Benson has for the privileged information. *Id.* The Court finds further that, with some exceptions, the limitations proposed by Defendants and the Interested Parties adequately address proportionality concerns and Benson's reasonable needs for information that the deposition might provide.

One exception is the request by Defendants and the Interested Parties that the deposition be limited to two hours. *See* Filing 328-1 at 9 (¶ 7). Rule 30(d)(1) of the Federal Rule of Civil Procedure limits the duration of a deposition to seven hours unless the court orders otherwise. Fed. R. Civ. P. 30(d)(1). The Court finds that time limitation reasonable and sufficient here, not least because of the amount of time that may be required to address objections that may arise during the course of this particular deposition.[7] Another exception is to the request of Defendants and the Interested Parties that violation of any of the terms of the protective order shall permit the deponent immediately to terminate the deposition and seek a further protective order from the Court. Filing 328-1 at 9 (¶ 8). The Court concludes termination of the deposition upon a unilateral perception that the terms of the protective order have been violated is inappropriate. Rather, the deponent may refuse to answer questions that she believes violate the terms of the protective order, and the parties may subsequently seek judicial determination of whether the questions must be answered.

Therefore, the last Objections by Defendants and the Interested Parties are sustained, and the Court will include below a protective order consistent with the requests the Court finds are warranted.

### III. CONCLUSION

Upon the foregoing,

---

[7] The Court adds however that it cannot imagine that the deposition would need to run more than four hours.

IT IS ORDERED that

1.      Defendants' Objections to Magistrate Judge's Order (Filing No. 345) Regarding the Deposition of Attorney Torrey Gerdes, Filing 348, are sustained;

2.      Interested Parties Torrey Gerdes and Baylor Evnen's Objections, Filing 350, are sustained; and

3.      United States Magistrate Judge Michael D. Nelson's Order, Filing 345, is rejected.

IT IS FURTHER ORDERED that the deposition of Torrey Gerdes noticed by plaintiff Benson is subject to this protective order and shall proceed and be conducted subject to these limitations:

1.      With regard to Gerdes' investigation into the events of April 26, 2021, plaintiff Benson may inquire into the general methods by which Gerdes conducts investigations and into the facts set forth in the Investigation Report, Filing 167-2 at 1, but Benson will not inquire into topics that the Court has determined are privileged;

2.      Benson will not inquire into the investigation referred to in Filing 301, Exhibit B, or any other investigation that does not directly involve Benson;

3.      Benson will not inquire into communications by Gerdes that are attorney-client privileged, including communications with the City or its attorneys or any of Gerdes' other clients;

4.      Benson may inquire into Gerdes' background, education, training, and experience, but Benson will not inquire into the number of times that an investigation by Gerdes, Foster, or Baylor Evnen has resulted in a finding of discrimination, harassment, or retaliation against an employer client or into any privileged information regarding investigations that Gerdes or Baylor Evnen has performed for other entities;

5.      In lieu of deposition testimony on the following topics, (a) Gerdes has submitted affidavits on the topics of the recording devices, method of recording, and the engagement letters for the investigations set forth in the Investigation Reports, Filing 167-2, and Filing 301, Exhibit B (*see* Filings 167, 177-2, 316-1), and (b) the City will submit the total amounts paid to Baylor Evnen for the investigations set forth in Filing 167-2 and Filing 301, Exhibit B. No inquiry will be permitted into these topics at any deposition of Gerdes.

6.      Defendants' and Gerdes's compliance with the Notice of Deposition for Torrey Gerdes does not constitute a subject-matter waiver on any subject addressed in such deposition.

Dated this 1st day of March, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge