IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AMANDA BENSON,

                    Plaintiff,

          vs.

CITY OF LINCOLN, a political subdivision;
CHRIS BEUTLER, TOM CASADY, DOUG
MCDANIEL, TIM LINKE, LEO BENES, ERIC
JONES, DARREN MERRYMAN, and SHAWN
MAHLER,

                    Defendants.

4:18CV3127


MEMORANDUM AND ORDER
REGARDING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
AND DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

          Plaintiff Amanda Benson, a female firefighter/EMT with Lincoln Fire and Rescue (LFR),

brought this action alleging violations of her civil rights against the City of Lincoln, Nebraska, the

Mayor, and several LFR employees. Filing 188 (Fourth Amended Complaint). This case is now

before the Court on Plaintiff's Motion for Partial Summary Judgment on Defendants' affirmative

defenses of failure to mitigate damages and after-acquired evidence. Filing 373. This case is also

before the Court on Defendants' Motion for Summary Judgment on all claims in Plaintiff's Fourth

Amended Complaint. Filing 377. In addition to the summary judgment motions, there are two

Motions to Strike now before the Court. The first is Plaintiff's Motion to Strike Filing No. 391-17

and Portions of Filings Nos. 392, 393, and 394, which are filings in support of Defendants'

opposition to Plaintiff's Motion for Partial Summary Judgment. Filing 405. The second is

Defendants' Motion to Strike Portions of Plaintiff's Summary Judgment Opposition pursuant to

Federal Rules of Civil Procedure 1 and 56 and Federal Rules of Evidence 403, 801, and 802. Filing

414. For the reasons stated below, the parties' Motions to Strike are denied. Also, for the reasons

stated below, the Motions for Summary Judgment are denied.

# I.  INTRODUCTION

The Court will state separately the specific factual context and key factual disputes for each Motion for Summary Judgment to the extent necessary to resolve those motions. For purposes of providing more general context for both the Motions for Summary Judgment and the Motions to Strike, however, the Court will briefly summarize the factual background to this litigation and the essential procedural background.

## A.  Factual Background to the Litigation

Amanda Benson was hired by Lincoln Fire & Rescue (LFR) on July 1, 2013, as a Firefighter/EMT. Filing 394 at 1 (¶ 1).[1] Defendants are the City of Lincoln, Nebraska, various city officials, and various officers in the LFR. Filing 378 at 1–3 (¶¶ 2–10).

After serving as a floating firefighter, Benson was assigned permanently to Station 8 on the Engine 8 crew for C shift on October 15, 2014. Filing 378 at 6 (¶ 24). Captain Shawn Mahler was the Captain of the Truck crew at Station 8. Filing 397 at 3 (¶ 25) (admitting this much of ¶ 25). Benson does not properly dispute Defendants' allegation that Mahler had no authority over promoting, disciplining, firing, or reassigning Benson to significantly different duties, but she does allege that he "manipulated" the schedule at Station 8 to prevent her from working on Truck 8, and that he had supervisory control over her and could significantly influence her "career trajectory." Filing 397 at 3 (¶ 25). In November of 2020, Benson became the Acting Captain on Engine 1 at Station 1, then later became the Acting Captain of Truck 1 at that Station. Filing 378 at 39 (¶ 203).

---

[1] Filing 394 is Defendants' Responses to Plaintiff's Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgment, but it has the virtue of setting out both Benson's statements of facts in support of her Motion for Partial Summary Judgment, see Filing 376, and Defendants' responses. Filing 378 is Defendants' Statement of Undisputed Fact Material Facts in Support of Motion for Summary Judgment, and the Court will rely on it for statements that Benson does not dispute. Filing 397 is Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, but it only sets out factual statements that Benson disputes, and the Court will rely on it for that purpose.

Benson alleges that she was subjected to sexual discrimination and harassment for almost the entirety of her employment with LFR. She filed charges of discrimination with the Nebraska Equal Opportunity Commission (NEOC) on August 15, 2016, *see* Filing 394 at 2 (¶ 3), and four years later with the federal Equal Employment Opportunity Commission (EEOC), on October 14, 2020, *see* Filing 394 at 2 (¶ 6). It is safe to say that many—but not all—of Benson's allegations of discrimination, harassment, and retaliation were based on conduct by Mahler.

On April 26, 2021, LFR was called to a cardboard fire within a warehouse. Filing 378 at 43 (¶ 224). Benson and T1 arrived at the scene before Mahler and T8. Filing 378 at 44 (¶ 233). Mahler and his crew were called to the warehouse fire mid-morning. Filing 378 at 44 (¶ 230). The parties dispute several circumstances about that fire and the interaction between Benson and Mahler during that fire. On May 5, 2021, Benson alleged Mahler had abandoned her during the fire, and that she and her crew could have been killed or injured, when she spoke to and submitted a complaint to her superiors at LFR. Filing 397 at 59 (¶ 290) (admitting this much of ¶ 290). The LFR conducted an investigation, although Benson disputes its adequacy. Filing 397 at 60 (¶ 292). Benson was unhappy with the outcome of that investigation, so Benson and her Union filed a grievance on June 9, 2021, seeking a "thorough and honest investigation" and punishment of employees who breached rules of conduct. Filing 378 at 55 (¶ 294). On June 11, 2021, Benson filed a motion for a preliminary injunction asking this Court to (1) order that the City of Lincoln immediately initiate disciplinary proceedings against Mahler; (2) enjoin Mahler from assignment/dispatch to any fire scene during the pendency of disciplinary proceedings; and (3) appoint an independent third-party investigator to investigate Plaintiff's complaint about Mahler's actions at the warehouse fire. Filing 112 at 2 (¶ 8); *see also* Filing 397 at 63 (¶ 295) (agreeing that Benson filed a motion for a preliminary injunction). On August 16, 2021, another judge of this

3

Court denied Benson's Motion for Preliminary Injunction. Filing 397 at 69 (¶ 309) (objecting to the admissibility of the ruling, but not objecting to the fact of the ruling or that it denied her motion).

After pre-disciplinary investigations and proceedings, Benson was terminated effective November 2, 2021. Filing 394 at 1 (¶ 1); *see also* Filing 380–83 at 4 (dismissal letter). Fire Chief David Engler, who is not a party to this litigation, determined that Benson had made false allegations against Mahler and that her actions were "a direct hindrance to the effective performance of LFR's functions and reflect undue discredit upon the department," establishing "good cause" for dismissal. Filing 380 at 3 (dismissal letter).

## B. Procedural Background

On July 6, 2018, well before her termination, Benson filed her original Complaint in this matter in the District Court of Lancaster County, Nebraska. Filing 1 at 4–95. Defendants removed the action to this federal court. Filing 1. However, at this point in the litigation, Benson's operative pleading is her Fourth Amended Complaint. Filing 188.

In her Fourth Amended Complaint, Benson asserts eight causes of action. Her first cause of action is a claim for a sexually hostile work environment and retaliatory harassment in violation of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §48-1101, *et seq*. Filing 188 at 59–60 (¶¶ 225–230). Her second cause of action is a NFEPA claim of sexual discrimination. Filing 188 at 60–61 (¶¶ 231–235). Her third cause of action is a NFEPA claim of retaliation. Filing 188 at 61–62 (¶¶ 236–240). Her fourth cause of action is a claim for a sexually hostile work environment and retaliatory harassment in violation of Title VII. Filing 188 at 62–63 (¶¶ 241–245). Her fifth cause of action is a Title VII claim of sexual discrimination. Filing 188 at 63–64 (¶¶ 246–250). Her sixth cause of action is a Title VII claim of retaliation. Filing 188 at 64–65 (¶¶ 251–255). Benson's seventh cause of action alleges sexual discrimination and a hostile work

environment in violation of the Equal Protection Clause of the United States Constitution against the City of Lincoln. Filing 188 at 65–67 (¶¶ 252–263). Her last cause of action alleges sexual discrimination and a hostile work environment in violation of the Equal Protection Clause of the United States Constitution against the individual Defendants. Filing 188 at 67–68 (¶¶ 264–270).

Defendants filed a joint Answer on December 6, 2021, denying Benson's claims. Filing 196. Of interest here are two of Defendants' affirmative defenses. The first affirmative defense at issue alleges "that Plaintiff has failed to mitigate her damages." Filing 196 at 14 (¶ 115). The second affirmative defense at issue alleges that "Plaintiff's claims may be barred by the doctrine of after acquired evidence." Filing 196 at 15 (¶ 117).

## II.  THE MOTIONS TO STRIKE

The Court will begin this decision with rulings on the parties' Motions to Strike because these Motions may be determinative of what evidence the Court can consider on summary judgment. The Court will analyze these motions in turn.

### A.  Plaintiff's Motion to Strike

In her Motion to Strike, plaintiff Amanda Benson moves to strike Doc. 391-17, and portions of Filing 392 (Section III(A) on p. 2), Filing 393 (Paragraph (A)(1) on p. 1), and Filing 394 (p. 13 first full paragraph in response to Plaintiff's Statement of Fact 24) pursuant to Federal Rule of Civil Procedure 12(f). Filing 405 at 1.[2] The evidence in question purportedly relates to the Defendants' "after-acquired evidence" affirmative defense. Filing 405 at 2.

Benson contends that the challenged evidence in Defendants' materials in opposition to her Motion for Partial Summary Judgment is immaterial, impertinent, and scandalous. Filing 405 at 1. She contends further that the evidence and corresponding argument are based on hearsay, are

---

[2] This Motion was not accompanied by a separate brief as required by NECivR 7.1(a)(1)(A), even though it plainly raises "substantial issue[s] of law."

unauthenticated, and are both irrelevant and unfairly prejudicial. Filing 405 at 1. Benson also argues that there was no reason for Defendants to offer this evidence, because Defendants have already withdrawn their after-acquired evidence defense. Filing 405 at 2. Defendants respond that the reason for including such evidence in support of their opposition to Benson's Motion for Partial Summary Judgment is that Benson's Motion challenges Defendant's after-acquired evidence affirmative defense despite Defendants having previously notified Benson in writing that they had withdrawn that affirmative defense. Filing 416 at 1. Defendants argue that they appropriately exercised their right to respond to Benson's factually inaccurate allegations and that there is no basis to strike their response given that Benson chose to place this issue before the Court. Filing 416 at 2.

Federal Rule of Civil Procedure 12(f) provides in pertinent part, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Thus, Rule 12(f) is strictly limited to striking material "from a pleading." Id. Federal Rule of Civil Procedure 7 in turn distinguishes between "pleadings," "motions," and "other papers." Fed. R. Civ. P. 7. Specifically, subsection (a) of that rule provides, as follows:

> **(a)**  **Pleadings**. Only these pleadings are allowed:
>
> (1) a complaint;
>
> (2) an answer to a complaint;
>
> (3) an answer to a counterclaim designated as a counterclaim;
>
> (4) an answer to a crossclaim;
>
> (5) a third-party complaint;
>
> (6) an answer to a third-party complaint; and
>
> (7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a). Conspicuous by its absence from this list of "pleadings" is an opposition to a summary judgment motion or any material filed in support of that opposition. Those filings are "Other Papers" within the meaning of Federal Rule of Civil Procedure 7(b). Fed. R. Civ. P. 7(a) (identifying anything other than a "pleading" as a "motion" or "other paper" filed with the court); *see also* Fed. R. Civ. P. 7, 1937 Advisory Committee Notes (explaining that "[a] provision designating pleadings and defining a motion is common practice in the state practice acts"). Thus, they are not proper targets of a Rule 12(f) motion to strike material from a "pleading."

Still more importantly here, Defendants withdrew their after-acquired evidence defense "without prejudice to re-asserting it should relevant information be disclosed . . . in the course of the remaining discovery or at trial." Filing 394 at 13 (quoting Filing 391-15 at 3 (Rule 30(b)(6) Response, Topic No. 10)). Thus, even construing Benson's Motion to Strike as directed at the affirmative defense of after-acquired evidence stated in Defendants' Answer, Filing 196 at 15 (¶ 117), the Motion to Strike is moot, because the defense has already been withdrawn.

To the extent the Motion challenges the admissibility of evidence, it is unnecessary. Like another judge of this district addressing a similar motion to strike an index in opposition to a motion for summary judgment, this Court notes that Benson's evidentiary challenges are "both unnecessary and contrary to this Court's rules." *Schwarting v. Rain & Hail, LLC*, No. 4:22-CV-3016, 2023 WL 3198335, at *5 n.2 (D. Neb. May 2, 2023). As that judge pointed out, the local rule concerning summary judgment states in part,

> The opposing party shall not file a motion to strike based on alleged noncompliance with [rule 56]. Any dispute over the admissibility of evidence should be raised through an objection, in the objecting party's brief or responsive statement, to the facts relying on that evidence.

*Id.* (quoting NECivR 56.1(e)). The Court is also well aware of what evidence can be considered on a motion for summary judgment:

7

The Eighth Circuit Court of Appeals has explained, "Federal courts consider 'all admissible evidence' on a motion for summary judgment." *Doe by next friend Rothert v. Chapman*, 30 F.4th 766, 770 (8th Cir. 2022) (quoting *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 759 (8th Cir. 2015)). That court has cautioned, however, that "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in the original); *see also Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (quoting *Gannon*, 684 F.3d at 793). In other words, "[t]hough parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form." *Smith*, 926 F.3d at 485; *see also* Fed. R. Civ. P. 56(c), advisory committee notes to 2010 amendment (explaining that "the burden is on the proponent to show that material is admissible as presented or to explain the admissible form that is anticipated").

*Great N. Ins. Co. v. Aegis Sci., Inc.*, No. 8:20CV539, 2022 WL 18086880, at *3 (D. Neb. June 10, 2022). The Court will not consider irrelevant or immaterial facts.

Finally, the Court will focus on matters that are material and genuinely in dispute in its analysis of the parties' Motions for Summary Judgment. *See* Fed. R. Civ. P. 56(a); *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." (citation omitted)). Whether or not there is after-acquired evidence of wrongdoing by Benson is not one of those matters where the after-acquired evidence defense has been withdrawn.

The Court will not waste its time examining the specific items Benson has improperly moved to "strike" to determine whether they are properly included in the summary judgment record. Benson's Motion to Strike is denied as improper and moot.

### B.  Defendants' Motion to Strike

Defendants also filed a Motion to Strike, specifically, their Motion to Strike Portions of Plaintiff's Summary Judgment Opposition pursuant to Federal Rule of Civil Procedure 1 and 56 and Federal Rules of Evidence 403, 801, and 802. Filing 414. Defendants seek to "strike" five

parts of Benson's response to their Motion for Summary Judgment.[3] The Court finds it unnecessary to address this Motion in detail, because it runs afoul of many of the same principles as Benson's Motion to Strike.

Defendants describe Benson's voluminous filings in response to their Motion for Summary Judgment as "litigation terrorism that is hostile to [Federal Rule of Civil Procedure 1], indifferent to the truth, and singularly focused on creating a crushing workload so disproportionate to the needs of the case that defendants will merely pay ransoms to free themselves regardless of the merit of the allegations at issue." Filing 415 at 1. Furthermore, Defendants assert that Benson's filings are rife with citation errors and evidence that is inadmissible pursuant to Federal Rules of Evidence 403, 801, and 802. Filing 415 at 2. Benson argues that Defendants are "kettles" calling the "pot" black, because Defendants created the "crushing workload" by filing a Motion for Summary Judgment that was completely unwarranted due to the number of disputed facts that create a jury question on all her claims. Filing 419 at 1 (citing Defendants' Statement of Undisputed Material Facts, Filing 378). She argues that the evidence Defendants seek to strike may be harmful to Defendants, but it is material evidence going to the "heart" of her case that could be presented in admissible form at trial. Filing 419 at 2.

---

[3] Specifically, Defendants seek an order striking the following from Benson's response:

    1.        Plaintiff's Index of Evidence which consists of over 3,600 pages and Statement of 362 Additional Facts.

    2.        Plaintiff's Statement of Additional Facts 1-25 which relate to separate lawsuits and/or predate Benson's employment.

    3.        Plaintiff's Exhibits 180 and 181 (Doc. 395-23 & 395-24) which are counsel's charts of "Adverse Actions" and "Protected Activity."

    4.        Plaintiff's Exhibits 20, 43, 44, 112, 123, 124 and 140, which are unofficial transcriptions by Plaintiff's counsel's staff, using an online computer program, of Benson's numerous recordings.

    5.        Plaintiff's Responses to Defendants' Statement of Undisputed Facts. Defendants file their Brief in support of this Motion herein.

Filing 414 at 1–2.

Like Benson's Motion to Strike, Defendants' Motion to Strike is "both unnecessary and contrary to this Court's rules" to the extent it challenges evidence offered in opposition to summary judgment. *See Schwarting*, 2023 WL 3198335, at *5 n.2. The Court is also well aware of what evidence can be considered on a motion for summary judgment. *See Great N. Ins. Co.*, 2022 WL 18086880, at *3. The Court will not consider irrelevant or immaterial facts.

Defendants' Motion to Strike is denied as unnecessary and improper.

### III. THE MOTIONS FOR SUMMARY JUDGMENT

The Court will begin its legal analysis by setting out the standards for summary judgment. The Court will then apply those standards to the parties' Motions in turn.[4]

### A.  Standards for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, whether or not a court should grant summary judgment often turns on whether or not genuine issues of material fact are apparent on the record. As mentioned above, at summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[4] The Court's ability to determine the factual context of the Motions for Summary Judgment and the facts genuinely in dispute has been seriously hampered by the parties' failure to comply with NECivR 56.1, as amended effective December 1, 2022. Specifically, Defendants' Statement of Undisputed Material Facts, Filing 378, is some 64 pages and consists of 331 numbered paragraphs. Such a prolix statement of facts is unnecessary and out of proportion to the issues legitimately raised by the case.

"The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), reh'g denied, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the . . . absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). As was also mentioned above, on a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co*., 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins*., 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc*., 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ*., 937 F.3d 1119, 1124 (8th Cir. 2019). "The Supreme Court's 'repeated' admonition is that 'the [claimant], to survive the [opposing party's] [summary judgment] motion, need only present evidence from which a jury might return a verdict in his favor.'" Doe by next friend *Rothert v. Chapman*, 30 F.4th 766, 772 (8th Cir. 2022) (quoting *Anderson*, 477 U.S. at 257).

With these standards in mind, the Court turns to consideration of the parties' Motions.

### B.  Plaintiff's Motion for Partial Summary Judgment

As mentioned above, Benson seeks summary judgment regarding Defendants' affirmative defenses of failure to mitigate and after-acquired evidence. Filing 373 at 1. The Court will consider in turn those two parts of Benson's Motion.

11

### 1.  Additional Factual Background

The factual background stated here is by no means as comprehensive as the parties' offer in their statements of fact concerning Benson's Motion. Instead, the Court's goal is to provide an indication of the extent of the parties' agreement and disagreement on the pertinent facts.

Benson alleges that following notification of her termination, she immediately began applying for employment within her field and researching other fire departments to which she could apply. Filing 394 at 3–4 (¶ 10). Defendants dispute that Benson did so "immediately" and assert both that the number of applications Benson filed was unreasonably low and that her targets were unreasonably limited because Benson confined her search to departments with Urban Search and Rescue (USAR) teams under the Federal Emergency Management Agency (FEMA) to respond to disaster emergencies nationwide. Filing 394 at 4–5 (¶ 10 response). Defendants agree that as a general matter applying to fire departments is a time-intensive process owing to the nature of the profession, certifications and training requirements, and timing of training academies. Filing 394 at 9 (¶ 19). Nevertheless, Defendants argue that while there are difficulties, Benson admitted that as of July 2022, eight months or so after her termination, she had only applied with four other fire departments and had pulled out or intended to pull out of the application process for one of those departments. Filing 394 at 9–10 (¶ 19 response).

Benson alleges that, because of the nature of the firefighting profession, she could not get employment with another department at the same level of compensation as she had earned at LFR as an Acting Captain, and that starting over would entail new training, loss of seniority status, rank, longevity pay, pension status, and other benefits. Filing 394 at 6 (¶ 12). Defendants assert that Benson is not a vocational expert so she is not qualified to give this opinion and that her search criteria were too narrow. Filing 394 at 6 (¶ 12) (response to ¶ 10). Benson alleges that following her termination from LFR, she thoroughly researched various fire departments, but Defendants

dispute the meaning of "various" and "thoroughly researched." Filing 394 at 6 (¶ 13) (allegation and response). Benson also alleges that even a "lateral" transfer would not be fully commensurate with rank and other benefits she had at LFR, but Defendants again assert that Benson is not a vocational expert and that Benson's job search criteria were too narrow. Filing 394 at 7 (¶ 14) (allegation and response).

Benson alleges that she engaged in extensive research, training, fitness testing, and written testing, that she paid for test scores and certifications to be sent to various departments, and that she hand-delivered some application items, including to a department in Miami, Florida. Filing 394 at 10–11 (¶ 20). Defendants generally admit these allegations but reiterate that Benson's self-imposed limitation to USAR teams was unreasonable. Filing 394 at 11 (¶ 20 response).

Benson argues that she took interim employment with three different entities between December 2021 and December 2022, consisting of positions as an adjunct fire instructor and two paramedic/EMT positions, but none paid as much as she was earning at LFR. Filing 394 at 12 (¶ 22). Defendants admit these allegations except for certain details of Benson's pay in those positions, which Defendants allege show that Benson left one interim job for another that actually paid less. Filing 394 at 12 (¶ 22 response).

The parties agree that after arbitration, Benson was reinstated to LFR on December 21, 2022. Filing 394 at 14–15 (¶ 27) (allegation and response). However, Benson contends that the City denied "various reasonable accommodations" that she requested and that the failure to accommodate resulted in her "constructive[ ] discharge[ ]" on March 13, 2023. Filing 394 at 15 (¶ 28). Defendants admit that Benson quit, but deny the remainder of her allegations, alleging instead that Benson returned to work for just two days of training and never reported to her assigned station to resume her duties with LFR. Filing 394 at 15 (¶ 28 response).

Turning briefly to the second affirmative defense at issue, Defendants alleged in their Answer to Benson's Fourth Amended Complaint that "Plaintiff's claims may be barred by the doctrine of after acquired evidence." Filing 196 at 15 (¶ 117). Benson's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment contains not one factual allegation relating to this defense. *See generally* Filing 376. On the other hand, Defendants' Statement of Additional Undisputed Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment does. Filing 393 at 1 (¶ 1). Defendants allege that they acquired evidence that Benson did not fully disclose an incident that involved an "Order Affirming Domestic Abuse Protection Order" imposed by the state court granting Benson's former girlfriend's petition based on the violent acts the girlfriend alleged. Filing 393 at 1 (¶ 1). Benson disputes whether she adequately disclosed the incident before she was hired by the City, but she does not dispute the nature of the incident as stated here. Filing 407 at 1 (¶ 1). In any event, Defendants have withdrawn this defense. *See* Filing 394 at 13 (quoting Filing 391-15 at 3 (Rule 30(b)(6) Response, Topic No. 10)).

### 2. *Issues of Material Fact Preclude Summary Judgment on the Failure-to-Mitigate Affirmative Defense*

Benson argues that no reasonable jury could find that she failed to mitigate her damages in light of the record evidence of her diligent efforts to find comparable employment and Defendants' failure to show that any substantially equivalent positions were available. Filing 375 at 4. Defendants contend that Benson's efforts to secure comparable employment were not reasonably prompt, were unreasonably narrow, and were insufficient. Filing 392 at 4–5. More specifically, Defendants point to Benson's decision to quit interim employment as a paramedic for a lower paying job, her limited applications to fire departments, her unreasonable focus on departments with USAR teams, and her quitting of her job after reinstatement with LFR. Filing 5–11. A key

14

point in Benson's reply is that Defendants have improperly relied on events after her reinstatement with LFR, because she has taken the position that the backpay period ends upon her reinstatement. Filing 406 at 12–13.

"When an employer makes a discriminatory employment decision against an individual, that individual has a duty to look for another position to mitigate his damages." *Townsend v. Bayer Corp.*, 774 F.3d 446, 466 (8th Cir. 2014) (quoting *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 992 (8th Cir. 2007)). More specifically, the employee "has an affirmative duty to mitigate his damages by reasonably seeking and accepting other substantially equivalent employment." *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904–05 (8th Cir. 2006) (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). The plaintiff's burden of mitigating damages "is not onerous," but it does require the plaintiff to exercise "reasonable diligence." *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 502 (8th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)). Thus, what is required is that the plaintiff "make some sustained minimal attempt to obtain comparable employment." *Id.* As the Eighth Circuit has also explained,

> The duty to mitigate, however, does not require the individual to "go into another line of work, accept a demotion, or take a demeaning position." *Canny*, 439 F.3d at 904–05 (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir.2002)). In addition, an individual's efforts to mitigate do not have to "be successful but must represent an honest effort to find substantially equivalent work." *Hartley*, 310 F.3d at 1061. The burden is upon the employer to prove a failure to mitigate. *Chalfant*, 475 F.3d at 992.

*Townsend*, 774 F.3d at 466. Consequently, "[t]he defendant bears the burden of showing that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 617–18 (8th Cir. 2000) (quoting *Denesha*, 161 F.3d at 502).

One preliminary issue that the Court finds it must address is Benson's concession that the backpay period ends on the date Benson was reinstated to LFR. Filing 406 at 12–13. In light of

that concession, the relevant evidence involves only positions available prior to Benson's reinstatement and Benson's efforts to obtain one of those positions. *Canny*, 439 F.3d at 904–05 (explaining that the employee has an affirmative duty to mitigate her damages by reasonably seeking and accepting other substantially equivalent employment); *Henderson*, 217 F.3d at 617–18 (explaining that the defendants' burden is to show that there were suitable positions and that the plaintiff did not use reasonable care to seek them). Another preliminary issue that the Court finds it must address is Defendants' contention that various mitigation-of-damages issues necessarily require expert testimony. The Court concludes that lay jurors are capable of comparing pay and benefits, rank, and status, as well as the reasonableness of Benson's decisions about what positions were or were not comparable, without requiring the assistance of expert testimony. *See, e.g., United States v. Watkins*, 66 F.4th 1179, 1185 (8th Cir. 2023) (explaining that if a layperson juror could make a "common sense determination" of an issue, expert evidence is superfluous).

There is some merit to Benson's contention that Defendants have not pointed to any specific suitable and available position. See *Henderson*, 217 F.3d at 617–18 (stating this is part of a defendant's burden). Nevertheless, Defendants have pointed to evidence that Benson applied for a position with the Omaha Fire Department, which is a USAR participating agency, but that Benson had or intended to pull out of that application. Filing 394 at 4 (¶ 10 response). A reasonable jury could find this position and possibly other positions identified by Defendants were "suitable." See *Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment). Furthermore, Defendants have pointed to evidence that USAR is a separate agency and that participation in USAR is optional and voluntary, Filing 394 at 4 (¶ 10 response), such that a reasonable jury could find that a department's involvement in USAR is not properly considered for purposes of determining the "suitability" of other positions. See *Chapman*, 30 F.4th at 772

16

(reiterating the reasonable jury standard for summary judgment). The Court concludes that there are also genuine issues of material fact as to what was a "suitable" position, based for example on the conflict between Benson's evidence of problems with loss of rank and benefits of any position with another department, Filing 394 at 6 (¶ 12), and Defendants' evidence that Benson improperly limited her search to positions that she wanted rather than positions that are actually comparable, Filing 394 at 4–5 (response to ¶ 10). See *Henderson*, 217 F.3d at 617–18 (stating it is a defendant's burden to show suitable positions were available).

The Court recognizes that the standard for comparison is that the positions are "substantially equivalent," not that they are identical. *Canny*, 439 F.3d at 904-05. At bottom, a reasonable jury could conclude that Benson did not make reasonable efforts to obtain another "substantially equivalent" position in light of evidence of the limitations she placed on her job search, Filing 394 at 4–5 (response to ¶ 10), and evidence that she actually went from one interim job to another that paid less. Filing 394 at 12 (¶ 22 response); *see Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment); *Canny*, 439 F.3d at 904–05 (requiring the employee to make reasonable efforts to find substantially equivalent positions); *Denesha*, 161 F.3d at 502 (stating that the plaintiff must exercise "reasonable diligence" to find other employment). This is so, for example, because of the difference between the thousands of professional fire departments identified by Defendants and the four applications to fire departments Benson had made as of July 2022. *See* Filing 394 at 4 (¶ 10 response); Filing 394 at 9–10 (¶ 19 response).

Benson's Motion for Partial Summary Judgment on Defendants' failure-to-mitigate affirmative defense is denied.

3. *The After-Acquired Evidence Affirmative Defense Was Withdrawn*

The Court's analysis of the part of Benson's Motion for Partial Summary Judgment on Defendants' after-acquired evidence defense will be brief. As noted above, Defendants have withdrawn this defense. *See* Filing 394 at 13 (quoting Filing 391-15 at 3 (Rule 30(b)(6) Response, Topic No. 10)). Defendants maintain that this portion of Plaintiff's Motion for Partial Summary Judgment is moot. Filing 392 at 2. Although Benson agrees that the City already waived the defense, she still argues that there is no evidence to support it and that it should be dismissed with prejudice, Filing 406 at 1, or stricken, Filing 406 at 2–3. The Court agrees with Defendants that this part of Benson's Motion for Partial Summary Judgment should be and is denied as moot, where Defendants withdrew the defense before the Motion for Partial Summary Judgment was filed.

## C. Defendants' Motion for Summary Judgment

Defendants seek summary judgment in their favor on all of Benson's claims. *See generally* Filing 379. Benson disputes summary judgment on any of her claims. *See generally* Filing 398. The Court need not separately address Benson's NFEPA, Title VII, and Equal Protection claims. *See Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1061 n.2 (8th Cir. 2020) ("The NFEPA is patterned after federal law, 'and given that neither party points to any differences between them, our analyses of [plaintiff's] federal claims apply with equal force to [her] state claims.'" (quoting *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 825 n.7 (8th Cir. 2017)); *Henry v. Hobbs*, 824 F.3d 735, 738 (8th Cir. 2016) ("We consider [Equal Protection and Title VII] claims together, as both are subject to 'essentially the same' discrimination analysis as Title VII disparate-treatment claims." (quoting *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986)). The Court's review of the record convinces the Court that a reasonable jury could find in Benson's favor on her claims. *See Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment). Rather

than discussing Benson's harassment, retaliation, and discrimination claims in turn, the Court finds it more efficient to address Defendants' Motion by focusing in turn on the key issues on which Defendants' Motion depends.

### 1. *Mahler's Status and Role*

The Court finds that a key preliminary matter is whether or not Mahler, Benson's alleged harasser and someone who figures prominently in her other claims, was a supervisor, a decisionmaker, or someone with the power to impact her career. Mahler's role in relation to Benson matters, because for example whether or not Mahler was Bensons "supervisor" is determinative of the basis for the City's liability. Also, whether or not Mahler's comments qualify as "direct evidence" of a discriminatory animus impacts the proper analytical framework for Benson's claims.

Indeed, one of the first issues that Defendants raise in support of their Motion for Summary Judgment is their contention that Mahler was not Benson's supervisor. Filing 379 at 3. Defendants recognize that the bulk of Benson's harassment allegations concern Mahler's alleged behavior while Benson served as a firefighter at Station 8. Filing 379 at 3. Defendants argue that Mahler had no authority over promoting, disciplining, discharging, or reassigning Benson to significantly different duties and that captains are not managers under the collective bargaining agreement (CBA) with the City. Filing 379 at 4 (citing Filing 378 at 6–7 (¶¶ 24–28). Consequently, Defendants argue that any harassment claims involving Mahler must be analyzed under the coworker harassment standard. Filing 379 at 5. Benson "opts not to pursue the *Ellerth/Faragher* method of proving sexual harassment against a supervisor." Filing 398 at 5. Benson's decision not to pursue the *Ellerth/Faragher* defense to supervisor harassment means that Benson's employer is "liable only if the employer's own negligence caused the harassment or led to the continuation of the hostile work environment." *See Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 696 (8th Cir.

2021) (internal citations omitted), *cert. denied*, 142 S. Ct. 1361 (2022). Thus, the Court must consider—and eventually the jury will have to determine—"(1) whether the employer had actual or constructive notice of the conduct, and (2) whether the employer took remedial action reasonably calculated to stop the harassment." *Id*. at 697 (internal quotation marks and citations omitted).

Although Benson is not pursuing "supervisor" liability for Mahler's alleged harassment, she repeatedly argues that Mahler was—or that she reasonably believed that he was—her "supervisor" at the scene of the warehouse fire. Filing 398 at 10, 25, 33. Benson also argues that Mahler could affect the "trajectory" of her career through his position as Captain of Truck 8 and his ability to manipulate the training schedule. *See* Filing 397 at 3 (¶ 25 response); *see also* Filing 398 at 11. Benson has generated genuine issues of material fact about Mahler's role as her "supervisor" or at least the reasonableness of her belief that he was her "supervisor" at the warehouse fire and whether Mahler knew that so he should have responded to her queries accordingly. *See, e.g.,* Filing 397 at 47 (¶ 228 response) (citing evidence that a group supervisor for a tactical objective at a fire can be assigned by implication). While Benson's decision to forego the *Ellerth/Faragar* method of proof of employer liability means that Benson's harassment claim will be treated as one for co-worker harassment, the evidence just mentioned could lead a reasonable jury to conclude that Mahler's refusal to engage with her—if also believed by a jury— was harassing. Likewise, Benson has generated genuine issues of material fact about the ability of a captain like Mahler to affect the career trajectory of a firefighter. *See, e.g.,* Filing 397 at 6 (¶ 40 response) (citing evidence that truck training was important to advancement); Filing 398 at 6 (citing a declaration that Mahler's conduct "gutted" Benson's career, Filing 395-12 at 2), 11 (citing testimony that if a firefighter has supportive captains, she can advance, Filing 395-12 at 2).

20

Benson also argues that Mahler's comments, including that there was no room for women in the fire service and that they were better suited to medical positions, are "direct evidence" of harassment and discrimination. Filing 398 at 12, 35, 37, 39–40; Filing 397 at 3 (¶ 30). Even if Benson proves that Mahler made sexually derogatory remarks, where she has not shown that Mahler had any authority to make adverse or retaliatory employment decisions, his comments are not "direct evidence." *See, e.g., Sellars*, 13 F.4th at 693 (explaining that "'Direct evidence . . . must relate to people with decision-making authority' and does not include 'stray remarks in the workplace' or 'statements by nondecisionmakers.'" (quoting *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014)). Thus, her proof of discrimination or harassment depends upon inferences from circumstantial evidence. *Id.* at 694.

Notwithstanding the prior conclusions, Benson argues that Mahler's discriminatory animus can be imputed to the City because he played an integral part in her termination. Filing 398 at 35. Specifically, Benson argues that Mahler's alleged "lies" to the City about what happened during the warehouse fire led to her termination, such that his statements can be imputed to the City under a "cat's paw theory." Filing 398 at 36. As the Eighth Circuit Court of Appeals has explained,

> "[C]at's-paw refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Pribyl v. Cnty. of Wright*, 964 F.3d 793, 797 (8th Cir. 2020) (alteration in original) (citation omitted). Under a cat's paw theory, "an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker— is motivated by discriminatory animus and intentionally and proximately causes the action." *Bennett v. Riceland Foods, Inc*., 721 F.3d 546, 551 (8th Cir. 2013).

*Muldrow v. City of St. Louis Missouri*, 30 F.4th 680, 689 (8th Cir. 2022), cert. granted in part as to different issue sub nom. *Muldrow v. St. Louis*, No. 22-193, 2023 WL 4278441 (U.S. June 30, 2023). Benson's cat's paw argument might have some traction if Mahler's alleged "lies" were the sole basis for Fire Chief Engler's decision to fire Benson. However, no reasonable jury could

21

conclude that the decision to terminate Benson was based solely or even substantially on Mahler's alleged "lies." See *Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment). Instead, in the Notice of Dismissal, Fire Chief Engler identified several sources of evidence and numerous grounds, most largely or completely independent of anything Mahler said, for deciding that Benson had made false allegations against Mahler. See Filing 380-83. Benson then goes to great lengths to dispute each of these pieces of evidence and grounds for her termination. See Filing 397 at 77–91 (§ 323 response). At most, however, Benson generates genuine issues of material fact on the validity of the reasons, but not on whether Mahler's "lies" were determinative of the outcome. Thus, Benson's "cat's paw" theory is completely untenable.

### 2. There Are Fact Issues on Severity or Pervasiveness of Harassment and Adversity of Employment Actions

A principal theme running through Defendants' briefing of their Motion for Summary Judgment is that Benson has not pointed to evidence of any harassment that is severe or pervasive enough to sustain a hostile environment harassment claim or any conduct other than her termination that amounts to adverse employment action sufficient to sustain a discrimination or retaliation claim. *See, e.g.,* Filing 379 at 7–11, 24–31, 37–41. As the Eighth Circuit Court of Appeals has explained,

> To prevail, [on a sexual harassment claim, a plaintiff] had to experience severe and pervasive harassment, enough "to alter the conditions of [her] employment." *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *see* 42 U.S.C. § 2000e-2(a)(1) (barring discrimination in the "terms, conditions, or privileges of employment[ ] because of ... sex"). "To clear the high threshold of actionable harm, [the plaintiff] ha[d] to show that 'the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult.'" *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "More than a few isolated incidents are required." *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 573 (8th Cir. 1997).

22

*Walker-Swinton v. Philander Smith Coll.*, 62 F.4th 435, 439–40 (8th Cir. 2023). Although the Court might well conclude otherwise, a reasonable jury could conclude that the myriad incidents of ridicule and insult that Benson claims she suffered—and that the record reasonably supports— over the duration of her employment with LFR demonstrate that the harassment was at least sufficiently "pervasive" to alter the conditions of her employment and did not involve merely a few isolated incidents. *Id.*; *see also Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment).

Similarly, the record is sufficient for a reasonable jury, *id.*, to conclude that Benson was subjected to retaliatory actions that were "materially adverse," that is, "well might have dissuaded a reasonable worker from making or supporting a charge of [retaliation]." *Muldrow*, 30 F.4th at 691 (internal quotation marks and citations omitted). While the Court has considerable doubt that many of the allegedly retaliatory adverse actions—other than termination— "consider[ed] in turn" would be found by a reasonable jury to be "materially adverse," the "cumulative force" of those incidents, which a jury must also consider, may be sufficient to meet this standard. *Id.*

A closer question is whether Benson has generated genuine issues of material fact that she suffered any adverse employment action—again, other than termination—that is sufficient to sustain her sex discrimination claims. As the Eighth Circuit has explained, in the context of a discrimination claim,

> A materially adverse employment action "is a tangible change in working conditions that produces a material employment disadvantage." *Rester [v. Stephens Media, LLC]*, 739 F.3d [1127,] 1131 [(8th Cir. 2014)]. "Such action might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects but minor changes are not enough." *Id.* (brackets and internal quotation marks omitted). The focus is on "material adversity" so we can "separate significant from trivial harms." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (emphasis omitted).

*Bell v. Baptist Health*, 60 F.4th 1198, 1203–04 (8th Cir. 2023) (footnote omitted). "Adverse employment action" includes besides termination actions like "a pay cut, demotion, or undesirable transfer." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017).

On the other hand, "[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Muldrow*, 30 F.4th at 688; *see also Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) ("A transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, otherwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." (cleaned up; citations omitted)). Also, "adverse employment action" in the context of a discrimination claim generally looks at one specific employment action at a time and does not involve the same consideration of the "cumulative force" of various incidents that a retaliation claim does. *See Muldrow*, 30 F.4th at 688 (not mentioning "cumulative force" of various incidents and focusing on a specific action in the context of a discrimination claim), 691 (considering "cumulative force" of incidents in the context of retaliation); *see also Watson v. McDonough*, 996 F.3d 850, 855–56 (8th Cir. 2021) (explaining that "a series of serious employment consequences that did not result in discharge, demotion, or suspension nevertheless [can] constitute[ ] an adverse employment action sufficient to support a claim for retaliation").

In the context of a discrimination claim, Mahler's purported exclusion of Benson from Truck 8 and consequently truck training does not meet the standard of an "adverse employment action" as a matter of law, because it did not by itself cause a materially significant disadvantage.

24

*See Muldrow*, 30 F.4th at 688. Benson now tries to spin this incident up into an illegal limitation, segregation, or classification of her based on sex within the meaning of 42 U.S.C. § 2000e-2(a)(2). Filing 398 at 36–37. Even if Mahler's denial of truck training were sufficient to satisfy the statute—and the Court holds it is not—Benson gave no hint that she was pursuing such a claim in her Fourth Amended Complaint. *See* Filing 188 at 63-64 (¶¶ 246–250) (fifth cause of action). She cannot pursue it now in an attempt to defeat summary judgment. Similarly, the Court concludes that no reasonable jury could conclude that any other incidents, considered individually, involve more than "trivial" slights or "minor" if unpalatable incidents that do not rise to the level of materially adverse employment actions sufficient to sustain a discrimination claims, even if they cumulatively might be sufficient to sustain a retaliation claim. *See Muldrow*, 30 F.4th at 688; *Ledergerber*, 122 F.3d 1144; *see also Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment). Benson's employment discrimination claim must proceed, if at all, on the basis of her termination.

### 3. There Are Fact Issues on Whether Harassment or Discrimination Was Because of Sex

A close question is also presented by whether any of the alleged sexual harassment or discrimination was "because of . . . sex. . . ." 42 U.S.C. § 2000e-2(a)(1). There must be at least some evidence of the offender's motivation. *Bell*, 60 F.4th at 1204–05. Nevertheless, Benson is correct that the incidents in question do not need to be explicitly sexual in nature. *Koop v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993). The Court concludes that, particularly in the context of a generally male-dominated profession such as firefighting, Benson has pointed to sufficient evidence to anti-woman comments and differential treatment of men and women—not only as to benefits but as to official responses to their misconduct—that a reasonable

jury could find that the conduct toward Benson was "because of [Benson's] sex." *See Chapman, 30 F.4th at 772* (reiterating the reasonable jury standard for summary judgment).

Defendants are not entitled to summary judgment on this ground.

### 4. There Are Fact Issues on Pretexts for Discrimination and Retaliation

The final topic the Court finds it must address is whether there are fact issues on pretext for purposes of Benson's discrimination and retaliation claims based on her termination. "To survive summary judgment [Benson] need not definitively prove that her employer's reason for firing her was pretextual—rather, she simply must 'adduc[e] enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive.'" *Hairston v. Wormuth*, 6 F.4th 834, 843 (8th Cir. 2021) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012)). As the Court has previously explained in this case, the critical question is not whether the employee actually engaged in the conduct for which she was terminated, but whether the employer in good faith believed the employee was guilty of the conduct justifying discharge. *See* Filing 365 at 25–26 (citing *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir.), *cert. denied*, 142 S. Ct. 585 (2021), and *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014)). After a complete review of the record in this case, the Court is reluctant to take from the jury the question of the Defendants' good faith belief that Benson engaged in dishonesty warranting discharge.[5] There are sufficient doubts from the evidence adduced about the level of sexual animus, the adequacy of investigations, the differences in the way men and women who engaged in dishonesty were treated and the extent of the similarity of the men's circumstances to Benson's, as well as the

---

[5] That said, whether Mahler "lied" about the warehouse fire incident, as Benson contends, is only relevant to the employer's good faith belief about Benson's dishonesty if the employer knew Mahler had lied or had substantial reasons to believe that he lied before terminating Benson. Evidence of supposed "lies" that only came to the employer's attention after Benson's termination does not impact the employer's good faith at the time it made the decision to terminate her.

reliability of the evidence of Benson's dishonesty and the good faith of the belief that Benson's dishonesty warranted her termination for a reasonable jury to find in her favor. *See Chapman*, 30 F.4th at 772 (reiterating the reasonable jury standard for summary judgment).

Defendants are not entitled to summary judgment on this ground, either.

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      Benson's Motion to Strike Filing No. 391-17 and Portions of Filings Nos. 392, 393, and 394, Filing 405, is denied as improper and moot;

2.      Defendants' Motion to Strike Portions of Plaintiff's Summary Judgment Opposition pursuant to Federal Rules of Civil Procedure 1 and 56 and Federal Rules of Evidence 403, 801, and 802, Filing 414, is denied as unnecessary and improper;

3.      Plaintiff's Motion for Partial Summary Judgment on Defendants' affirmative defenses of failure to mitigate damages and after-acquired evidence, Filing 373, is denied as to Defendants' failure-to-mitigate damages affirmative defense and is denied as moot as to Defendants' after-acquired evidence affirmative defense; and

4.      Defendants' Motion for Summary Judgment on all claims in Plaintiff's Fourth Amended Complaint, Filing 377, is denied.

Dated this 31st day of July, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge