IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMANDA BENSON, | |
| Plaintiff, | **4:18CV3127** |
| vs. | |
| CITY OF LINCOLN, a political subdivision; CHRIS BEUTLER; TOM CASADY; DOUG MCDANIEL; TIM LINKE; LEO BENES; ERIC JONES; DARREN MERRYMAN; and SHAWN MAHLER, | **MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION IN LIMINE** |
| Defendants. | |

Plaintiff Amanda Benson, a female former firefighter/EMT with Lincoln Fire and Rescue (LFR), brought this action alleging violations of her civil rights against the City of Lincoln, Nebraska, the former mayor, and several LFR employees. Filing 188 (Fourth Amended Complaint). This case is before the Court on the third pretrial Motion in Limine filed by the parties, that is, Plaintiff's Motion in Limine. Filing 452. For the reasons stated below, the Plaintiff's Motion in Limine is granted in part, denied in part, and reserved in part.

## I. INTRODUCTION

The Court laid out the factual and procedural background to this litigation in some detail in its ruling on the parties' Motions for Summary Judgment. *See* Filing 440, also available at *Benson v. City of Lincoln*, No. 4:18CV3127, 2023 WL 4865817 (D. Neb. July 31, 2023). Thus, the Court's summary of the general background here will be brief.

Amanda Benson was hired by LFR on July 1, 2013, as a Firefighter/EMT. Filing 394 at 1 (¶ 1). In November of 2020, Benson became the Acting Captain on Engine 1 at Station 1, then she later became the Acting Captain of Truck 1 at that Station. Filing 378 at 39 (¶ 203). Benson alleges that she was subjected to sexual discrimination and harassment for almost the entirety of her

1

employment with LFR. She filed charges of discrimination with the Nebraska Equal Opportunity Commission (NEOC) on August 15, 2016, *see* Filing 394 at 2 (¶ 3), and four years later with the federal Equal Employment Opportunity Commission (EEOC), on October 14, 2020, *see* Filing 394 at 2 (¶ 6). It is safe to say that many—but not all—of Benson's allegations of discrimination, harassment, and retaliation were based on conduct by Captain Shawn Mahler, who was the Captain of the Truck crew at Station 8. Filing 397 at 3 (¶ 25).

On April 26, 2021, LFR was called to a cardboard fire within a warehouse. Filing 378 at 43 (¶ 224). On May 5, 2021, when she spoke to and submitted a complaint to her superiors at LFR, Benson alleged Mahler had abandoned her during the fire and that she and her crew could have been killed or injured. Filing 397 at 59 (¶ 290) (admitting this much of ¶ 290). After pre-disciplinary investigations and proceedings, Benson was terminated effective November 2, 2021. Filing 394 at 1 (¶ 1); *see also* Filing 380–83 at 4 (dismissal letter). Fire Chief David Engler, who is not a party to this litigation, determined that Benson had made false allegations against Mahler and that her actions were "a direct hindrance to the effective performance of LFR's functions and reflect undue discredit upon the department," establishing "good cause" for dismissal. Filing 380 at 3 (dismissal letter).

On July 6, 2018, well before her termination, Benson filed her original Complaint in this matter in the District Court of Lancaster County, Nebraska. Filing 1 at 4–95. Defendants removed the action to this federal court. Filing 1. At this point in the litigation, Benson's operative pleading is her Fourth Amended Complaint, filed November 11, 2021. Filing 188. Defendants are the City of Lincoln, Nebraska, various city officials, and various officers in the LFR. Filing 188 at 2–3 (¶¶ 5–13); Filing 378 at 1–3 (¶¶ 2–10) (clarifying the Individual Defendants' offices).

2

In her Fourth Amended Complaint, Benson asserts eight causes of action. Her first three causes of action are for violations of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101, *et seq*. Those causes of action are for a sexually hostile work environment and retaliatory harassment, Filing 188 at 59–60 (¶¶ 225–230); sexual discrimination, Filing 188 at 60–61 (¶¶ 231–235); and retaliation, Filing 188 at 61–62 (¶¶ 236–240). Benson's next three causes of action are claims for violations of Title VII that parallel her NFEPA claims. Thus, those causes of action are for a sexually hostile work environment and retaliatory harassment, Filing 188 at 62–63 (¶¶ 241–245); sexual discrimination, Filing 188 at 63–64 (¶¶ 246–250); and retaliation, Filing 188 at 64–65 (¶¶ 251–255). Benson's last two causes of action are for violations of the Equal Protection Clause of the United States Constitution. These claims allege sexual discrimination and a hostile work environment against the City of Lincoln, Filing 188 at 65–67 (¶¶ 252–263); and sexual discrimination and a hostile work environment against the Individual Defendants, Filing 188 at 67–68 (¶¶ 264–270). Defendants filed a joint Answer to Plaintiff's Fourth Amended Complaint on December 6, 2021, denying Benson's claims and asserting numerous affirmative defenses. Filing 196.

Jury trial in this matter was set to begin on September 12, 2023. Filing 364. However, owing to a medical emergency experienced by one of Defendants' attorneys, the trial was continued to March 11, 2024. Filing 483; Filing 484. In the order continuing the trial, the Court stated that it would rule on the pending motions in limine, but that no additional pretrial motion practice would be allowed and that no expired deadlines would be reset. Filing 483 at 3–4. Consequently, the Court will proceed with its ruling on Plaintiff's Motion in Limine.

## II.  LEGAL ANALYSIS

Benson seeks exclusion of twenty-two items or categories of evidence. *See generally* Filing 452. Some of those items or categories overlap with items or categories also addressed in

Defendants' Motions in Limine. *See generally* [Filing 447]; [Filing 450]. The Court will consider these items or categories of evidence in turn.

### A. Judge Kopf's Order Denying Preliminary Injunction

The first item of evidence that Benson asks the Court to exclude is Judge Kopf's August 16, 2021, Memorandum and Order in this case denying Benson's Motion for Preliminary Injunction and Hearing (Order Denying Preliminary Injunction), Defendants' Exhibit 667, which followed the warehouse fire incident. [Filing 453 at 3]. This item of evidence requires some background.

### 1. Background

Benson filed her Motion for Preliminary Injunction in this case on June 11, 2021, a few weeks after the warehouse fire. [Filing 112]. In that Motion, Benson alleged *inter alia* that "Defendant Captain Shawn Mahler has a history of refusing to communicate with Plaintiff in retaliation for complaints she has made about his [sexually discriminatory, harassing, and retaliatory] conduct," [Filing 112 at 1] (¶ 3), and that during the warehouse fire, "[a]lthough Mahler was the Group Supervisor, he refused to speak with Plaintiff and abandoned her and her crew in a burning warehouse with nearly zero visibility," [Filing 112 at 2] (¶ 5). Benson sought the following preliminary injunctive relief:

> 8.     Plaintiff respectfully requests that the Court 1) order the City of Lincoln to immediately initiate disciplinary proceedings against Mahler; 2) enjoin Mahler from assignment/dispatch to any fire scene during the pendency of disciplinary proceedings; and 3) appoint an independent, third-party investigator to investigate Plaintiff's complaint about Mahler's actions at the recent warehouse fire.

[Filing 112 at 2] (¶ 8).

Judge Kopf, to whom this case was previously assigned, denied Benson's Motion for Preliminary Injunction. Filing 146, *offered as* Defendants' Exhibit 667. More specifically, Judge Kopf stated in his ruling,

> After careful review of the parties' briefs and evidentiary submissions, the court determines that Benson's Motion for Preliminary Injunction should be denied because the relief requested in the Motion is not of the "same character as that which may be granted finally," *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945), and the effect of the relief requested in Benson's Motion will not be to "preserve the status quo until the merits are determined," *Dataphase [Sys., Inc. v. C.L. Sys., Inc.]*, 640 F.2d [109,] 113 [(8th Cir. 1981)], but to micromanage personnel procedures and decisions of LFR.

Filing 146 at 10. Judge Kopf concluded further that "[t]he equities of the situation simply do not warrant preliminary injunctive relief." Filing 146 at 12. In reaching this conclusion, Judge Kopf made the following findings, which are the likely basis for Benson's concerns:

> To the extent Plaintiff requests that the court enjoin Mahler's retaliatory or discriminatory conduct, Plaintiff has failed to show that Mahler engaged in any such conduct in this instance. The evidence shows that, with the exception of Plaintiff, no person on Mahler's and Plaintiff's crew, nor the Incident Commander or the Safety Officer, believed that Mahler was a Ventilation Group Supervisor, that Mahler abandoned Plaintiff and her crew in a dangerous situation, or that Mahler was duty-bound to direct or supervise Plaintiff and her crew. In short, there is no evidence that Plaintiff and Mahler were anything more than peers in the incident at issue. The court declines to grant an injunction against Mahler for failing to direct, supervise, and protect when he was under no duty to do so.

Filing 146 at 12. Judge Kopf also concluded that "the *Dataphase* factors do not weigh in favor of granting preliminary injunctive relief." Filing 146 at 12. Among his reasons for that conclusion was the following:

> Here, harm to Plaintiff from future discrimination or retaliation by Mahler is not certain or imminent, especially when Plaintiff has not shown that such behavior occurred in this incident and when Plaintiff admits she has "communicated directly with Captain Mahler for work-related purposes a number of times . . . without incident." (Filing 143-1 ¶ 17.)

Filing 146 at 13.

   2.   *The Parties' Arguments*

   Benson asserts that Defendants plan to introduce evidence of the Order Denying Preliminary Injunction to try to undermine the veracity of her allegations against Mahler at the warehouse fire, to give the jurors the false impression that her complaints were unfounded, and to give the jurors the impression that Mahler's actions at the fire scene were approved by the Court. Filing 453 at 3 (citing Defendants' Exhibits 650–651, 654–660, 667, 670–674, 676 and 680).[1] Benson asserts further that Defendants plan to argue that they relied on the Order Denying Preliminary Injunction in taking subsequent action against her and in taking no action against Mahler. Filing 453 at 3. Benson argues that such use of the Order Denying Preliminary Injunction would be unfair, because of the preliminary nature of proceedings that gave rise to that Order. Filing 453 at 4. She contends that the Order Denying Preliminary Injunction should be excluded as irrelevant where it was entered before any discovery and before Mahler admitted lying in his affidavit submitted in support of Defendants' Opposition to the Motion for Preliminary Injunction. Filing 455 at 5. She argues that facts unearthed since the preliminary injunction proceedings demonstrate that any probative value of the Order Denying Preliminary Injunction is outweighed by its potential for unfair prejudice, confusion of the issues, and misleading the jury. Filing 455 at 5. She also argues that jurors would "struggle" to understand the difference between the standards Judge Kopf applied and the ones that they must apply, so that they are likely just to follow Judge Kopf's lead. Filing 455 at 5.

   Defendants respond that they intend to offer the Order Denying Preliminary Injunction only to support their legitimate nondiscriminatory reasons for Benson's termination, where Chief

---

[1] The Court does not read this part of Benson's Motion to be a challenge to any of these Exhibits other than Exhibit 667, which is Judge Kopf's Order Denying Preliminary Injunction. The focus of this part of Benson's Motion is on exclusion of Judge Kopf's Order Denying Preliminary Injunction itself. *See* Filing 453 at 1–5.

Engler expressly listed that Order as something he relied upon in making the termination decision. Filing 471 at 1. They argue further that the Order Denying Preliminary Injunction will not be offered for its truth, but to show Chief Engler's state of mind at the time he made the termination decision. Filing 471 at 1. Defendants point out that Benson made the decision to file a "baseless" Motion for Preliminary Injunction in her pending litigation, so that she should not be allowed to prejudice the Defendants by limiting their ability to discuss fully her actions leading to her termination, including her false public statements. Filing 471 at 2. Defendants also point out that the Court has made clear that the issue is not whether Benson actually engaged in the misconduct for which she was terminated but whether Defendants believed in good faith that she was guilty of the misconduct justifying the discharge. Filing 455 at 2 (citing Filing 440 at 26). Defendants argue that they must be allowed to demonstrate that their reasons and their motivating factors for terminating Benson were her misconduct not her sex. Filing 455 at 2–3.

In reply, Benson argues that the jurors must decide the facts of the case without regard to any preliminary injunction rulings but that it will be impossible for the jury to do so if they read Judge Kopf's conclusion that Benson failed to show that Mahler engaged in any retaliatory or discriminatory conduct in the warehouse fire. Filing 485 at 1. She contends that allowing the jurors to read the Order Denying Preliminary Injunction would be unfairly prejudicial, where it was entered without the benefit of live testimony and where it was based in part on Mahler's false statements in his affidavit. Filing 485 at 1. In something of a reversal from her opening position on this evidence, Benson then states,

> Plaintiff does not object to the jury being told that a different judge denied Plaintiff's Motion for Preliminary Injunction and Chief Engler can testify that he relied on that denial in deciding to fire Plaintiff. A limiting instruction would be necessary. The jury should be told that different legal standards applied to the Motion for Injunction, that they have far more evidence than Judge Kopf did, and

that it would be improper for them to infer anything from the Order about the merits of Plaintiff's case.

Filing 485 at 2.

> 3.    *The Order Denying Preliminary Injunction Is Relevant and Not Unfairly Prejudicial*

The Court concludes that Judge Kopf's Order Denying Preliminary Injunction, Filing 146 and Defendants' Exhibit 667, is admissible and that Benson's proposed limitation on the evidence in her reply is unsatisfactory. The Court has repeatedly stated in decisions in this case that in a case involving an allegedly discriminatory termination, whether the reason for the termination was right or wrong, correct or incorrect, true or untrue is beside the point; the proper question is whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge. *See* Filing 440 at 26 (citing Filing 365 at 25–26); Filing 365 at 25–26 (citing *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir.), *cert. denied*, 142 S. Ct. 585 (2021), and *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014)). Chief Engler's letter notifying Benson of her termination expressly relied on the "Memorandum & Order of the Honorable Richard G. Kopf dated August 26, 2021 in Case No. 4:18CV127." Defendants' Exhibit 674 at 1. More specifically still, it relied on Judge Kopf's findings as lending no credibility to Benson's statements that Mahler abandoned her and her crew in a dangerous fire in which they could have been injured or killed. Defendants' Exhibit 674 at 1–2. Chief Engler's letter also relied on the other two parts of Judge Kopf's Order Denying Preliminary Injunction quoted above. *See* Defendants' Exhibit 674 at 2 (quoting language found in Filing 146 at 12–13). Thus, the Order Denying Preliminary Injunction will not be offered for its truth—that is, that the stated reasons are correct—but for the good faith belief and the state of mind of Chief Engler that Benson had engaged in the misconduct warranting termination. On that issue, the Order Denying Preliminary Injunction is plainly and strongly probative. *See* Fed. R. Evid. 402.

Benson's contentions that admitting the Order Denying Preliminary Injunction will be unfairly prejudicial, confusing, or misleading are not persuasive. *See* Fed. R. Evid. 403. The jury will necessarily be instructed on the good faith standard for a termination decision. The jury will also be instructed on the limited purposes for which the Order Denying Preliminary Injunction can be used and that findings of fact in a preliminary injunction ruling are necessarily "preliminary." *See U.S. Sec. & Exch. Comm'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) ("[W]e have long held that 'findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding.'" (quoting *Patterson v. Masem*, 774 F.2d 251, 254 (8th Cir. 1985)); *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1186 (8th Cir. 2000) ("[T]he district court's findings of fact and conclusions of law on an application for a preliminary injunction are 'tentative and provisional, in the sense that different findings . . . might be warranted after a trial on the merits.'" (quoting *Independent Fed. of Flight Attendants v. Trans World Airlines, Inc*., 655 F.2d 155, 159 (8th Cir. 1981), and also citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). This Court, the Eighth Circuit Court of Appeals, and the drafters of the Federal Rules of Evidence all illustrate faith in jurors' ability to understand and follow limiting instructions thereby effectively mitigating the potential for unfair prejudice or for confusing or misleading the jury. *See* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."); *see also Nicholson v. Biomet, Inc*., 46 F.4th 757, 766 (8th Cir. 2022) (finding it "hard to imagine" that testimony prejudicially influenced the outcome of a trial in light of various limiting instructions), *reh'g denied*, No. 21-2263, 2022 WL 5239545 (8th Cir. Oct. 6, 2022); *United States v. Bassett*, 762 F.3d 681, 688 (8th Cir. 2014) ("[A] proper limiting instruction serves as a protection against unfair

prejudice." (alteration in original) (quoting *United States v. Cockerham*, 417 F.3d 919, 921 (8th Cir. 2005)).

This part of Benson's Motion in Limine is denied.

### B.  Torrey Gerdes and Her Investigation

The next part of Benson's Motion in Limine concerns the investigation by Torrey Gerdes, an attorney with Baylor Evnen, into the April 26, 2021, warehouse fire. Filing 453 at 5. Benson devotes a substantial part of her opening brief to this issue. The factual background to Gerdes's investigation is set out in considerable detail in the Court's Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order on the extent of attorney-client privilege related to this investigation, so the Court will not repeat that background here. Filing 365 at 3–7, published at *Benson v. City of Lincoln*, 343 F.R.D. 595, 601–04 (D. Neb. 2023)). Indeed, Defendants argue that this part of Benson's Motion in Limine is a belated attempt to obtain reconsideration of the Court's Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order. Filing 472 at 3. This part of Benson's Motion has four subparts, which the Court will address in turn.

#### 1.    Undisclosed Evidence about the Investigation

First, Benson argues that Defendants should be prohibited from offering any testimony or other evidence about the investigation that was not disclosed in discovery. Filing 453 at 5. Benson argues that this is so, because Defendants "convinced" the Court that the investigation was protected by attorney-client privilege, even though the report had been disclosed. Filing 453 at 5. Benson argues that at Gerdes's deposition Gerdes had little memory of what people told her or which people she interviewed. Filing 453 at 6. Benson also asserts that she was severely limited in the topics about which she was allowed to depose Gerdes. Filing 453 at 6. Benson reiterates her argument that Defendants should not be allowed to use attorney-client privilege as both a shield

10

and a sword by suddenly relying at trial on information they previously asserted was protected by the privilege. Filing 453 at 6.

Defendants argue that nothing has changed since the Court's ruling. Filing 471 at 3. Defendants state that they intend to offer the Gerdes Report only in support of their legitimate nondiscriminatory reason for Benson's termination, where it was an item on which Chief Engler expressly relied, so that it is relevant and not unduly prejudicial. Filing 471 at 3. Defendants also represent that they will not call Gerdes as a witness at trial unless necessary to lay a foundation for her report. Filing 471 at 3 n.1.

In reply, Benson asserts that Defendants have not offered any resistance to exclusion of anything new about Gerdes's investigation that was not already disclosed in discovery. Filing 485 at 2.

The Court concludes that if Defendants attempt to use at trial evidence concerning Gerdes's investigation and report that was not disclosed in discovery, and a timely objection is interposed, Defendants will be barred from using the undisclosed evidence. *See* Fed. R. Civ. P. 37(c); *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 435–36 (8th Cir. 2019) (*Petrone I*); *Petrone v. Werner Enterprises, Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (*Petrone II*). This subpart of Benson's Motion in Limine is granted.

### 2.     *The Existence of the Investigation*

Next, Benson argues that the very existence of the investigation should be excluded from evidence at trial. Filing 453 at 7. Defendants contend that this part of Benson's Motion in Limine is essentially a request for the Court to reconsider its Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order, Filing 365. Filing 471 at 3. The parties' arguments on this issue are extensive.

11

a.   The Parties' Arguments

Benson argues that it is not clear that courts or Federal Rule of Evidence 502 draw the distinction that this Court did between using the Gerdes Report as the basis for a claim or defense and using that evidence to support a mere denial of an element of Benson's case. Filing 453 at 7 (citing *Benson*, 343 F.R.D. at 612–13). Benson contends that the Gerdes Report would be used in a misleading way. Filing 453 at 8. Specifically, she argues that a critical issue is the one-sidedness of the story that can result from admitting such a report while hiding other information behind the shield of attorney-client privilege. Filing 453 at 8–9. In fact, Benson "respectfully asks the Court to reconsider its conclusions about fairness." Filing 453 at 10. She adds that neither she nor her attorneys have seen the underlying investigative file, and perhaps the Individual Defendants have not, but she argues that Defendants' lawyers have seen it, and their knowledge is imputed to the City. Filing 453 at 10.

Benson explicitly "also asks the Court to reevaluate the implication in its ruling about how Defendants may appropriately utilize the Gerdes report at trial." Filing 453 at 10. Benson contends that the line between honest belief and purposeful misrepresentation is fine and indistinct, so that even if the "correctness" of Gerdes's conclusions about what happened at the warehouse fire may not be directly before the jury, evidence that Gerdes's conclusions were misguided, arrived at unfairly, stemmed from bias, or were contradicted by other evidence is key to establishing pretext. Filing 453 at 11. Thus, she contends that she has been unfairly foreclosed from criticizing Gerdes's investigation or showing that her conclusions were wrong. Filing 453 at 11–12.

Finally, Benson argues again that jurors may not be able to distinguish between the admissibility of the Gerdes Report to show that Engler relied on it and the persuasiveness of the report itself. Filing 453 at 14. She argues that when jurors see that her counsel is unable to refute Gerdes's contentions, the jurors will assume those contentions must be true, which is

fundamentally unfair. Filing 453 at 14. Benson contends that the only remedy is to exclude Gerdes, her report, and any evidence about her investigation. Filing 453 at 14.

Defendants point out that Benson demanded an independent investigation, but after she got it, she did not like the outcome. Filing 471 at 3. They also assert that the Gerdes Report was expressly listed as an item on which Chief Engler relied in making the decision to terminate Benson, so that it is probative and not unfairly prejudicial. Filing 471 at 3–4. Because Defendants view this part of Benson's Motion as a motion to reconsider the Court's Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order, they incorporate their prior arguments on the matter. Filing 471 at 4 (citing Filing 349 and Filing 355). Defendants assert that the Court extensively analyzed the relevant issues in its Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order and that Benson adds nothing new. Filing 471 at 4–5. Defendants also asserts that a motion in limine on what was then the eve of trial is not the most appropriate procedural mechanism for Benson to ask the Court to reconsider its prior ruling and that Benson has failed to identify any change in circumstances that might have any bearing on the issues. Filing 471 at 5–6.

In reply, Benson argues that the Court previously addressed a discovery issue, but the question of admissibility at trial now before the Court was not previously briefed or before the Court. Filing 485 at 2. She argues that the controlling question now under Federal Rule of Evidence 502 is whether the disclosed and undisclosed documents "ought in fairness to be considered together." Filing 485 at 2–3 (quoting Federal Rule of Evidence 502). Benson argues further that the triggers for waiver are met here by the "presentation of evidence," the insertion of protected information into the litigation, and the "selective, misleading presentation" of evidence. Filing 485 at 3 (citing Fed. R. Evid. 502(a), Advisory Committee Notes). Benson reiterates her argument that

the jury would "struggle" to appreciate the difference between use of the Gerdes Report to support the good faith of the termination decision and use of the Gerdes Report to prove Benson's claims are meritless. Filing 485 at 3. She reiterates that the only way to prevent the misleading presentation of evidence is to exclude the very existence of the investigation, as well as the Gerdes Report itself. Filing 485 at 3.

> b. Use of the Gerdes Report for a Limited Purpose Does Not Constitute Waiver of the Privilege or Require Exclusion of All Evidence of the Investigation or Report

The Court concludes first that this part of Benson's Motion is an untimely request for the Court to reconsider its Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order, Filing 365. Benson's request for reconsideration is not pursuant to Federal Rule of Civil Procedure 59(e), because that rule applies only to motions to alter or amend a judgment. *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) ("Rule 59(e) motions are motions to alter or amend a *judgment*, not any nonfinal order." (emphasis in original)); *see also Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 (8th Cir. 2021) (noting that a motion under Rule 59(e) "is reserved for final judgments"). The Eighth Circuit Court of Appeals has explained that a motion to reconsider a non-final order—such as Benson's motion here—is construed as "one under Rule 60(b)." *Kohlbeck*, 7 F.4th at 734 n.2 ("This court construes motions for reconsideration of non-final orders as motions under Rule 60(b). . . ." (citing *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018))). Rule 60(b) has no time limit for a motion to reconsider a non-final order other than "within a reasonable time—and for reasons (1) [mistake, inadvertence, surprise, or excusable neglect], (2) [newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)], and (3) [fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(b).

Nevertheless, even though the Court's Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order is only a little over six months old, the Court concludes it is not timely. Benson had adequate time well in advance of trial to seek the Court's reconsideration of a privilege issue that she now considers so important in the context of trial.

Benson appears to attempt to counter the untimeliness of her motion by asserting that the Court's prior ruling involved a discovery issue, not a presentation of evidence issue. Filing 485 at 2–3. Benson's argument is at least partly the wrong way around. Because the standard of relevance in the context of discovery is broader than it is in the context of admissibility, *see, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992), it follows that evidence that is not discoverable generally cannot be admissible.

Benson contends that the trigger for waiver of the privilege over other evidence of the investigation is the intended use of the evidence at trial. *See* Filing 485 at 3. Federal Rule of Evidence 502, on which Benson now expressly relies, refers to "disclosure" of information rather to "presentation" of evidence at trial. Fed. R. Evid. 502(a).[2] The Advisory Committee Notes to this subsection of Rule 502 do mention "presentation" of evidence:

> **Subdivision (a).** The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of

---

[2] Federal Rule of Evidence 502(a) provides as follows:

(a) **Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

15

the adversary. *See, e.g.*, *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner. It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver. *See* Rule 502(b). The rule rejects the result in *In re Sealed Case*, 877 F.2d 976 (D.C.Cir. 1989), which held that inadvertent disclosure of documents during discovery automatically constituted a subject matter waiver.

The language concerning subject matter waiver—"ought in fairness"—is taken from Rule 106, because the animating principle is the same. Under both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation.

To assure protection and predictability, the rule provides that if a disclosure is made at the federal level, the federal rule on subject matter waiver governs subsequent state court determinations on the scope of the waiver by that disclosure.

Fed. R. Evid. 502(a), Advisory Committee Notes.

The Court is not persuaded by Benson's argument that the trigger for waiver of the privilege over other evidence of Gerdes Investigation did not happen until Defendants indicated their intent to use the Gerdes Report at trial. *See* Filing 485 at 3. The Notes discuss a "disclosure" that requires a "further disclosure" of related and otherwise protected information "in order to prevent a selective and misleading presentation of evidence." *Id.* Thus, Defendants' disclosure of the Gerdes Report was the trigger for determination of whether "further disclosure" of related and otherwise protected information was required, "in order to prevent a selective and misleading presentation of evidence." *Id.* The Court concluded in its prior ruling that there had been no subject matter waiver of privilege here as a result of the disclosure of the Gerdes Report, so that no "further disclosure" of related and otherwise protected information was required. *See* Filing 365 at 21–27 (concluding that disclosure of the Gerdes Report to support a legitimate nondiscriminatory, nonretaliatory reason for Benson's termination did not require broader disclosure of the investigation because it did not put the investigation "at issue").

The Court concludes further that Benson cannot meet the standard for relief under Rule 60(b). The Eighth Circuit has described Rule 60(b) as a rule that "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Williams, 891 F.3d at 706* (quoting *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008)). Benson cannot point to any mistake, newly discovered evidence, fraud, voidness, prior satisfaction of a judgment, or any other reason sufficiently "exceptional" to warrant relief. Fed. R. Civ. P. 60(b). The Court's prior ruling was not cast in the language of Rule 502 concerning whether the Gerdes Report and other evidence of the investigation "ought in fairness to be considered together." Fed. R. Evid. 502(a)(3). Nevertheless, the Court plainly found that the disclosure of the Gerdes Report did not, in fairness, require disclosure of the evidence of the investigation nor would use of the Gerdes Report at trial to support Defendants' legitimate nondiscriminatory, nonretaliatory reason for Benson's termination be use of the Report "in a selective, misleading and unfair manner." *Id.*, Advisory Committee Note.

Finally, the Court is not persuaded by Benson's argument that the jury would "struggle" to appreciate the difference between use of the Gerdes Report to support the good faith of the termination decision and use of the Gerdes Report to prove Benson's claims are meritless. Filing 485 at 3. The Court reiterates its conclusion that jurors are able to understand and follow limiting instructions, so an instruction on the limited use of the Gerdes Report will effectively mitigate the potential for unfair prejudice or for confusing or misleading the jury. *See* Fed. R. Evid. 105; *see also Nicholson*, 46 F.4th at 766; *Bassett*, 762 F.3d at 688.

Benson has fallen well short of demonstrating that the only appropriate course is exclusion of the Gerdes Report and all evidence of the investigation. This subpart of Benson's Motion in Limine is denied.

3.      Concerns about the "Implications" of the Gerdes Report Are Mitigated by
        a Proper Limiting Instruction

"Alternatively," Benson argues that Defendants should be prohibited from claiming that Baylor Evnen investigated Benson's retaliation complaint. Filing 453 at 14. Benson asserts that in Gerdes's deposition, Gerdes testified that she never investigated whether Mahler's behavior toward Benson at the warehouse fire was retaliation for her complaints of sexual harassment, discrimination, and retaliation against him. Filing 453 at 15. Indeed, Benson argues that both Gerdes and Defendants' Counsel objected to any question about retaliation because they insisted that Gerdes was never hired to investigate any alleged retaliation. Filing 453 at 14. Benson argues that Defendants should be judicially estopped from changing their position at trial. Filing 453 at 15. Benson admits that what the report says is not particularly problematic, but "[i]t is the implication that Mahler did not retaliate against [Benson] at the warehouse fire that is problematic—as is the assertion that Gerdes investigated the retaliation complaint." Filing 453 at 15. Thus, Benson argues that if the Court admits the Gerdes Report into evidence, the Court should bar Defendants from stating or implying that Gerdes ever investigated Benson's retaliation complaint. Filing 453 at 15.

It is not clear that the Defendants directly responded to this subpart of Benson's Motion in Limine as to the Gerdes Report. On the other hand, they have repeatedly asserted that they "intend[ ] to offer the Gerdes Report only in support of [their] legitimate nondiscriminatory reason for Benson's termination." See, e.g., Filing 471 at 3; Filing 471 at 4. Invoking estoppel against an argument that Defendants have given no indication they intend to make and that is contrary to their repeated assertions, both before the Court and in Gerdes's deposition, and different from the stated

purpose of the Gerdes Report itself, *see* Filing 167-2 and Defendants' Exhibit 668,[3] is an excessive response to a non-existent threat. Moreover, to the extent that Benson is concerned about improper "implications" from the evidence, the proper solution once again is a limiting instruction on the proper use of such evidence. *See* Fed. R. Evid. 105; *see also Nicholson*, 46 F.4th at 766; *Bassett*, 762 F.3d at 688.

This subpart of Benson's Motion in Limine is also denied.

4.     *There was No Waiver of Protected Communications Related to the Gerdes Report*

Finally, as to this category of evidence, Benson argues that the implication of Defendants' "good faith" defense is that they have waived any attorney-client privilege protecting their communications related to the report. Filing 453 at 16. Benson points out that Defendants included as a controverted issue in the Final Pretrial Conference Order "[w]hether Defendants acted in good faith barring Plaintiff's claims in whole or in part." Filing 453. Benson asserts that because Defendants made a tactical decision to rely on what she calls "the 'good faith' defense," they must accept that they have waived any attorney-client privilege protecting their communications related to the Gerdes Report. Filing 453 at 16. Defendants respond—albeit in a footnote—that they "will not offer the Gerdes Report in support of any good faith affirmative defense as [Benson] continues

---

[3] As the Court explained in its prior ruling, Gerdes's August 20, 2021, Investigation Report states in part,

> The primary purpose of the investigation was to provide legal analysis and advice to the City by conducting a neutral, independent investigation of the allegations in the complaint. This included analyzing policies and procedures applicable to the Fire Incident and reaching factual findings, including facts that would allow the City to evaluate whether a conflict of interest may exist in its continued joint representation of the City and Shawn Mahler as co-defendants in the Lawsuit identified below.

Filing 167-2 at 1. The Investigation Report then clarifies,

> The scope of our independent investigation was to determine: (1) Whether Captain Mahler followed LFR protocol when interacting with Acting Captain Benson during the fire incident on April 26, 2021; and (2) if it were determined Captain Mahler did not follow LFR protocol, what reason(s) or justification(s), if any, existed for deviating from protocol.

Filing 167-2 at 2, 34.

to suggest." Filing 471 at 3 n.1. Defendants also argue that the Court rejected Benson's argument that use of the Gerdes Report to support a "good faith" belief in a legitimate nondiscriminatory reason for Benson's termination constituted a waiver beyond the disclosure of the Gerdes Report. Filing 471 at 3–4. The Court need not summarize the parties' arguments on this issue further because this is another part of Benson's Motion that is an improper, belated, and inadequate attempt to obtain reconsideration of the Court's Memorandum and Order Rejecting Magistrate Judge's Order and Protective Order. As such, it is denied.

### C. Evidence or Testimony Concerning Findings by the Nebraska Equal Opportunity Commission

Moving on to a new topic, Benson asserts that Defendants "may try" to introduce evidence of the Nebraska Equal Opportunity Commission's 2018 Determination of No Reasonable Cause (Benson NEOC Determination) rendered in March 2018 concerning Benson's charges against Defendants. Filing 453 at 18. Benson concedes in a footnote that Defendants did not list the NEOC Determination as a trial exhibit, but she contends that Defendants' expert, Dr. Arias, refers to that document and other witnesses may do the same. Filing 453 at 18 n.4. Benson likewise hypothesizes that Defendants "may also attempt" to introduce a 2013 NEOC Determination concerning Troy Hurd (Hurd NEOC Determination). Filing 453 at 18–19. Defendants' response is equally hypothetical. They argue that depending on other evidence admitted, the Benson NEOC Determination may be relevant because of the ongoing nature of Benson's claims during her employment and the City's decision-making processes as the charges and complaints continued. Filing 471 at 6. Defendants also assert that such evidence may also be appropriate for rebuttal or impeachment because it contrasts with Kimberly Taylor-Riley's conclusions. Filing 471 at 6. In reply, Benson asserts that even Defendants' hypothetical grounds for admission of the NEOC

Determinations are unpersuasive, because those documents would only confuse and mislead the jury. Filing 485 at 4.

The Court has offered only a very abbreviated summary of the parties' arguments on this issue because the Court will not address pretrial such hypothetical issues of the admissibility of evidence that no party has identified as a trial exhibit. When and if any reference to the NEOC Determinations occurs or any party attempts to offer them into evidence, and a timely objection is interposed, the Court will determine in the context of trial whether the NEOC Declarations are admissible or useable for any proper purpose and if a curative or limiting instruction is required.

This part of Benson's Motion in Limine is denied.

### D. Evidence of Benson's Protection Order, Criminal History, and Violation of Probation

Next, Benson seeks an order excluding any evidence or testimony regarding a protection order against her, including the underlying circumstances, and Benson's violation of probation. Filing 453 at 21. This part of Benson's Motion requires some additional background.

#### 1. Background

Benson states that over ten years ago she was dating a woman, and when the relationship ended, that woman retaliated by filing an Application for Protection Order against Benson. Filing 453 at 21. Benson asserts that the Protection Order was granted despite her presentation of evidence that the allegations were false. Filing 453 at 21. Benson states that nearly seven months after the protection order was entered, she left a voicemail for the woman. Filing 453 at 21. She states that she was charged with violating the Protection Order, convicted, and given nine months of probation in addition to completion of "moral recognition therapy." Filing 453 at 21. Benson asserts that she completed both probation and the therapy and has had no other involvement with the criminal justice system since. Filing 453 at 21. She asserts further that Defendants never

disciplined her for this situation and have never cited it as a reason for taking any adverse action against her. Filing 453 at 21.

Benson identifies the exhibits at issue in this part of her Motion in Limine as including Defendants' Exhibits 686 through 689. Exhibit 686 is a state court order affirming a domestic abuse protection order dated June 1, 2009. Exhibit 687 is a state court petition and affidavit to obtain a domestic abuse protection order. Exhibit 688 is a state court complaint charging Benson with violation of a protection order. Exhibit 689 is a state court journal entry and order imposing probation on Benson for violation of a protection order. Benson asserts that her medical records in Exhibits 162 and 437 and Defendants' Exhibit 680 may require redaction if this part of her Motion is granted. Filing 453 at 21.

### 2. The Parties' Arguments

Benson argues that admission of this evidence would violate several Federal Rules of Evidence including 401, 403, 404, 405, 608, and 609. Filing 453 at 21. Benson argues that this evidence is inadmissible even as prior "bad acts" evidence under Rule 404(b) because any probative value it has is outweighed by unfair prejudice and the potential to mislead the jury. Filing 453 at 22. She contends that the evidence should also be excluded under Rule 609, because it was merely a misdemeanor, over ten years old, and did not involve dishonesty or fraud. Filing 453 at 22. Benson argues that her criminal history played absolutely no role in whether Defendants discriminated, harassed, or retaliated against her and has no bearing on liability or damages, so its only purposes would be to embarrass her and to make the jury dislike her. Filing 453 at 22.

Defendants counter that Exhibits 686 through 689 are evidence of the "upheaval" in Benson's life prior to her employment with LFR, so that these exhibits counter Benson's assertion that her personal relationships deteriorated after she was fired by LFR. Filing 471 at 6–7. Defendants argue that they are entitled to offer evidence to refute Benson's claim of recent

deterioration of her relationships by showing that she had serious relationship problems prior to this lawsuit or her discharge. Filing 471 at 7. Defendants also assert that they may offer such evidence for rebuttal or impeachment purposes. Filing 471 at 7.

Benson points out in reply that Defendants have asserted nothing contrary to her argument that this evidence is inadmissible under Federal Rule of Evidence 609. Filing 485 at 5.

3.     *Evidence of Benson's Past Relationship "Upheaval" Is Not Admissible in Defendants' Case-in-Chief*

This evidence plainly is not admissible under Federal Rules of Evidence 608 and 609, because it does not disclose any information about a crime involving dishonesty. Fed. R. Evid. 608; Fed. R. Evid. 609. Nor is it admissible under Federal Rule of Evidence 404(b), even if the Court were satisfied that it is relevant for a purpose other than to damage Benson's character. Eighth Circuit law incorporates a Rule 403 balance into the determination of admissibility of evidence under Rule 404(b). *See United States v. Brandon*, 64 F.4th 1009, 1020–21 (8th Cir. 2023). Rule 403 requires that the probative value of the evidence outweigh unfair prejudice and other concerns, and the probative value of this "bad acts" evidence under Rule 404(b), if any, does not. *See* Fed. R. Evid. 403 (requiring this balance of unfair prejudice and other considerations against probative value). The conclusion that this evidence is inadmissible is based primarily on the salacious nature of the evidence of misconduct more than a decade ago versus the barely perceptible probative value it appears to have pretrial. While it is difficult for the Court to believe that the context of trial will demonstrate a different balance—for example, for rebuttal or impeachment purposes—that is a determination that cannot be made at this time.

This part of Benson's Motion in Limine is granted as to any use of this evidence in Defendants' case-in-chief.

### E.  July 2016 Reliance on Advice of Counsel

As background to this part of her Motion in Limine, Benson asserts that in July 2016, Mayor Beutler received an investigative report from the City's EEO Director finding that Benson had been discriminated against and harassed because of her sex. Filing 453 at 23. Benson contends that Mayor Beutler nevertheless decided to do nothing because Jeff Kirkpatrick, a City Attorney, purportedly "advised [Mayor Beutler] they do not believe the investigative record supports a gender discrimination or retaliation claim." Filing 453 at 23 (citing Plaintiff's Exhibit 215 (unredacted)).

#### 1.    The Parties' Arguments

Benson argues that Defendants have blocked all her attempts to find out the substance of Kirkpatrick's advice to Mayor Beutler, relying on attorney-client privilege. Filing 453 at 23. Consequently, she argues that this tactic means that Defendants should not be allowed to introduce testimony or imply that they relied on legal advice in their July 2016 decision-making about Benson's internal EEO complaint. Filing 453 at 23. Benson argues that "Defendants have been careful not to explicitly claim that they relied on Kirkpatrick's advice," but she argues that it is fair to assume that was the case if evidence is introduced that Mayor Beutler consulted Kirkpatrick. Filing 453 at 26.

Defendants respond that they also moved in limine to exclude Jeff Kirkpatrick's evidence, that they are not presenting an "advice of counsel" good faith affirmative defense in relation to Mayor Beutler's decision in July of 2016, and that they will not present testimony or argument that Mayor Beutler did the right thing because of some undisclosed advice of counsel. Filing 471 at 7. Defendants argue that, while Director Casady mentions Kirkpatrick's report in unredacted Exhibit 206 (improperly attributing the report to "Denise" as explained in unredacted Plaintiff's Exhibit 211), he then makes his own independent comments about the situation without reference

24

to Kirkpatrick's advice. Filing 471 at 23. Defendants also contend that there was no failure to disclose what Kirkpatrick advised Mayor Beutler, because Mayor Beutler's letter to Benson sets out what that advice was. Filing 471 at 8 (citing Plaintiff's Exhibit 215). Finally, Defendants point out that Mayor Beutler did not indicate in his letter to Benson that he relied on Kirkpatrick's advice, nor did he recall doing so when he was deposed. Filing 471 at 8.

In reply, Benson argues that the obvious implication of Mayor Beutler's reference to Kirkpatrick's advice in his letter to Benson is that an attorney found her claims to be without merit and Mayor Beutler acted accordingly. Filing 485 at 8. She contends that the problem is that Defendants have refused to produce Kirkpatrick's memorandum. Filing 485 at 8. Benson argues that the bottom line is that the Defendants should not be allowed to assert an "advice of counsel" defense then refuse to disclose that advice. Filing 485 at 8–9.

2.   *Because no "Advice of Counsel" Defense Is Asserted, Exclusion of Evidence on such a Defense is Moot*

In its separate ruling on Defendants' Motion in Limine, the Court granted Defendants' Motion as to related to "topic H" and "topic X." The Court also previously concluded that Defendants are not attempting to use attorney-client privilege as both a sword and a shield. Filing 365 at 28–30. The unredacted versions of Exhibits 206, 211, and 215 do not remotely or reasonably suggest that Mayor Beutler relied on some undisclosed advice of Kirkpatrick in deciding what to do in response to Benson's internal EEO complaint in 2016. However, most importantly, Defendants have represented that they are not asserting any "advice of counsel" defense as to their response to any complaint by Benson, which moots Benson's pretrial Motion in Limine as to this category of evidence. This part of Benson's Motion in Limine is denied as moot, although the Court will hold Defendants to their word that they will not rely on such an affirmative defense at trial.

### F. Baylor Evnen's Personnel Investigations in the Spring of 2022

Benson asserts that the Baylor Evnen law firm conducted investigations regarding additional complaints of LFR employees in the spring of 2022. Filing 453 at 26 (citing Plaintiff's Exhibits. 415, 417, portions of 416, 419, and 420). Benson asserts that other than the exhibits she cites as showing that Baylor Evnen conducted such investigations, Defendants have not produced other documents related to the investigations based on attorney-client privilege. Filing 453 at 26. She reiterates that Defendants should not be able to introduce evidence of remedial measures regarding sexual harassment complaints but selectively produce only portions of the corresponding Baylor Evnen investigative files. Filing 453 at 26. She also reiterates her assertion that Defendants intend to rely on a "good faith" affirmative defense. Filing 453 at 27.

Defendants point out that they also moved to exclude the challenged Exhibits, so the issue of reliance on attorney-client privilege is moot. Filing 471 at 8. Defendants contend further that they moved to exclude "me too" evidence related to the Baylor Evnen 2022 investigations, but if Benson attempts to use "me too" or "comparator" evidence regarding the subjects of the 2022 investigation reports, Defendants reserve the right to present challenged evidence in rebuttal or impeachment. Filing 471 at 8.

Benson asserts that Defendants' contention that the issue is moot contains a "gaping caveat" that misses the point. Filing 485 at 9. She reiterates that the point is that Defendants cannot be allowed to use the benefit of having done investigations without disclosing the investigation documents. Filing 485 at 9–10. She argues in this instance that fairness dictates that this part of her Motion in Limine be granted. Filing 485 at 10.

In the restricted part of its ruling on Defendants' Motion in Limine, the Court already granted Defendants' Motion as to evidence of allegations and investigation of harassment by Trent

26

Borchers, including Plaintiff's Exhibit 416 and 419, and that Plaintiff's indicated that Plaintiff's Exhibit 417 is "withdrawn." In the same ruling, the Court granted Defendants' Motion as to evidence of allegations and investigation of harassment by Joel Johnson, including Plaintiff's Exhibits 415 and 420. Thus, the part of Benson's Motion in Limine concerning the Baylor Evnen investigations in 2022 is denied as moot.

### G. The Arbitration Ruling, Plaintiff's Reinstatement, and Plaintiff's Constructive Discharge

Benson reports that the parties have reached a stipulation regarding her arbitration, reinstatement, claimed disability discrimination/failure to accommodate, disability pension, and any other employment issues she experienced at LFR after November 2, 2021. Filing 453 at 28. She requests an order effectuating the parties' agreement when finalized, which will render Defendants' Exhibit 697 and portions of Benson's medical records in her Exhibit 437 and Defendants' Exhibit 702 irrelevant and inadmissible. Filing 453 at 29. Defendants agree that a stipulation would moot the issue of the admissibility of evidence on these issues. Filing 471 at 8.

The Court will enter an order adopting the parties' stipulation when it is finalized. At this time, the issue of the admissibility of evidence on these issues is moot.

### H. Arbitration Testimony of City Witnesses Presented by Transcript Reading

Although Benson captions this part of her Motion in Limine in terms of "City Witnesses," she identifies only one witness, Assistant Chief Mike Smith, who may testify by deposition reading. Filing 453 at 29. Benson asserts that at the Final Pretrial Conference, Defendants' counsel indicated that Assistant Chief Smith is unavailable for trial because he is outside the subpoena power of the Court during September 2023. Filing 453 at 29. Benson objects to Defendants' use of portions of Assistant Chief Smith's arbitration testimony at trial in lieu of his live testimony.

27

Filing 453 at 29. Defendants' response to this part of Benson's Motion is likewise premised on Assistant Chief Smith being unavailable at trial. Filing 471 at 9.

The Court will not further summarize the parties' arguments on this issue or linger over the matter, because the continuance of the trial until March 2024 may mean that Assistant Chief Smith will be available at that time. This part of Plaintiff's Motion in Limine is denied as premature in light of changed circumstances without prejudice should the issue properly present itself at the March 2024 trial.

## I.   Evidence that the City Retained Elisa Arnoff for Anything other than Training

Benson asserts that Defendants "may" seek to introduce evidence that they hired Chicago attorney Elisa Arnoff to perform a survey about the corporate culture within LFR, which led to improving facilities and practices for female employees, but Defendants have refused to produce the "climate survey." Filing 453 at 31. Benson argues that Defendants should be precluded from introducing any evidence concerning Arnoff's work other than the training that Defendants produced because of their refusal to provide any information about the survey during discovery. Filing 453 at 31. Benson represents that Defendants "conceded this issue during Chief Engler's deposition." Filing 453 at 31. Defendants respond that their examination of Arnoff will be limited to the training that she did for LFR and will not include any evidence related to the climate survey. Filing 471 at 9–10.

The Court will deny this part of Benson's Motion in Limine as moot, but the Court will hold Defendants to their word at trial.

## J.   Evidence of Benson's Pre-Employment Sexual History

Benson seeks exclusion of any argument or evidence regarding her sexual history prior to becoming employed at LFR as improper character evidence under Federal Rules of Evidence 404

and 608. Filing 453 at 32. She asserts her sexual history has no bearing on her claims in this case or any defense Defendants might assert. Filing 453 at 32–33. Furthermore, she argues that such evidence is inadmissible under Federal Rules of Evidence 401, 402, and 403 even if Defendants could suggest a proper purpose for offering such evidence. Filing 453 at 33. Defendants represent that they are not planning to introduce evidence of Benson's pre-employment sexual history unless Benson makes it an issue at trial and then such evidence is necessary for rebuttal or impeachment. Filing 471 at 10. Defendants explain that if Benson asserts that Defendants caused problems with her personal relationships or that their conduct resulted in emotional distress, they should have the right to present evidence or testimony or question Benson about prior "tumultuous" relationships that predate her employment claims or termination. Filing 471 at 10.

For essentially the reasons that the Court concluded above that exclusion was appropriate for evidence of the circumstances in which Benson was subject to a Protection Order and probation for violating that order, *see* § II.D., the Court will also exclude other evidence of Benson's pre-employment sexual history. This evidence plainly is not admissible under Federal Rules of Evidence 608, because it does not disclose any information about a crime involving dishonesty. Fed. R. Evid. 608. Nor is it admissible under Federal Rule of Evidence 404(b), even if the Court were satisfied that it is relevant for a purpose other than to damage Benson's character. Rule 403 requires that the probative value of the evidence outweigh unfair prejudice and other concerns, and the probative value of this "bad acts" evidence under Rule 404(b), if any, does not. *See* Fed. R. Evid. 403 (requiring this balance of unfair prejudice and other considerations against probative value). The conclusion that this evidence is inadmissible is based primarily on the salacious nature of the evidence versus the barely perceptible probative value it appears to have pretrial. While it is difficult for the Court to believe that the context of trial will demonstrate a different balance—

for example, if the evidence is used for rebuttal or impeachment purposes—that is a determination that cannot be made at this time.

This part of Benson's Motion in Limine is granted as to any use of this evidence in Defendants' case-in-chief.

### K.  Any Evidence, Testimony, or Argument that Benson must Present Testimony from a Psychologist or Physician to Recover Emotional Distress Damages

Benson argues that expert or other medical testimony is not required to establish a plaintiff's emotional distress in a discrimination case. Filing 453 at 33. Indeed, she asserts that in most cases the plaintiff's own testimony, perhaps bolstered by testimony of family and friends but even standing alone, is sufficient. Filing 453 at 33. Defendants assert that they do not argue that Benson must present testimony from a psychologist or physician to recover emotional distress damages. Filing 471 at 10. Instead, their argument is that Benson cannot give medical opinions or testify regarding medical causation, such as the cause of alleged aggravation of her alleged existing health conditions. Filing 471 at 10.

The Court addressed this issue in its ruling on "topic L" in Defendants' Motion in Limine. As the Court explained in that ruling, it is well settled that "emotional distress damages need not be supported by 'medical or other expert evidence.'" *Blackorby v. BNSF Ry. Co*., 849 F.3d 716, 723 (8th Cir. 2017) (quoting *Bennett v. Riceland Foods, Inc*., 721 F.3d 546, 552 (8th Cir. 2013)). In addition, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." *Id.* (quoting *Kim v. Nash Finch Co*., 123 F.3d 1046, 1065 (8th Cir. 1997), in turn quoting *Turic v. Holland Hosp., Inc*., 85 F.3d 1211, 1215 (6th Cir. 1996)). Benson asserted in response to Defendants' Motion in Liminie that she will offer such evidence, but she will not offer her own testimony on causation. Filing 472 at 9–10. Defendants again acknowledge the distinction. Filing 471 at 10.

This part Benson's Motion in Limine is granted, although that ruling does not preclude Defendants from asserting a timely objection if Benson's trial testimony should stray beyond her self-imposed limits.

### L.  Argument that Benson Failed to Mitigate Her Emotional Distress Damages

Benson argues that Defendants should be precluded from asserting any argument that Benson "failed" to mitigate her emotional distress. Filing 453 at 35. She argues that the statutory duty to mitigate damages in Title VII and the NFEPA applies only to backpay losses. Filing 453 at 35–36. Consequently, she argues that any evidence of, reference to, or argument about her purported failure to mitigate emotional distress damages should be excluded. Filing 453 at 37. Defendants argue that Benson has failed to provide any context to this argument and has failed to identify where and how the Defendants have argued that she has failed to mitigate her emotional distress damages. Filing 471 at 11. Consequently, Defendants assert that they do not know what evidence Benson is seeking to exclude, so that it is difficult if not impossible for them to respond. Filing 471 at 11. On the other hand, Defendants assert that they must be allowed to examine Benson about the nature and extent of her emotional distress damages, which may properly include questions about her treatment or lack thereof to show the emotional distress may be less than she asserts. Filing 471 at 11–12. Defendants assert that the issue of evidence and argument related to emotional distress is properly addressed, if at all, during trial. Filing 471 at 12.

In its Memorandum and Order Regarding Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment, the Court observed that Defendants had pleaded as an affirmative defense "that Plaintiff has failed to mitigate her damages." Filing 440 at 5 (citing Filing 196 at 14 (¶ 115)). However, the issue of mitigation of damages only arose in that ruling as to Benson's effort to secure comparable employment. Filing 440 at 14.

31

The Supreme Court recognized decades ago that "[a]n unemployed or underemployed claimant, like all other Title VII claimants, is subject to the statutory duty to minimize damages set out in [42 U.S.C. § 2000e-5(g)]." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)). The Supreme Court noted, "The provision expressly states that '[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.'" *Id.* at 231 n.14. The Supreme Court explained, "This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment." *Id.* at 231; *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992) ("A Title VII claimant has a duty to mitigate damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located." (citing *inter alia Ford Motor Co*, 458 U.S. at 231, and 42 U.S.C. § 2000e-5(g)). Thus, the statutory language and the "mitigation" or "minimization" of damages at issue was plainly limited to lost earnings, *i.e.*, backpay. The parties have not cited and this Court has not found any federal decision holding that the duty to mitigate damages under Title VII extends to mitigation of emotional distress damages. *But see Skaria v. New York*, 110 Misc.2d 711, 442 N.Y.S.2d 838, 842 n.1 (N.Y. Ct. Cl. 1981) (noting that a personal injury victim failed to mitigate emotional distress by not seeking treatment). The duty to mitigate damages under NFEPA is cast in exactly the same terms as the duty stated in 42 U.S.C. § 2000e-5(g): "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the backpay otherwise allowable." Neb. Rev. Stat. § 48-1119(3). Nothing suggests that the duty to mitigate under the NFEPA is somehow broader than the duty under Title VII. *See Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 802 (8th Cir. 2015) ("In construing NFEPA, Nebraska courts are guided by

32

federal courts' interpretation of Title VII." (citing *Zalkins Peerless Wiping Co. v. Neb. Equal Opp. Comm'n*, 348 N.W.2d 846, 848 (Neb. 1984)).

Consequently, Defendants will not be allowed to argue that Benson failed to mitigate her damages for emotional distress. Nevertheless, that conclusion does not preclude Defendants from examining Benson about the nature and extent of her emotional distress damages, which may properly include questions about her treatment or lack thereof to show that her emotional distress may be less than she asserts. *See, e.g., Bailey v. Runyon*, 220 F.3d 879, 881 (8th Cir. 2000) (holding that a sexual harassment plaintiff's claim of emotional distress was impeached by a report of a counselor that did not mention sexual harassment and the fact that a prescription for anti-depressant medication was dated almost four years after the harassment, contrary to the plaintiff's wife's testimony that the plaintiff sought counseling and was taking medication because of the harassment).

Thus, this part of Benson's Motion in Limine is granted as to argument that she failed to mitigate her emotional distress damages. However, this ruling does not preclude inquiry by Defendants into the nature and extent of Benson's emotional distress, including inquiry about her treatment or lack thereof.

### M. Newspaper Articles

Benson asserted in her opening brief that Defendants intend to offer a Lincoln Journal Star article regarding the warehouse fire, but that newspaper articles are hearsay. Filing 453 at 37. In her reply brief, however, Benson states that she "withdraws her Motion in Limine with respect to the newspaper articles." Filing 485 at 10. Consequently, this part of Benson's Motion in Limine is denied as withdrawn.

33

### N.  Evidence of Settlement Negotiations

Benson argues that evidence of offers to compromise including evidence of conduct or statements made in settlement negotiations is prohibited by Federal Rule of Evidence 408. Filing 453 at 37. Defendants point out that they also moved to exclude this type of evidence, so they have no objection to the Court granting this request. Filing 471 at 13. In its ruling on the unrestricted parts of Defendants' Motion in Limine on Topics A–Z, the Court granted as uncontested Defendants' Motion to exclude evidence on "topic F" concerning evidence of settlement discussions and negotiations. For the same reason, the Court grants as uncontested this part of Benson's Motion in Limine, and evidence of settlement negotiations will be excluded.

### O.  Payment of Medical Bills

Item XV in Benson's Motion was stated as "Payment of Medical Bills from Collateral Sources (Portions of Ex. Nos. 163, 438, 440)." Filing 452 at 2. There is a typographical or formatting problem in the pertinent part of Benson's brief, so that this topic does not have a separate heading, but the brief does contain Benson's argument that the collateral source rule prohibits admission of evidence of portions of her recoverable medical expenses that were paid by her health insurance. Filing 453 at 37. Defendants do not respond to this part of Benson's Motion. *See generally* Filing 471. The Court deems this part of Benson's Motion in Limine to be unresisted.

In a harassment case under the ADA, the Eighth Circuit explained that "[u]nder the collateral source rule, an employer is entitled to no credit for moneys paid to the injured employee by third parties." *Salitros v. Chrysler Corp.*, 306 F.3d 562, 573 (8th Cir. 2002) (citing *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1112–14 (8th Cir. 1994)). More pointedly, the court agreed with the district court's finding that where the plaintiff's use of medical leave had been made necessary by the physical and psychological damage from harassment that the plaintiff experienced in the workplace, the collateral source rule applied. *Id.* at 573–74. To the extent

Benson proves expenses for medical treatment made necessary by discriminatory, retaliatory, or harassing conduct of Defendants, the collateral source rule will bar evidence that any such expenses were paid by Benson's health insurance.

This part of Benson's Motion in Limine is granted.

## P. Defendants' Equitable Defenses

Benson argues that Defendants have asserted equitable defenses of waiver, estoppel, laches, and unclean hands, which must be decided by the Court not the jury. Filing 453 at 37. Thus, she argues that "[e]vidence solely supporting Defendants' equitable defenses is irrelevant and will likely unduly prejudice [Benson] if presented to the jury." Filing 453 at 38. She contends that such evidence would be unfairly prejudicial to her and confusing and misleading to the jury because it would give the impression that equitable considerations play a role in the liability and damages issues the jury must decide. Filing 453 at 38. Defendants point out that Benson has not identified what evidence she considers "solely" supports Defendants' equitable defenses, so that it is difficult if not impossible to respond to this part of her Motion. Filing 471 at 13. Defendants argue that if Benson is arguing that Defendants cannot offer any evidence of their legitimate reasons for discharging her because such reasons could also be relevant to an equitable defense, it is exclusion of such evidence that would be unfairly prejudicial. Filing 471 at 13.

The Court agrees that Benson's identification of the challenged evidence as "evidence solely supporting Defendants' equitable defenses" is too vague to allow pretrial determination of what evidence is at issue. Certainly, the Court finds that the evidence of Defendants' legitimate reasons for discharging Benson is sufficiently probative of matters properly before the jury as to outweigh any slight potential prejudice that jurors might misunderstand the proper basis for their own determinations. Fed. R. Evid. 403. If the jurors are properly instructed on how to make their

35

determinations under the law, the concern that the jurors may improperly consider evidence that is solely relevant to any equitable defense will be mitigated. *See* Fed. R. Evid. 105.

This part of Benson's Motion in Limine is denied.

### Q.  Pretrial Motions, Briefing, or Arguments of Counsel

Benson asserts in her brief but not in her Motion that the Court should exclude counsel's legal argument, motions, or pretrial arguments from the arbitration proceeding or any other proceedings at trial in this case as unfairly prejudicial, misleading, and confusing. Filing 453 at 39. Defendants respond to Benson's attempt to exclude this evidence by pointing out that they have not listed any of Benson's counsel's briefs as exhibits, only her Motion for Preliminary Injunction, which is listed as Defendants' Exhibit 650. Filing 471 at 13–14. Defendants argue that Benson's Motion for Preliminary Injunction and her internal grievance from about the same time are relevant and probative to explain the series of events leading to Chief Engler's decision and his state of mind. Filing 471 at 14. They also argue that these matters are not hearsay, because they are not offered for the truth of the matters asserted. Filing 471 at 14. Benson's rejoinder is that it is not clear how the relief requested in her Motion for Preliminary Injunction makes any fact at issue more or less likely as required for admissibility under Federal Rules of Evidence 401 and 402. Filing 485 at 10. Benson argues further that her requested relief in her Motion for Preliminary Injunction was not identified in Chief Engler's list of reasons for terminating her. Filing 485 at 10. Consequently, she argues that Defendants' Exhibit 650 should be excluded. Filing 485 at 11.

The Court recognizes that Benson's Motion for Preliminary Injunction was a public statement and reflects allegations she has reiterated in this litigation, so the Court is not particularly amenable to Benson's attempt to exclude her Motion for Preliminary Injunction from the record in this case. On the other hand, in § II.A.3. above, the Court denied Benson's Motion in Limine as to exclusion of Judge Kopf's Order Denying Preliminary Injunction, Defendants' Exhibit 667,

36

because Chief Engler expressly relied on Judge Kopf's Order in making his decision to terminate Benson. Benson's own Motion for Preliminary Injunction, including the relief requested, is cumulative of Judge Kopf's discussion of the contents of the Motion in his Order. *See* Fed. R. Evid. 403 (allowing exclusion of relevant evidence that is cumulative). It is not clear to the Court what additional or different relevance Benson's Motion itself has that would warrant its separate admission into evidence. This is particularly so because Chief Engler did not state that he relied on Benson's Motion. *See generally* Defendants' Exhibit 674.

Under these circumstances, Benson's Motion in Limine is granted as to Exhibit 650.

### R. The Fiedler Law Firm's Representation of Witnesses

Benson states that she will call as witnesses Brian Giles, Sarah Khalil, and Jessica Lundvall, that all three are current or former employees of LFR, that all three have or had lawsuits against the City, and that all three are represented by Benson's counsel, Fielder Law Firm, PLC. Filing 453 at 39. Benson asks that Defendants be precluded from introducing any evidence of, making any mention of, or eliciting any testimony regarding the Fiedler Law Firm's representation of these witnesses. Filing 453 at 39.

#### a. The Parties' Arguments

Benson concedes that the fact that these witnesses have or had lawsuits against Defendants may be relevant. Filing 453 at 40. She argues that the same simply is not true about their representation by the Fiedler Law Firm. Filing 453 at 40. Even if somehow relevant, Benson argues that the probative value of evidence of the representation of these witnesses is far outweighed by the danger of unfair prejudice. Filing 453 at 40. She asserts that evidence of the witnesses' representation by Benson's counsel would serve no purpose other than to cast aspersions on counsel by suggesting that counsel put the witnesses up to their testimony. Filing 453 at 40.

37

Defendants point out that they have moved to exclude evidence of other lawsuits, as set forth at length in their brief in support of their own Motion in Limine, which if granted would moot this issue in Benson's Motion. Filing 471 at 14. However, Defendants argue that if the Court allows Benson to offer evidence regarding such other lawsuits, Defendants should be allowed to introduce the fact that the witnesses who filed those lawsuits are represented by the same law firm as Benson because that fact would be relevant to their credibility or bias in testifying favorably to Benson. Filing 471 at 14. Defendants also suggest that evidence of the joint representation may reveal conflicts of interest leading the witnesses to testify in a manner most beneficial to their own lawsuits and the financial benefit to themselves and the Fiedler Law Firm. Filing 471 at 14. Thus, Defendants argue that if the Court does not grant the relevant part of their Motion in Limine, it would be unfair not to allow them to explain the "intertwining relationship" between Benson, these witnesses, and their shared counsel. Filing 471 at 15.

In reply, Benson argues that the pool of counsel in Nebraska who represent plaintiffs in employment law cases is small, so that it is not surprising that one firm would represent witnesses in one case against a particular defendant on their own discrimination claims against the same defendant. Filing 485 at 11. Benson argues that because jurors do not know this fact, they may reach the improper and prejudicial assumption that Benson and her counsel are conspiring with the witnesses that her counsel also represents. Filing 485 at 11. She argues that evidence of her counsel's representations of these witnesses is unfairly prejudicial precisely because it may suggest that her counsel is manufacturing claims against Defendants and because it would undermine the credibility of her counsel rather than or as well as the credibility of the witnesses that her counsel also represents. Filing 485 at 11. Benson argues that Defendants will have other ways to attack the

38

credibility of the witnesses, such as asking them about the status of their lawsuits, the allegations

underlying them, and their motivations for bringing claims. Filing 485 at 12.

> b. Disclosure of the Law Firm's Representation of Some Witnesses
>    Is More Prejudicial than Probative

In the restricted part of their Motion in Limine, Defendants asked that Court to exclude

"information regarding other lawsuits or charges against Defendants and testimony from such

lawsuits." Filing 455 at 1 (using all capitals in the original). The Court significantly limited but

did not exclude all evidence that Giles, Khalil, and Lundvall might present, however. Thus, the

Court must consider whether Giles, Khalil, and Lundvall can be properly impeached with their

relationship to Benson's counsel.

The Eighth Circuit Court of Appeals has recognized that a close personal relationship

between a litigant and a witness or witnesses may "create[ ] a potential bias and a motive to provide

false information." *Armstrong v. Kemna*, 590 F.3d 592, 603 (8th Cir. 2010). However, in that case,

the witnesses in question were the petitioner's foster brother and biological brother, so the

relationship was quite different from a relationship between witnesses and a party's counsel as in

this case.

Somewhat closer factually is a decision of the Fifth Circuit Court of Appeals nearly half a

century ago upholding a district court's decision to allow a witness to be impeached based on his

relationship with defendant's counsel. *United States v. Alfonso*, 552 F.2d 605, 617 (5th Cir. 1977).

In that case, the witness was a former FBI agent called by the Government to identify the

defendant's voice on certain tape recordings. *Id.* at 616. At the time of trial, the witness had retired

from the FBI and was employed by defendant's attorney as a private investigator. *Id.* at 617. The

witness initially identified the defendant's voice on two recordings but on cross-examination he

testified that he was not positive of the identification. *Id.* The district court then declared the

witness a hostile witness and allowed the Government to elicit from him that he had been retained by the defendant's attorney as a private investigator. *Id.* The Fifth Circuit concluded that allowing the impeachment was proper in light of the witness's reluctance to testify and the evasiveness of his testimony. *Id.* In other words, the impeachment with the relationship with counsel was proper where the witness's conduct and testimony suggested possible bias.

As the cases cited just above suggest, there is some potential probative value in this case to the issue of bias in evidence of the relationship among these witnesses, Benson, and their shared counsel. *See* Fed. R. Evid. 401; Fed. R. Evid. 402. However, that potential probative value appears slight in light of the relatively small bar in the State of Nebraska and the likelihood that several plaintiffs with similar claims against a single employer are likely to gravitate toward the same lawyer or group of lawyers. The Court has seen this last phenomenon in various series of cases.

The Court is also mindful that even otherwise probative evidence can be excluded if its potential for unfair prejudice outweighs the evidence's probative value. *See* Fed. R. Evid. 403. Here, the Court finds that the potential for unfair prejudice is the weightier side of the scales because the evidence would potentially impugn not only the witnesses' credibility but Benson's counsel's motives where there is no evidence suggesting collusion among Benson, the witnesses, or their shared counsel. *See Alfonso*, 552 F.2d at 617 (upholding impeachment of a witness with his relationship with defendant's counsel where his testimony was already reluctant and evasive). There are also other means of impeaching these witnesses that would be fair, such as eliciting testimony showing the lack of similarity between the alleged misconduct toward the witnesses and the alleged conduct toward Benson; showing that their testimony in this case is different from sworn testimony in other proceedings or at other times in this case; presenting evidence that their testimony is internally inconsistent; showing that their testimony is contradicted by other evidence

40

in the record; or even showing that they have a close relationship with Benson as in *Armstrong*, 590 F.3d, at 603. This Court is disinclined to allow impeachment with the relationship between these witnesses and Benson's counsel until and unless there is something specific in their testimony or manner that suggests bias because of their relationship with counsel. *See Alfonso*, 552 F.2d at 617.

Consequently, Benson's Motion in Limine is granted.

### S.  Dismissed Claims

Benson next seeks exclusion of evidence or argument that she initially brought additional legal claims against some or all Defendants on the ground that such evidence or argument is irrelevant and therefore inadmissible. Filing 453 at 40. Benson argues that such evidence serves no purposed other than to suggest to the jury that Benson is litigious or that her claims are disingenuous, which will invite a minitrial as well as needless delay, confusion, and waste of resources. Filing 453 at 40. Defendants represent that, with the exception of Judge Kopf's Order Denying Preliminary Injunction and related evidence, they do not plan on offering any evidence or argument about dismissed causes of action. Filing 471 at 15.

With the caveat that Defendants state—that Defendants are allowed to present evidence of Judge Kopf's Order Denying Preliminary Injunction, as the Court has previously held—this part of Benson's Motion in Limine is granted.

### T.  Other Litigation to which Benson Was a Party

Benson also seeks exclusion of evidence of other litigation to which she was a party. Filing 453 at 41. Benson argues that this evidence bears no relevance to her claims in this case and could unfairly impeach her character or brand her as litigious. Filing 453 at 41. Defendants state that they have not listed exhibits related to other civil litigation to which Benson was a party and that they do not intend to offer any evidence of those civil matters unless for impeachment or rebuttal

41

purposes. Filing 471 at 15. Defendants argue that the Court should likewise exclude evidence that Benson might offer of other litigation involving her counsel or that involves Defendants as parties, as discussed in their own Motion in Limine, topic AA. Filing 471 at 15.

The Court resolved Defendants' Motion in Limine as to topic AA in its ruling on the restricted parts of Defendants' Motion in Limine. The Court does not believe that topic is necessarily comparable to or "the flip side" of the issue of other litigation to which Benson was a party. As the Eighth Circuit Court of Appeals has recognized, "The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380–81 (8th Cir. 2008) (citing *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). The probative value of such evidence lessens the greater the temporal distance from the current litigation and the smaller the number of prior suits. *Id.* at 381. The Court has serious doubts that evidence of Benson's involvement in other lawsuits will be more probative than prejudicial, even for purposes of impeachment or rebuttal purposes, which is the only circumstance in which Defendants have indicated any intention to offer such evidence. For now, however, the Court will only bar use of evidence that Benson was a party in other litigation unless during trial Defendants obtain the authorization of the Court before offering such evidence.

Benson's Motion in Limine is granted as to any evidence of prior litigation in which she was a party. No such evidence shall be allowed, even for impeachment or rebuttal purposes, without prior authorization from the Court sought outside the hearing of the jury.

## U.  Evidence Not Disclosed During Discovery

Benson also seeks exclusion of evidence or witnesses that were not properly disclosed in response to her discovery requests. Filing 453 at 41. She argues that the Court must prevent trial by ambush. Filing 453 at 41. Defendants state that they do not anticipate presenting any evidence

or calling any witnesses that were not properly disclosed and neither side should be allowed to do so. Filing 471 at 15. However, they add that exclusion of such evidence should not extend to rebuttal or impeachment evidence. Filing 471 at 15. Again, much as the Court did in § II.B.1. above, the Court concludes that if Defendants attempt to use at trial evidence that was not disclosed in discovery, and a timely objection is interposed, Defendants will be barred from using the undisclosed evidence, except for purposes allowed by applicable rules. *See* Fed. R. Civ. P. 37(c); *Petrone I*, 940 F.3d at 435–36; *Petrone II*, 42 F.4th at 968. This part of Benson's Motion in Limine is granted.

## V. Declarations, Affidavits, or Statements of City Employees

Benson objects to Defendants' intention to offer several declarations, affidavits, or statements of City employees at trial, incorrectly listed as Defendants' Exhibits "664 through 661" [sic]. She argues that these statements are all hearsay and that Defendants should be required to call the witnesses, so that she can confront and cross-examine them. Filing 453 at 42.

Defendants argue that the statements, properly identified as Defendants' Exhibits 654 through 661, are not hearsay because they will not be offered for the truth of the matters asserted but to show Chief Engler's state of mind when he decided to terminate Benson's employment. Filing 471 at 16. Defendants point out that the termination letter expressly identifies these statements as evidence Chief Engler considered. Filing 471 at 16 (citing Defendants' Exhibit 674). Defendants argue that they cannot be precluded from presenting such evidence of the basis for the decision, where what is relevant is what the employer knew at the time of the decision. Filing 471 at 16.

In reply, Benson contends that it is important to recognize that Chief Engler did not write the letter terminating Benson or compile the list of items he allegedly relied on in making his determination. Filing 485 at 12 (citing Filing 334-17 at 61 (Engler Depo. at 241:23–242:7)).

Benson argues that the termination letter was "manufactured" by Defendants' lawyers as were the declarations, and at least one of the declarations contained false statements. Filing 453 at 12. Benson also points out that each declarant is listed as a witness by Defendants. Filing 485 at 12. Benson argues that the declarations should be excluded because of the indicia or unreliability, slight probative value, and risk of unduly emphasizing particular testimony. Filing 485 at 12.

The Court concludes that evidence that one declarant (Mahler) admits that some statements in his affidavit were false hardly demonstrates that all the declarations are unreliable or untrustworthy. Nor does the fact or possibility that the declarations were prepared by Defendants' counsel, where each declarant expressly adopted the declaration as his or her own. Similarly, evidence that Chief Engler did not write Benson's termination letter himself and did not compile the list of items he allegedly relied on does not alter the fact that Chief Engler signed the letter thereby adopting it as his own. Thus, whether or not Chief Engler wrote the letter or compiled the list does not make the documents on which he relied irrelevant to his determination and inadmissible. Furthermore, as the Court has repeatedly pointed out, the question is not whether the basis for Chief Engler's decision was correct but whether he in good faith believed that Benson was guilty of the conduct justifying discharge. *See* Filing 440 at 26 (citing Filing 365 at 25–26); Filing 365 at 25–26 (citing *Canning*, 995 F.3d at 612, and *Johnson*, 769 F.3d at 612). The fact that Chief Engler did not write the letter or compile the list of items of evidence has barely a scintilla of probative value to show that Chief Engler did not believe in good faith that Benson was guilty of the misconduct identified in the letter; his signing the letter is much more probative evidence that he did believe in good faith that Benson was guilty. The challenged declarations are admissible for the same reason that Judge Kopf's Order Denying Preliminary Injunction is admissible, that is, that Chief Engler relied on them in making his decision to terminate Benson. *See* § II.A.3. above.

This part of Benson's Motion in Limine is denied.

### W. Sequestration of Witnesses

Finally, Benson seeks an order sequestering all nonparty witnesses who have not yet testified in order to prevent later witnesses from tailoring their testimony to that of a prior witness and to assist the finder of fact in detecting unreliable testimony. Filing 453 at 42 (citing Fed. R. Evid. 615). Defendant agrees that sequestration is appropriate. Filing 471 at 17. The Court also agrees. Therefore, this part of Benson's Motion in Limine is granted.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Benson's Motion in Limine, Filing 452, is granted in part, denied in part, and reserved in part as explained above.

Dated this 13th day of October, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge